## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, and VIKAS SINHA,<br><br>Defendants. | Civ. A. No.<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED<br><br>**ECF CASE** |

Plaintiff Boston Retirement System ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst reports concerning Alexion; and (d) other public information regarding the Company.

## INTRODUCTION

1.      This federal securities class action is brought on behalf of all those that purchased Alexion securities between February 10, 2014 and December 9, 2016, inclusive (the "Class Period"). The claims asserted herein are alleged against Alexion and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.      Alexion is a biopharmaceutical company headquartered in New Haven, Connecticut.  Founded in 1992, the Company develops and commercializes therapeutic products for rare diseases.  Throughout the Class Period, the Company's primary product was Soliris (eculizumab), a monoclonal antibody for the treatment of paroxysmal nocturnal hemoglobinuria ("PNH"), a genetic blood disorder, and atypical hemolytic uremic syndrome ("aHUS"), a genetic disease.

3.      Throughout the Class Period, Alexion reported impressive earnings and growth because of strength in its Soliris franchise.  Defendants represented that the Company had an effective marketing strategy for the drug, and that Alexion could monitor the inventory levels for Soliris.  These statements were materially false and misleading.  In truth, Defendants inflated the Company's reported earnings by selling Soliris in violation of Company policies and procedures, and otherwise engaging in illicit sales tactics for the drug.  Further, the Company's marketing strategy was not sufficient to sell the drug given that Alexion was forced to resort to illicit sales tactics to meet earnings targets.  In addition, the Company's inventory levels for Soliris were distorted by improper sales of the drug.

4.      On November 4, 2016, Alexion cancelled an appearance at the Credit Suisse Healthcare Conference, scheduled for November 6-8, 2016, telling Leerink Partners LLC only that "something came up."  Following the cancellation, analysts noted that Alexion had also failed to file its Quarterly Report on Form 10-Q with the SEC within two days of its earnings announcement on October 27, 2016, a break from the Company's historical practice.  This news caused the price of Alexion stock to decline $8.95 per share, or 7%, to close at $120.05 per share on November 7, 2016, the following trading day.

5.     On November 9, 2016, after the market closed, Alexion announced that the Company would not be able to timely file its financial and operating results for the quarter ended September 30, 2016.  This is because the Audit and Finance Committee of Alexion's Board of Directors was investigating allegations raised by a former Alexion employee regarding improper sales practices of Soliris and the "related disclosure and other considerations raised by such practices."  On this news, the price of Alexion stock fell $13.54 per share, over 10%, to close at $113.62 per share on November 11, 2016.

6.     Then, on December 12, 2016, before the market opened, Alexion announced that CEO David Hallal and CFO Vikas Sinha resigned.  This disclosure caused the price of the Company's stock to drop from $132.07 per share on December 9, 2016 to $115.08 per share on December 12, 2016, or approximately 13%.

<u>**JURISDICTION AND VENUE**</u>

7.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b).  Alexion is based and maintains its principal executive offices in New Haven, Connecticut, which is situated in this District, and the acts and conduct that constitute the violations of law complained of herein, including the preparation and/or dissemination to the public of materially false and misleading information, occurred in this District.  In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and

instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

9.     Plaintiff Boston Retirement System ("Plaintiff") is a defined-benefit governmental pension plan headquartered in Boston, Massachusetts.  Plaintiff manages assets on behalf of beneficiaries associated with the City of Boston, including the Boston Redevelopment Authority, the Boston Housing Authority, the Boston Water and Sewer Commission, and the Boston Public Health Commission.  As of December 31, 2014, Plaintiff managed roughly $6 billion in total assets on behalf of over 43,000 members.  Plaintiff purchased shares of Alexion stock on the NASDAQ stock market ("NASDAQ") during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

10.     Defendant Alexion Pharmaceuticals, Inc. ("Alexion") is a biopharmaceutical company that develops and commercializes products to treat patients with ultra-rare disorders. Based in New Haven, Connecticut, the Company was incorporated in 1992.  Until the fourth quarter of 2015, Soliris, a drug designed to treat rare blood disorders, was Alexion's only marketed product, and it remained the Company's principal source of revenue throughout the remainder of the Class Period.  Alexion stock trades on NASDAQ, which is an efficient market, under ticker symbol "ALXN."  As of July 27, 2016, Alexion had over 224 million shares of stock outstanding, owned by hundreds or thousands of investors.

11.     Defendant Leonard Bell ("Bell") served as the Company's Chief Executive Officer from January 1992 to March 31, 2015.

12.     Defendant David L. Hallal ("Hallal") was the Company's Chief Executive Officer and Director from April 1, 2015, until his resignation on December 12, 2016.

13.     Defendant Vikas Sinha ("Sinha") was at all relevant times Alexion's Chief Financial Officer and Executive Vice President until his resignation on December 12, 2016.

14.     Defendants Bell, Hallal, and Sinha are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with Alexion, possessed the power and authority to control the contents of Alexion's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors.  Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts and omissions specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations and omissions which were being made were then materially false and/or misleading.

## BACKGROUND

15.     Alexion is a pharmaceutical company whose principal product is Soliris, an extremely expensive drug designed to treat rare blood disorders.  Priced at roughly $440,000 per year, Soliris is one of the most expensive drugs in the world and has driven explosive growth for Alexion.  In 2007, when Soliris was first approved for the treatment of PNH, peak annual sales were estimated at $150 million.  Yet, by the start of the Class Period, sales had reached $567 million.  Sales of Soliris continued to grow rapidly during the Class Period, reaching $729 million by the third quarter of 2016.  It now appears, however, that Soliris' growth was actually driven by improper sales practices that were inconsistent with Alexion's policies and procedures.

16.    The Class Period begins on February 10, 2014, when Alexion filed its Annual Report for the quarter and year ended December 31, 2013 on Form 10-K with the SEC (the "2013 10-K").  For the quarter, Alexion reported a net loss of $18.99 million, or $0.10 per diluted share, on revenue of $441.91 million.  For 2013, Alexion reported net income of $252.90 million, or $1.27 per diluted share, on revenue of $1.55 billion.

17.    In the 2013 10-K, Alexion stated with regard to its sales and marketing practices that the Company has "established a commercial organization to support current and future sales of Soliris." Alexion further stated that "[o]ur sales force for Soliris is small compared to that of other drugs with similar gross revenues; however, we believe that a relatively smaller sales force is appropriate to effectively market Soliris due to the incidence and prevalence of PNH and aHUS."  The Company also told investors in the 2013 10-K that it "monitor[s] inventory within our sales channels to determine whether deferrals are appropriate based on factors such as inventory levels compared to demand, contractual terms and financial strength of distributors."

18.    The 2013 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Bell and Sinha, stating that the financial information contained in the 2013 10-K was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

19.    The statements and omissions set forth in ¶¶16-18 were materially false and misleading.  In truth, Alexion's reported earnings were inflated by improper sales of Soliris. Further, the Company's commercial organization and sales force were not sufficient to effectively market the drug given that Alexion was forced to resort to illicit sales tactics to meet earnings targets.  In addition, the Company was unable to effectively monitor its inventory levels given that those levels were distorted by sales of Soliris that were inconsistent with Alexion's

policies and procedures.  Finally, the SOX certifications contained in the 2013 10-K were materially false and misleading because Company personnel engaged in improper sales practices that overstated Alexion's earnings and financial condition.

20.     On April 24, 2014, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 8-K").  For the quarter, Alexion reported net income of $159.35 million, or $0.79 per diluted share, on revenue of $566.62 million, compared to net income of $82.22 million, or $0.41 per diluted share, on revenue of $338.94 million for the same period in the prior year.  The Q1 2014 8-K also touted that net product sales for Soliris increased 67% over the prior year to $567 million.

21.     The next day, on April 25, 2014, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q1 2014 8-K and reporting in full the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  The Q1 2014 10-Q contained signed certifications pursuant to SOX by Defendants Bell and Sinha, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

22.     The statements and omissions set forth in ¶¶20-21 were materially false and misleading.  In truth, Alexion overstated its earnings and net product sales for Soliris because they were based on sales of the drug that were inconsistent with Alexion's policies and procedures.  Further, the SOX certifications contained in the Q1 2014 10-Q were materially false and misleading because Alexion's improper sales of Soliris inflated Alexion's financial condition.

23.     On July 24, 2014, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 8-K").  For the quarter, Alexion reported net income of $166.5 million, or $0.83 per diluted share, on revenue of $512.5 million, compared to net income of $95.89 million, or $0.48 per diluted share, on revenue of $370.09 million for the same period in the prior year.  The Q2 2014 8-K further stated that net product sales of Soliris increased 38% over the prior year to $512.5 million.

24.     On July 25, 2014, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2014 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q").  The Q2 2014 10-Q contained signed certifications pursuant to SOX by Defendants Bell and Sinha, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

25.     The statements and omissions set forth in ¶¶23-24 were materially false and misleading.  In truth, Alexion's earnings and net product sales for Soliris were inflated by improper sales of the drug.  The SOX certifications contained in the Q2 2014 10-Q were also materially false and misleading because the financial information contained in the Q2 2014 10-Q was not accurate, and concealed that the Company lacked adequate internal controls.

26.     On October 23, 2014, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 8-K").  For the quarter, Alexion reported a net loss of $183.76 million, or $0.81 per diluted share, on revenue of $666.64 million, compared

to net income of $177.73 million, or $0.88 per diluted share, on revenue of $555.15 million for the same period in the prior year.  The Q3 2014 8-K also stated that net product sales for Soliris increased 39% over the prior year to $555.1 million and that Alexion experienced "Steady Soliris PNH Growth Worldwide, aHUS Global Launch Progresses."

27.     On October 24, 2014, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q3 2014 8-K and reporting in full the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q").  The Q3 2014 10-Q contained signed certifications pursuant to SOX by Defendants Bell and Sinha, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

28.     The statements and omissions set forth in ¶¶26-27 were materially false and misleading.  In truth, Alexion overstated its earnings and net product sales for Soliris because they were based on sales of Soliris that were inconsistent with Alexion's policies and procedures. Further, the Company misrepresented that the steady growth in Soliris sales was due to the progression of its global launch, as opposed to improper sales practices.  Further, the SOX certifications contained in the Q3 2014 10-Q were materially false and misleading because Alexion's improper sales of Soliris inflated Alexion's financial condition.

29.     On February 6, 2015, Alexion filed an Annual Report for the quarter and year ended December 31, 2014 on Form 10-K with the SEC (the "2014 10-K").  For the quarter, Alexion reported net income of $153.33 million, or $0.76 per diluted share, on revenue of $599.48 million, compared to a net loss of $18.99 million, or $0.10 per diluted share, on revenue of $441.91 million for the same period in the prior year.  For 2014, Alexion reported net income

of $656.91 million, or $3.26 per diluted share, on revenue of $2.23 billion, compared to net income of $252.9 million, or $1.27 per diluted share, on revenue of $1.55 billion for 2013.

30.     In the 2014 10-K, Alexion reiterated with regard to the Company's sales and marketing practices that the Company has "established a commercial organization to support current and future sales of Soliris in the United States, Europe, Japan, Asia Pacific countries, and other territories."  Alexion further stated that "[o]ur sales force for Soliris is small compared to that of other drugs with similar revenues; however, we believe that a relatively smaller sales force is appropriate to effectively market Soliris due to the incidence and prevalence of PNH and aHUS."  The Company also told investors in the 2014 10-K that it "monitor[s] inventory within our sales channels to determine whether deferrals are appropriate based on factors such as inventory levels compared to demand, contractual terms and financial strength of distributors."

31.     The 2014 10-K contained signed certifications pursuant to SOX by Defendants Bell and Sinha, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

32.     The statements and omissions set forth in ¶¶29-31 were materially false and misleading.  In truth, Alexion's reported earnings were inflated by improper sales of Soliris.  Further, the Company's commercial organization and sales force were not sufficient to effectively market the drug given that Alexion was forced to resort to illicit sales tactics to meet earnings targets.  In addition, the Company was unable to effectively monitor its inventory levels given that those levels were distorted by sales of Soliris that were inconsistent with Alexion's policies and procedures.  Finally, the SOX certifications contained in the 2014 10-K were materially false and misleading because Company personnel engaged in improper sales practices that overstated Alexion's earnings and financial condition.

33.     On April 23, 2015, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 8-K").   For the quarter, Alexion reported net income of $91.32 million, or $0.45 per diluted share, on revenue of $600.33 million, compared to net income of $159.35 million, or $0.79 per diluted share, on revenue of $566.62 million for the same period in the prior year.   The Q1 2015 8-K announced that Soliris net product sales increased 25% over the prior year to $600.3 million, despite increased currency headwinds.

34.     The next day, on April 24, 2015, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q1 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q").   The Q1 2015 10-Q contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

35.     The statements and omissions set forth in ¶¶33-34 were materially false and misleading.   In truth, Alexion's earnings and net product sales for Soliris were inflated in that they were predicated on improper sales of the drug.   The SOX certifications contained in the Q1 2015 10-Q were also materially false and misleading because the financial information contained in the Q1 2015 10-Q was not accurate, and concealed that the Company lacked adequate internal controls.

36.     On July 30, 2015, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 8-K"). For the quarter, Alexion reported net

income of $170.22 million, or $0.83 per diluted share, on revenue of $636.21 million, compared to net income of $166.5 million, or $0.83 per diluted share, on revenue of $512.5 million for the same period in the prior year.  The Q2 2015 8-K further stated that net product sales of Soliris increased 24% over the prior year to $636 million, and that the Company experienced a 31% volume increase year-over-year for sales of the drug.  Alexion also increased its 2015 revenue guidance given "Strong Growth of Soliris in PNH and aHUS."

37.     On July 31, 2015, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q").  The Q2 2015 10-Q contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

38.     The statements and omissions set forth in ¶¶36-37 were materially false and misleading.  In truth, the Company's net product sales of Soliris and other earnings metrics were inflated by improper sales of Soliris.  Further, the Company increased its 2015 revenue guidance not because of "strong growth of Soliris," but because Alexion was selling the drug in violation of its stated policies and procedures.  The SOX certifications contained in the Q2 2015 10-Q were also materially false and misleading because the Company engaged in improper sales practices that distorted its financial condition.

39.     On October 29, 2015, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 8-K").  For the quarter, Alexion reported a

net loss of $183.76 million, or $0.81 per diluted share, on revenue of $666.64 million, compared to net income of $177.73 million, or $0.88 per diluted share, on revenue of $555.15 million for the same period in the prior year.  The Q3 2015 8-K further stated that net product sales of Soliris increased 20% year-over-year to $665.4 million, and the Company experienced a "29% Volume Increase Year-on-Year."

40.     On November 2, 2015, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q3 2015 8-K and reporting in full the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").  The Q3 2015 10-Q contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

41.     The statements and omissions set forth in ¶¶39-40 were materially false and misleading.  In truth Alexion's financial and operating results, including metrics regarding the growth of its Soliris franchise, were overstated because they were based on improper sales of Soliris.  Further, the SOX certifications contained in the Q3 2015 10-Q were materially false and misleading because the financial information contained in the Q3 2015 10-Q was not accurate, and concealed that the Company lacked adequate internal controls.

42.     On February 8, 2016, Alexion filed an Annual Report for the quarter and year ended December 31, 2015 on Form 10-K with the SEC (the "2015 10-K").  For the quarter, Alexion reported net income of $66.6 million, or $0.29 per diluted share, on revenue of $700.87 million, compared to net income of $153.33 million, or $0.76 per diluted share, on revenue of $599.48 million for the same period in the prior year.  For 2015, Alexion reported net income of

$144.39 million, or $0.67 per diluted share, on revenue of $2.6 billion, compared to net income of $656.91 million, or $3.26 per diluted share, on revenue of $2.23 billion for 2014.

43.     In the 2015 10-K, Alexion stated that "We have established a commercial organization to support current and future sales of our products."  According to the Company, "[o]ur sales force is small compared to that of other drugs with similar revenues; however, we believe that a relatively smaller sales force is appropriate to effectively market our products due to the incidence and prevalence of rare diseases."  Alexion also represented in the 2015 10-K that "[w]e also monitor inventory within our sales channels to determine whether deferrals are appropriate based on factors such as inventory levels compared to demand, contractual terms and financial strength of distributors."

44.     The 2015 10-K contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

45.     The statements and omissions set forth in ¶¶42-44 were materially false and misleading.  In truth, Alexion overstated its earnings by engaging in improper sales tactics for Soliris.  Further, the Company's commercial organization and sales force were not sufficient to effectively market the drug given that Alexion was forced to resort to illicit sales practices to meet earnings targets.  In addition, the Company was unable to effectively monitor its inventory levels given that those levels were distorted by sales of Soliris that were inconsistent with Alexion's policies and procedures.  Finally, the SOX certifications contained in the 2015 10-K were materially false and misleading because Company personnel engaged in improper sales practices that overstated Alexion's earnings and financial condition.

46.     On April 28, 2016, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 8-K").  For the quarter, Alexion reported net income of $92.17 million, or $0.41 per diluted share, on revenue of $701.04 million, compared to net income of $91.32 million, or $0.45 per diluted share, on revenue of $600.33 million for the same period in the prior year.  The Q1 2016 8-K further stated that net product sales of Soliris increased 11% year-over-year to $600 million despite "continued currency headwinds as well as increased macroeconomic weakness in Latin American countries."  Alexion also represented in the Q1 2016 8-K that "Soliris volume increased 18 percent year-on-year."

47.     On April 29, 2016, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q1 2016 8-K and reporting in full the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  The Q1 2016 10-Q contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

48.     The statements and omissions set forth in ¶¶46-47 were materially false and misleading.  In truth, Alexion overstated its earnings, net product sales and growth for Soliris because they were based on sales of Soliris that were inconsistent with Alexion's policies and procedures.  Further, the SOX certifications contained in the Q1 2016 10-Q were materially false and misleading because Alexion's improper sales of Soliris inflated Alexion's financial condition.

49.     On July 28, 2016, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC announcing certain of the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 8-K").  For the quarter, Alexion reported net income of $114.94 million, or $0.51 per diluted share, on revenue of $753.12 million, compared to net income of $170.22 million, or $0.83 per diluted share, on revenue of $636.21 million for the same period in the prior year.  The Q2 2016 8-K represented that net product sales of Soliris increased 10% over the prior year to $701 million, and that "Soliris volume increased 15 percent year-on-year."

50.     On July 29, 2016, Alexion filed a Quarterly Report on Form 10-Q with the SEC reiterating the financial and operating results previously announced in the Q2 2016 8-K and reporting in full the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  The Q2 2016 10-Q contained signed certifications pursuant to SOX by Defendants Hallal and Sinha, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

51.     The statements and omissions set forth in ¶¶49-50 were materially false and misleading.  In truth Alexion's reported earnings and volume growth for Soliris were inflated by improper sales of the drug.  Further, the SOX certifications contained in the Q2 2016 10-Q were materially false and misleading because the financial information contained in that 10-Q was not accurate and the Company's internal controls were inadequate.

## DISCLOSURES OF COMPANY'S MISCONDUCT CAUSE MASSIVE INVESTOR LOSSES

52.     On November 4, 2016, Alexion cancelled an appearance at the Credit Suisse Healthcare Conference, scheduled for November 6-8, 2016, telling Leerink Partners LLC only

that "something came up."  Following the cancellation, analysts noted that Alexion had also failed to file its Quarterly Report on Form 10-Q with the SEC within two days of its earnings announcement on October 27, 2016, a break from the Company's historical practice.  On this news, the price of Alexion stock declined $8.95 per share, or approximately 7%, to close at $120.05 per share on November 7, 2016, the following trading day.

53.     On November 9, 2016, after the market closed, Alexion issued a press release and filed a Current Report on Form 8-K with the SEC concerning certain of the Company's financial and operating results for the quarter ended September 30, 2016 and filed a Form NT 10-Q with the SEC announcing that the Company would not be able to timely file its financial and operating results for the quarter ended September 30, 2016.  The Company explained that the Audit and Finance Committee of Alexion's Board of Directors was investigating allegations raised by a former Alexion employee regarding improper sales practices of Soliris and the "related disclosure and other considerations raised by such practices."  On this news, the price of Alexion stock fell $0.28 per share, or 0.22%, to close at $126.88 per share on November 10, 2016.  As the market continued to digest the significance of Alexion's announced investigation, Alexion's share price fell an additional $13.26 per share, or 11%, to close at $113.62 per share on November 11, 2016.

54.     Then, on December 12, 2016, before the market opened, Alexion announced that CEO Hallal and CFO Sinha resigned.  This disclosure caused the price of the Company's stock to drop from $132.07 per share on December 9, 2016 to $115.08 per share on December 12, 2016, or approximately 13%.

## LOSS CAUSATION

55.     During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Alexion stock and operated as a fraud or deceit on the Class. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market on November 4, 2016, November 9, 2016, and December 12, 2016, the price of Alexion stock fell precipitously, as the prior artificial inflation came out of the price over time.  As a result of their purchases of Alexion stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Alexion stock during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, directors, and officers of Alexion and their families and affiliates.

57.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As of July 27, 2016, Alexion had over 224 million shares of stock outstanding, owned by hundreds or thousands of investors.

58.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

       (a)     Whether Defendants violated the Exchange Act;

       (b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

(e)     Whether the price of Alexion stock was artificially inflated;

(f)     Whether Defendants' conduct caused the members of the Class to sustain damages; and

(g)     The extent of damage sustained by Class members and the appropriate measure of damages.

59.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

60.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

62.     Alexion's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

63.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an

executive officer of Alexion who knew that the statement was false.  None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

## PRESUMPTION OF RELIANCE

64.     At all relevant times, the market for Alexion stock was an efficient market for the following reasons, among others:

(a)     Alexion stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Alexion filed periodic public reports with the SEC and NASDAQ;

(c)     Alexion regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Alexion was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

65.     As a result of the foregoing, the market for Alexion stock promptly digested current information regarding Alexion from all publicly available sources and reflected such information in the price of Alexion stock.  Under these circumstances, all purchasers of Alexion stock during the Class Period suffered similar injury through their purchase of Alexion stock at artificially inflated prices and the presumption of reliance applies.

66.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding Alexion's sales of Soliris—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of Soliris to Alexion's business, as set forth above, that requirement is satisfied here.

## COUNT I

**For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants**

67.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

68.     During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Alexion stock at artificially inflated prices.

69.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's stock in an effort to maintain artificially high market prices for Alexion stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

70.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

71.     During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

72.     Defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Alexion's true condition from the investing public and to support the artificially inflated prices of the Company's stock.

73.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Alexion stock.  Plaintiff and the Class would not have purchased the Company's stock at the prices they paid, or at all, had they been aware that the market prices for Alexion stock had been artificially inflated by Defendants' fraudulent course of conduct.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases of the Company's stock during the Class Period.

75.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

76.     Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

77.     The Individual Defendants acted as controlling persons of Alexion within the meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Alexion, the Individual Defendants had the power and ability to control the actions of Alexion and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.   Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B.   Awarding compensatory damages in favor of Plaintiff and other Class members against all Defendants, jointly and severally, for all damages sustained as a result

of Defendants' wrongdoing, in an amount to be proven at trial, including interest

thereon;

C.  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including attorneys' fees and expert fees; and

D.  Awarding such equitable/injunctive or other further relief as the Court may deem

just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 29, 2016

/s/ *David A. Slossberg*

**HURWITZ, SAGARIN, SLOSSBERG &
KNUFF, LLC**
David A. Slossberg [ct13116]
147 North Broad Street
P.O. Box 112
Milford, Connecticut 06460
Telephone: 203-877-8000
Facsimile:  203-878-9800
DSlossberg@hssklaw.com

*Liaison  Counsel  for  Plaintiff  Boston
Retirement System*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Gerald H. Silk (*pro hac vice* forthcoming)
Hannah Ross (*pro hac vice* forthcoming)
Avi Josefson (*pro hac vice* forthcoming)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
jerry@blbglaw.com
hannah@blbglaw.com
avi@blbglaw.com

*Counsel for Plaintiff Boston Retirement System*

24