UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA, DAVID BRENNAN, DAVID J. ANDERSON, LUDWIG N. HANTSON, and CARSTEN THIEL,<br><br>Defendants. | Civ. No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson |

MEMORANDUM OF LAW
IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

**TABLE OF CONTENTS**

I. INTRODUCTION AND BACKGROUND ................................................................................... 1

II. ARGUMENT ................................................................................................................................. 3

    A. Legal Standards ................................................................................................................. 3

    B. The Court Should Compel Defendants to Produce Documents and Respond to Interrogatories Concerning the Audit Committee Investigation .......... 4

    C. The Court Should Compel Defendants to Produce Documents Concerning the SEC FCPA Action ................................................................................................... 8

    D. The Requested Discovery Is Neither Disproportionate nor Burdensome ............. 11

III. CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agerbrink v. Model Serv. LLC*,
  No. 14-cv-7841, 2017 WL 933095 (S.D.N.Y. Mar. 8, 2017) ................................................... 12

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  No. 13-2581, 2019 WL 3334503 (S.D.N.Y. July 25, 2019) ................................................ 4, 11

*Harnage v. S. Barrone*,
  No. 15-cv- 01035, 2017 WL 3448543 (D. Conn. Aug. 11, 2017) .......................................... 10

*Huminski v. Stop & Shop Supermarket Co.*,
  No.16-cv-1136, 2017 WL 2779468 (D. Conn. June 27, 2017) .............................................. 10

*Huseby, LLC v. Bailey*,
  No. 20-0167, 2021 WL 3206776 (D. Conn. July 29, 2021) ..................................................... 4

*In re Salix Pharms., Ltd.*,
  2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) .......................................................................... 7

*Komondy v. Gioco*,
  No. 12-cv-250, 2015 WL 917867 (D. Conn. Mar. 3, 2015) ................................................... 10

*MacCartney v. O'Dell*,
  No.14-cv-2935, 2018 WL 5023947 (S.D.N.Y. Oct. 17, 2018) ............................................... 10

*Martino v. Nationstar Mortg. LLC*,
  No. 17-1326, 2019 WL 2238030 (D. Conn. May 23, 2019) ............................................ 4, 6, 11

*Pal v. Cipolla*,
  No. 18-00616, 2020 WL 564230 (D. Conn. Feb. 5, 2020) ................................................. 5, 11

*U.S. v. Kozeny*,
  493 F. Supp. 2d 693 (S.D.N.Y 2007), *aff'd*, 541 F.3d 166 (2d Cir. 2008) ........................... 8, 9

**Rules**

Fed. R. Civ. P. 26 ........................................................................................................................... 3

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 3

Lead Plaintiffs Erste Asset Management GmbH and the Public Employee Retirement System of Idaho (together, "Plaintiffs"), by their counsel, respectfully submit this memorandum of law in support of their motion to compel Defendants Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company"), Leonard Bell, David L. Hallal, and Vikas Sinha ("Individual Defendants") (collectively, "Defendants"), to produce documents and interrogatory responses.

I.      INTRODUCTION AND BACKGROUND

Plaintiffs seek from Defendants documents and information related to Plaintiffs' claims (and Defendants' ostensible defenses) as set forth in the Amended Consolidated Class Action Complaint (the "Complaint"), ECF No. 121.[1]  While the parties have been able to reach compromises as to the majority of Plaintiffs' document requests and interrogatories, Defendants refuse to produce discovery concerning two critical subject matters:  (1) Alexion's Audit Committee's investigation into the Company's "inappropriate business conduct" and "sales practices that were inconsistent with Company policies and procedures" that were "caused by senior management not setting an appropriate tone at the top for an effective control environment" in connection with "the Company's sales practices of Soliris® (eculizumab)" (the "Audit Committee Investigation"); and (2) Defendants' improper payments to foreign officials in violation of the Foreign Corrupt Practices Act ("FCPA") that ultimately led to a U.S. Securities and Exchange Commission ("SEC") investigation and $21.5 million settlement with Alexion in 2020 (the "SEC FCPA Action").

At issue are Plaintiffs' Request for Production ("RFP") No. 1 and Interrogatories Nos. 4 and 5, which concern the Audit Committee Investigation, and Plaintiffs' RFP No. 2, which concerns the SEC FCPA Action.  Specifically, Plaintiffs' RFP No. 1 asks Defendants to produce:

---

[1]     Citations to "¶ __" herein refer to paragraphs of the Complaint, ECF No. 121.

> All documents provided to the Audit and Finance Committee in connection with its "investigation into allegations that recently have been made by a former employee with respect to the Company's sales practices of Soliris® (eculizumab)" and/or its investigation concerning "whether Company personnel have engaged in sales practices that were inconsistent with Company policies and procedures and the related disclosure and other considerations raised by such practices," as discussed in Alexion's November 9, 2016 press release announcing that the Company would not be able to timely file its Form 10-Q for the third quarter ended September 30, 2016.  *See* Complaint ¶ 174.

Exhibit 1 at 15.

Plaintiffs' Interrogatory No. 4 asks Defendants to "[i]dentify the 'former employee' who made the 'allegations . . . with respect to the Company's sales practices of Soliris® (eculizumab)' as discussed in Alexion's November 9, 2016 press release, and as discussed in ¶ 174 of the Complaint, and each and every person to whom that 'former employee' made those allegations." Exhibit 2 at 14.

Plaintiffs' Interrogatory No. 5 asks Defendants to "[i]dentify each and every person who was involved in the 'investigation' referenced by the Company in its January 4, 2017 press release, as described in ¶ 190 of the Complaint." Exhibit 2 at 14.

Plaintiffs' RFP No. 2 asks Defendants to produce:

> All documents and communications concerning any investigation of Alexion by MA USAO, DOJ, DHHS OIG, and/or SEC including, but not limited to, any documents and communications concerning any investigation leading to (i) Alexion's agreement "to pay $13 million to resolve the government's allegations" as announced in the DOJ's April 4, 2019 press release; and (ii) ***Alexion's settlement with the SEC and payment of approximately $21.5 million in disgorgement, civil penalties, and pre-judgment interest as announced in Alexion and SEC's July 2, 2020 press releases***.  This request specifically includes, but is not limited to:
>
> i. all communications between or among You and MA USAO, DOJ, DHHS OIG, and/or SEC;
>
> ii. all documents produced or otherwise provided by You to MA USAO, DOJ, DHHS OIG, and/or SEC;

2

    iii. all documents (including subpoenas, CIDs, and any other requests for documents, whether formal or informal) produced or otherwise provided to You by MA USAO, DOJ, DHHS OIG, and/or SEC;

    iv. all transcripts of any witness interviews, depositions, or other proceedings in connection with any such investigation(s);

    v. documents sufficient to identify any and all search terms proposed or agreed-upon between You and MA USAO, DOJ, DHHS OIG, and/or SEC; and

    vi. documents sufficient to identify the identities of any persons contacted, interviewed, deposed, or otherwise of interest in connection with any such investigation(s) or proceeding(s).

Exhibit 1 at 15-16 (emphasis added).

On October 20, 2021, Defendants served Responses and Objections ("R&Os") to Plaintiffs' RFPs, which are attached hereto as Exhibit 3. On November 3, 2021, Defendants served R&Os to Plaintiffs' Interrogatories, which are attached hereto as Exhibit 4. Thereafter, Plaintiffs and Defendants engaged in a series of meet-and-confer conference calls on October 28, 2021; November 1, 2021; November 18, 2021; and December 10, 2021, whereby the parties were able to reach agreement on substantially all of Plaintiffs' discovery requests, leaving the parties at impasse on the issues presented here.

## II.    ARGUMENT

### A.    Legal Standards

Under Federal Rule of Civil Procedure 26, a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Such "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Relevance for discovery purposes is an extremely broad concept which has been construed . . . to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case."

*Martino v. Nationstar Mortg. LLC*, 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (internal quotation marks omitted). "[R]elevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." *Huseby, LLC v. Bailey*, 2021 WL 3206776, at *6 (D. Conn. July 29, 2021).

Once the moving party "make[s] 'a *prima facie* showing of relevance,' . . . it is up to the responding party to justify curtailing discovery." *Id.* (internal quotation marks omitted). That is, the objecting party "bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded by the federal discovery rules, each request is not relevant," *id.*, and why the requested discovery is not proportional to the needs of the case.

When determining whether the discovery is proportional, courts consider a number of factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2019 WL 3334503, at *5 (S.D.N.Y. July 25, 2019).

**B.     The Court Should Compel Defendants to Produce Documents and Respond to Interrogatories Concerning the Audit Committee Investigation**

Defendants refuse to produce documents and provide interrogatory responses related to the Audit Committee Investigation because—based on their counsels' unilateral interpretation—it related *only* to Alexion's practice of pulling in sales and not Plaintiffs' allegations of unethical and illegal sales practices. But Defendants ignore the Audit Committee Investigation's central role in Plaintiffs' theory of liability, which was upheld by this Court. Far from a mere investigation into pull-in sales, the Audit Committee Investigation found a "material weakness in [the Company's] internal controls over financial reporting . . . caused by senior management not setting an

4

appropriate tone at the top for an effective control environment," and resulted in the forced resignation of two named Individual Defendants, former Chief Executive Officer Hallal and former Chief Financial Officer Sinha. ¶¶ 183-90. Defendants' unilateral characterization of the relevance of the Audit Committee Investigation cannot and does not absolve them of their duties under the Federal Rules to produce information relevant to any party's claim or defense. *See Pal v. Cipolla*, 2020 WL 564230, at *7 (D. Conn. Feb. 5, 2020) (noting relevance is "construed broadly" in discovery).

Defendants' claim that the scope of the Audit Committee Investigation related *exclusively* to pull-in sales is also belied by Alexion's own public statements during the relevant time period. For example, in an Alexion press release[2] dated January 4, 2017 (which was filed on Form 8-K with the SEC on January 5, 2017),[3] the Company stated that "[t]he Audit and Finance Committee Investigation focused *primarily* on 'pull-in' sales of Soliris."[4] And in that same press release, the Company made clear that the Audit Committee's investigation "stemm[ed] from allegations made by a former employee concerning ***certain of the Company's Soliris® (eculizumab) sales practices***." Moreover, the same release noted the Company's conclusion that "based on that same investigation, . . . there was a ***material weakness in its internal controls over financial reporting*** that existed as of December 31, 2015 and subsequent quarters, ***caused by senior management not setting an appropriate tone at the top for an effective control environment***." ¶¶ 190-93.

---

[2]   *See* "Alexion Pharmaceuticals Files Form 10-Q for Third Quarter 2016" (Press Release) (Jan. 4, 2017), available at https://ir.alexion.com/news-releases/news-release-details/alexion-pharmaceuticals-files-form-10-q-third-quarter-2016.

[3]   *See* Alexion Pharmaceuticals, Inc., Current Report (Form 8-K) Ex. 99.1 (Press Release issued by Alexion Pharmaceuticals, Inc. on January 4, 2017) (Jan. 5, 2017), available at https://ir.alexion.com/node/19561/html.

[4]   All emphases added.

5

Additionally, in Alexion's quarterly report filed on Form 10-Q that same day, the Company stated that "[t]he Audit Committee Investigation found that senior management applied pressure on personnel to use pull-in sales to meet targets" and that "certain Company personnel *engaged in inappropriate business conduct to realize pull-in sales*, as a result of pressure from senior management." ¶ 297.  Thus, as described by the Company itself, "as a result of pressure from senior management," and in order to "realize" pull-in sales, Defendants "engaged in inappropriate business conduct," which in turn was caused by "senior management not setting an appropriate tone at the top." ¶¶ 190-91.

In sum, the Company's own statements directly contradict any narrow interpretation that the Audit Committee Investigation was limited *only* to pull-in sales, or that the investigation was so limited in scope that it could not "bear on" or could not "reasonably . . . lead to other matters that could bear on, any issue that is or may be in the case." *Martino*, 2019 WL 2238030, at *1.

Apart from the foregoing, the Court's August 19, 2021 Order denying Defendants' Motion to Dismiss (ECF No. 172, the "MTD Order") also acknowledged that the inappropriate Soliris sales conduct that the Audit Committee investigated fell squarely within the allegations in Plaintiffs' Complaint and is relevant to Plaintiffs' claims.  In that regard, the Court noted that "Plaintiffs . . . allege . . . that '[t]he Audit Committee Investigation found that senior management applied pressure on personnel to use pull-in sales to meet targets,' and that 'certain Company personnel engaged in inappropriate business conduct to realize pull-in sales, as a result of pressure from senior management[.]'" MTD Order at 16.  In other words, while the Audit Committee Investigation addressed "pull-in sales," it also more broadly encompassed "inappropriate business conduct *to realize* pull-in sales." *Id.*

The Complaint also alleged—and the Court agreed—that Defendants' Class Period

6

statement regarding the Audit Committee Investigation was "materially misleading because it failed to disclose the other allegedly illegal sales practices in which Alexion was engaging at that time." *Id.* at 16-17 (citing ¶ 297); *see also id.* at 82 (holding "false and misleading statements" in "January 4, 2017 Form 10-Q" were "adequately pled").[5]

The Court also held that Plaintiffs' allegations regarding the Audit Committee Investigation supported a strong inference of Defendants' scienter. Specifically, the Court noted that "'[t]he Audit Committee Investigation found that senior management applied pressure on personnel to use pull-in sales to meet targets,' and that 'certain Company personnel engaged in inappropriate business conduct to realize pull-in sales, as a result of pressure from senior management'" and held that "[t]hese allegations with respect to the tone at the top, coupled with the specific factual details as to the personal involvement of [Defendants] Bell and Hallal in high-pressure sales tactics and pressuring Alexion employees to engage in illegal and unethical sales practices[, including the use of pull-in sales to meet targets], support[ed] an inference of scienter." MTD Order at 66 (quoting ¶ 297). *See also id.* at 68 (holding that that "the abrupt resignations of Hallal and Sinha came shortly after the company launched the [Audit Committee's] internal investigation into sales practices" and noted that the "'Individual Defendants' resignations' in the midst of the 'investigations by [the] Audit Committee . . . support a strong inference of scienter.'") (quoting *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *15 (S.D.N.Y. Apr. 22, 2016)).

Further, the Court also held that Plaintiffs sufficiently alleged loss causation in part through

---

[5]    Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 142) ("MTD Opp.") specifically argued that "[o]n January 4, 2017, Alexion admitted that management had set an inappropriate 'tone at the top,' but concealed the full extent of Alexion's illegal and unethical conduct, by instead offering to investors the red herring that the Company's improper sales practices related merely to 'pull-in' sales representing less than 1% of its 2015 revenue." MTD Opp. at 3; *see also id*. at 17, 39.

7

allegations that "the Audit and Finance Committee [was] investigating whether Company personnel . . . engaged in sales practices that were inconsistent with Company policies and procedures and the related disclosure and other considerations raised by such practices." *Id.* at 80.

Thus, the Court's MTD Order acknowledged and sustained Plaintiffs' allegations regarding the Audit Committee Investigation—including as to falsity, scienter, and loss causation—confirming the relevance of discovery regarding that investigation. Because the Audit Committee Investigation is relevant to Plaintiffs' allegations, as explained above, Plaintiffs respectfully request that the Court compel Defendants to produce documents related to the investigation consistent with RFP No. 1, and that Defendants provide fulsome and non-evasive answers to Interrogatories Nos. 4 and 5, which seek (i) the name of the "former employee" whose allegations precipitated the Audit Committee Investigation; and (ii) the names of the individuals involved in the investigation.

### C. The Court Should Compel Defendants to Produce Documents Concerning the SEC FCPA Action

Defendants also refuse to produce documents in response to RFP No. 2 concerning Alexion's $21.5 million settlement, in 2020, of the SEC FCPA Action, which resolved allegations that Alexion paid bribes to individuals with ties to foreign governments during the same time period at issue in this case. Like the Audit Committee Investigation, the SEC FCPA Action is highly relevant to Plaintiffs' allegations and is otherwise supported by the Court's MTD Order. *See* ECF No. 172. Indeed, as the Court explained, "most – but not all – of the alleged misstatements are sufficiently connected to a source of success alleged to have been bolstered by illegal and unethical sales practices." *Id.* at 31. Bribing foreign officials to increase sales is, by definition, an illegal and unethical business practice. *See U.S. v. Kozeny*, 493 F. Supp. 2d 693, 703 (S.D.N.Y 2007), *aff'd*, 541 F.3d 166 (2d Cir. 2008) ("The FCPA makes it illegal to bribe foreign government

8

officials to obtain or retain business, or to direct business to another person").

Moreover, the SEC's description of Alexion's FCPA violations fits squarely into Plaintiffs' allegations, both in terms of substance (illegal and unethical business practices) and time period (2014 and 2015). *See* Exhibit 5 (*In the Matter of Alexion Pharmaceuticals, Inc.*, Release No. 89214, July 2, 2020 at 2, 6) (ECF No. 156-1) (alleging that (i) "[f]rom 2010 to 2015 Alexion Turkey paid the Consultant over $1.3 million . . . the Consultant passed a portion of these funds to Turkish government officials . . . to secure favorable treatment of Soliris"; (ii) "from 2011 to 2015, Alexion's subsidiary in Russia made payments to foreign officials in order to influence the allocation of regional healthcare budgets for Soliris, increase the number of approved Soliris prescriptions, and favorably influence the regulatory treatment of Soliris"; and (iii) "certain employees at Alexion Brazil and Alexion Columbia created or directed third parties to create inaccurate financial records concerning payments to third parties, including patient advocacy organizations").[6]

Here, just as Plaintiffs have alleged that Defendants misled investors by touting the supposed source of Alexion's continued success—its ability to identify new patients—which in fact differed significantly from the actual source of that success—its illegal and unethical sales and marketing practices, *see e.g.* ¶¶ 11, 297-300—the SEC FCPA Action alleged that Alexion paid foreign bribes to obtain regulatory approval and increase approved patient prescriptions and thus sales. By any measure, Alexion's FCPA violations involved illegal and unethical sales practices and inappropriate business conduct by Alexion employees during the Class Period (January 30, 2014 to May 26, 2017). Accordingly, materials concerning these illegal practices are highly

---

[6]   The SEC FCPA Action settlement was also attached to Lead Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion to Dismiss The Amended Consolidated Class Action Complaint. *See* ECF No. 156, Exhibit A (ECF No. 156-1).

9

relevant to Plaintiffs' allegations and Defendants should be required to produce them.

Defendants maintained—during the parties' meet-and-confer conference calls—that the specific illegal practices referenced in the SEC FCPA Action were not *explicitly* included within the four-corners of Plaintiffs' Complaint. This argument misses the mark for at least two reasons. ***First***, as Defendants are well aware, the SEC settlement was not made public until July 2, 2020, well *after* Plaintiffs filed their Complaint in this action on June 2, 2019 (ECF No. 121). Of course, soon after the SEC settlement was made public, Plaintiffs immediately filed a supplemental brief with this Court describing the settlement, explaining how it relates to the case, and attaching it for the Court's consideration. *See* ECF No. 156.

***Second***, even if the SEC FCPA Action settlement document had existed when the Complaint was filed, the question of whether it was specifically referenced in Plaintiffs' Complaint still would not be dispositive. In that regard, the Federal Rules and well-established case law confirm that "***discovery is not limited to issues raised by the pleadings***." *Komondy v. Gioco*, 2015 WL 917867, at \*2 (D. Conn. Mar. 3, 2015). Rather, courts regularly hold that misconduct in other actions that is similar to the misconduct being alleged in the current action is discoverable. *See Harnage v. S. Barrone*, 2017 WL 3448543, at \*6 (D. Conn. Aug. 11, 2017) (holding "records involving complaints of a similar nature . . . could lead to evidence that would be admissible at trial and thus, are discoverable"); *Huminski v. Stop & Shop Supermarket Co.*, 2017 WL 2779468, at \*2 (D. Conn. June 27, 2017) (stating information related to prior actions discoverable because it was "relevant to the defendant's motive and intent"). *See also MacCartney v. O'Dell*, 2018 WL 5023947, at \*2–3 (S.D.N.Y. Oct. 17, 2018) (noting that it is "well-established within [the Second] Circuit that the rule of discovery will be satisfied if there is 'any possibility' that the information sought to be obtained may be relevant to the subject matter of the action").

Here, as did Plaintiffs' Complaint, the later-revealed SEC FCPA Action settlement describes the illegal practices (*i.e.*, bribes and payments to patient advocacy organizations) taking place in 2014 and 2015, a time period that coincides with Plaintiffs' allegations. Nothing more need be shown to establish relevance—particularly in view of the broad scope of discovery under the Federal Rules. *See*, *e.g.*, *Pal*, 2020 WL 564230, at *7; *Martino*, 2019 WL 2238030, at *1. Because the illegal conduct underlying the SEC FCPA Action is relevant to the conduct alleged in this action, as set forth above, Plaintiffs respectfully request that the Court compel Defendants to produce documents in response to Plaintiffs' RFP No. 2.

D.  **The Requested Discovery Is Neither Disproportionate nor Burdensome**

To date, Defendants have not provided any explanation why discovery regarding the Audit Committee Investigation or SEC FCPA Action would be disproportionate to the needs of the case or unduly burdensome. Plaintiffs have offered to limit the scope of production by applying search terms and custodians to RFP Nos. 1 and 2 (as the parties agreed to do with most of Plaintiffs' other RFPs), thereby reducing the burden and expense on Defendants. Yet, Defendants remain unwilling to produce any documents whatsoever in response to RFP Nos. 1 and 2.

Courts consider the following factors when assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *AMCI Holdings, Inc.*, 2019 WL 3334503, at *5. Here, the discovery requested is proportional to the needs of the case and not unduly burdensome on Defendants. The issues at stake in this case are "of substantial public importance" as they relate to protecting investors from securities fraud in the context of a class action consisting of thousands of class members. Further, the amount in controversy is in the billions of dollars (as measured by market capitalization loss), which favors

11

finding the requests here proportional to the needs of the case. *See, e.g.*, *Agerbrink v. Model Serv. LLC*, 2017 WL 933095, at *3 (S.D.N.Y. Mar. 8, 2017) (stating that large amounts of damages alleged favored compelling additional discovery). Furthermore, Defendants' "relative access to relevant information" which is in their sole possession, also favors granting the instant motion to compel. *Id.* at *4. Finally, the "benefit of the discovery plainly outweighs the burden" on Defendants as issues related to the Audit Committee Investigation and the SEC FCPA Action are important to Plaintiffs' claims and the burden on Defendants is minimal. *Id.*

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) compel the production of documents and information in response to RFP Nos. 1 and 2 and Interrogatories Nos. 4 and 5; and (ii) grant any other relief that is just and proper.

DATED:     January 14, 2022               Respectfully submitted,

                                          MOTLEY RICE LLC

                                          By: */s/ William H. Narwold*
                                               WILLIAM H. NARWOLD (CT 00133)
                                          Mathew P. Jasinski
                                          One Corporate Center
                                          20 Church Street, 17th Floor
                                          Hartford, CT  06103
                                          Telephone:  (860) 882-1681
                                          Facsimile:   (860) 882-1682
                                          bnarwold@motleyrice.com
                                          mjasinski@motleyrice.com

                                               -and-

                                          Gregg S. Levin (*pro hac vice*)
                                          William S. Norton (*pro hac vice*)
                                          Joshua C. Littlejohn (*pro hac vice*)
                                          Christopher F. Moriarty (*pro hac vice*)
                                          Meredith B. Weatherby (*pro hac vice*)
                                          28 Bridgeside Blvd.
                                          Mount Pleasant, SC  29464

Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
mweatherby@motleyrice.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*

LABATON SUCHAROW LLP
Michael H. Rogers (*pro hac vice*)
James W. Johnson (*pro hac vice*)
James T. Christie (*pro hac vice*)
140 Broadway
New York, NY 10017-5563
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
mrogers@labaton.com
jjohnson@labaton.com
jchristie@labaton.com

*Co-Lead Counsel for Lead Plaintiffs and the Class*