## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA, DAVID BRENNAN, DAVID J. ANDERSON, LUDWIG N. HANTSON, and CARSTEN THIEL,<br><br>               Defendants. | No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson<br><br>**Oral Argument Requested** |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

**WIGGIN & DANA**
265 Church Street
P.O. Box 1832
New Haven, CT 06510
Phone: (860) 297-3703

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000

2001 K Street, NW
Washington, DC 20006-1047
Tel:  (202) 223-7327

*Attorneys for Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, and Vikas Sinha*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

BACKGROUND ....................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT ........................................................................................................................... 5

I.      Plaintiffs' Motion to Compel Discovery Relating  to the Audit Committee Investigation
Should Be Denied ........................................................................................................ 5

II.     Plaintiffs' Motion to Compel All Documents Concerning Alexion's  FCPA Settlement
with the SEC Should Also Be Denied .............................................................. 13

CONCLUSION........................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bausch & Lomb Inc.* v. *Alcon Lab'ys, Inc.*,
  173 F.R.D. 367 (W.D.N.Y. 1995)..........................................................................12

*Chen* v. *Ampco Sys. Parking*,
  No. 08-CV-0422-BEN (JMA), 2009 WL 2496729 (S.D. Cal. Aug. 14, 2009)......................14

*In re Honeywell Int'l, Inc. Sec. Litig.*,
  230 F.R.D. 293 (S.D.N.Y. 2003) ..........................................................................16

*Midwest Gas Servs., Inc.* v. *Ind. Gas Co.*,
  No. IP 99-690-C-D/F, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000) .........................................14

*Mirmina* v. *Genpact LLC*,
  No. 3:16-CV-00614(AWT), 2017 WL 2559733 (D. Conn. June 13, 2017)............................12

*Moore* v. *Morgan Stanley & Co.*,
  No. 07 C 5606, 2008 WL 4681942 (N.D. Ill. May 30, 2008) .................................................14

*Ravago Americas, LLC* v. *Dmytruk*,
  No. 3:18-CV-2054 (AWT), 2019 WL 11638876 (D. Conn. Mar. 1, 2019) .............................5

*S.C. Johnson & Son, Inc.* v. *Henkel Corp.*,
  No. 3:19CV00805 (AVC), 2020 WL 5640528 (D. Conn. Sept. 22, 2020) .............................12

*Tottenham* v. *Trans World Gaming Corp.*,
  No. 00 Civ. 7697 (WK), 2002 WL 1967023 (S.D.N.Y. June 21, 2002) ................................8

*Vaigasi* v. *Solow Mgmt. Corp.*,
  No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) .....................12

*Wells Fargo Bank, N.A.* v. *Konover*,
  No. 3:05-CV-1924 (CFD) (WIG), 2008 WL 11377691 (D. Conn. July 10,
  2008) ......................................................................................................................5, 16

*Wollam* v. *Wright Med. Grp., Inc.*,
  No. 10-CV-03104-DME-BNB, 2011 WL 1899774 (D. Colo. May 18, 2011).......................13

*In re Zyprexa Prod. Liab. Litig.*,
  No. 04-MD-1596 (JBW), 2009 WL 1310890 (E.D.N.Y. May 8, 2009)................................14

**Statutes**

42 U.S.C. § 1320a-7b.........................................................................................................2

**Other Authorities**

Benjamin Elgin et al., *When the Patient Is a Gold Mine: The Trouble With Rare-Disease Drugs* ................................................................................................................2

Matthew Herper, *How A $440,000 Drug Is Turning Alexion Into Biotech's New Innovation Powerhouse* .............................................................................................2

Defendants Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, and Vikas Sinha, by and through their undersigned counsel, hereby submit this memorandum in opposition to Plaintiffs' Motion to Compel the Production of Documents and Interrogatory Responses. (Dkt. 205.)

**BACKGROUND**

In this motion, Plaintiffs ask the Court to compel Defendants to produce voluminous and burdensome discovery on two topics. The first was expressly abandoned by Plaintiffs when they filed the operative amended complaint (the "Complaint") because the Court told them that their allegations of falsity and scienter were deficient, while the second has never appeared in any iteration of the complaint. As a result, and for the additional reasons discussed in greater detail below, Plaintiffs' motion should be denied in its entirety.

\*          \*          \*

Alexion is a biopharmaceutical company that serves patients with devastating and rare disorders through its transformative drug Soliris (eculizumab). Soliris treats two life-altering and life-threatening rare disorders, PNH and aHUS. Because these disorders are so rare, they are often missed or mis-diagnosed by physicians. (*See* Ex. 8 – Matthew Herper, *How A $440,000 Drug Is Turning Alexion Into Biotech's New Innovation Powerhouse*, Forbes (Sept. 24, 2012).)[1] To promote diagnosis and treatment of patients, who would otherwise die or suffer debilitating symptoms, Alexion engages in significant disease awareness and diagnostic initiatives, including: promoting disease awareness to address the medical community's knowledge gap as it relates to PNH and aHUS; partnering with physicians and labs to ensure accurate diagnostic

---

[1] Citations in the form "Ex. __" are to Exhibits to the Declaration of Jane B. O'Brien in Support of Defendants' Opposition to Plaintiffs' Motion to Compel ("O'Brien Decl."), filed herewith.

methods and to promote patient identification and testing; and providing patient support, including disease and treatment education, health insurance navigation, and patient community connections.

In this action, Plaintiffs allege that Defendants violated the federal securities laws and misled investors by falsely attributing Alexion's financial success to its ability to identify new patients through these disease awareness and diagnostic efforts, while omitting mention of "illegal" and "unethical" practices that were allegedly being used to drive revenue. (Dkt. 121, ¶¶ 3, 164, 167.)  According to Plaintiffs, and as previously summarized by this Court, these alleged "illegal and unethical practices" included "pressuring or frightening patients to begin or continue treatment with Soliris; misappropriating patients' confidential personal health information in violation of the Health Insurance Portability and Accountability Act of 1996 ('HIPAA'); and funneling illegal kickbacks through [patient advocacy] charities in violation of 42 U.S.C. § 1320a-7b (the 'Anti-Kickback Statute')."  (Dkt. 172 ("Ruling on MTD") at 5.)

All of these so-called "illegal and unethical practices" were allegedly revealed in an article published by Bloomberg News on May 24, 2017, which described conduct by sales personnel and nurses based in the United States.  (*See* Ex. 9 – Benjamin Elgin et al., *When the Patient Is a Gold Mine: The Trouble With Rare-Disease Drugs*, Bloomberg (May 24, 2017) (the "Bloomberg Article").)  The Bloomberg Article detailed purported high-pressure sales tactics intended to induce patients diagnosed with PNH or aHUS to begin or continue Soliris treatment, alleged unethical partnerships with partner labs by which Alexion allegedly obtained detailed patient information, and supposed improper relationships with non-profit organizations, including charitable contributions to a Brazilian non-profit that filed "fraudulent lawsuits" for reimbursement of Soliris treatment administered to patients.  *See id*.  Plaintiffs' Complaint draws

2

extensively from the allegations in the Bloomberg Article.  (Dkt. 121, ¶¶ 3, 6, 25, 62, 133–135, 138, 155–162, 186.)

It was on this theory of "illegal and unethical practices," which the Court assumed to be true at the motion to dismiss stage, that Plaintiffs' securities class action claims were sustained. (Ruling on MTD at 19.)  In denying Defendants' motion to dismiss, this Court ruled that Plaintiffs had adequately alleged that Alexion's statements "were not sufficient to 'accurately inform rather than mislead prospective' investors," because these statements did not make mention that the company "(1) engaged in certain unethical, high-pressure sales tactics; (2) engaged partner laboratories in a manner which violated HIPAA and other ethical standards; and (3) engaged with laboratories and patient assistance organizations in ways that violated federal anti-kickback laws and Brazilian laws."  (*Id.* at 36-37 (internal citations omitted).)

Defendants have already agreed to produce documents concerning these purported practices.  Indeed, in response to Plaintiffs' exceedingly broad 55 requests for the production of documents ("RFPs") and 10 interrogatories, Defendants agreed to provide wide-ranging discovery into the alleged "illegal and unethical practices" described in the Complaint, including—among many other things—non-privileged (i) documents produced to the government in connection with Alexion's 2019 False Claims Act settlement with the Department of Justice regarding donations to co-pay assistance foundations; (ii) documents concerning Alexion's relationships with nine different labs (even though only five were identified in the Complaint); (iii) documents concerning 10 U.S.-based patient advocacy organizations (even though only three patient advocacy organizations were identified in the Complaint); (iv) sales promotion or training materials, including minutes, agendas, presentations, and decks prepared in connection with national sales meetings; (v) compliance hotline records and ethical complaints;

and (vi) numerous additional categories of documents relating to the sales practices and conduct alleged in Plaintiffs' complaint.  (*See* Ex. 4 – Dec. 1, 2021 Email from T. Holoshitz to J. Christie; Ex. 6 – Dec. 22, 2021 Email from T. Holoshitz to J. Christie.)

Plaintiffs nonetheless seek to compel discovery regarding two entirely distinct and unrelated topics: (i) alleged inappropriate "pull-in" sales that were investigated by Alexion's Audit and Finance Committee, which did not result in any restatement of Alexion's revenue; and (ii) purported violations of the Foreign Corrupt Practices Act (the "FCPA") in Russia, Turkey, Brazil, and Colombia, which were investigated by the Securities and Exchange Commission ("SEC") between 2015 and 2020.  As discussed in greater detail below, neither the Audit Committee's "pull-in" investigation nor the SEC's FCPA investigation is relevant to the fraud claims sustained in the Court's motion to dismiss opinion.  Indeed, in their prior amended complaint, Plaintiffs relied heavily on pull-ins to support their allegations of fraud (Dkt. 63), but after being told by the Court that the prior amended complaint would be dismissed (likely because no revenue was ever restated due to "pull-ins", and the disclosure of "pull-ins" did not cause Alexion's stock price to decline or losses to shareholders) (Dkt. 114), Plaintiffs disavowed those allegations in their further amended complaint that was sustained (Dkt. 121).  And as to the SEC's FCPA investigation, this subject is simply not mentioned at all in Plaintiffs' Complaint— nor could it support Plaintiffs' claims of securities fraud, given that the Company had disclosed the existence of the SEC's FCPA investigation during the putative class period, and no stock losses were associated with announcements of the FCPA investigation (or the later settlement with the SEC) at all.  Given the breadth of discovery Defendants have already agreed to produce, the utter lack of relevance of the disputed categories of discovery at issue in this motion, and the

4

enormous burden associated with providing that discovery, Plaintiffs' motion to compel should be denied.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides for discovery related to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "The party seeking discovery bears the burden of initially showing relevance." *Ravago Americas, LLC* v. *Dmytruk*, No. 3:18-CV-2054 (AWT), 2019 WL 11638876, at *1 (D. Conn. Mar. 1, 2019) (quoting *Mandell* v. *The Maxon Co., Inc.*, No. 06-CV-460(RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)); *see also Wells Fargo Bank, N.A.* v. *Konover*, No. 3:05-CV-1924 (CFD) (WIG), 2008 WL 11377691, at *5 (D. Conn. July 10, 2008) ("The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." (citation omitted)). Plaintiffs have not met their burden of showing relevance here, and the discovery sought is disproportionate to the needs of the case and overly burdensome to Defendants.

## ARGUMENT

**I.     Plaintiffs' Motion to Compel Discovery Relating
       to the Audit Committee Investigation Should Be Denied**

On January 4, 2017, Alexion announced the results of a previously disclosed investigation by its Audit and Finance Committee (the "Audit Committee Investigation") into "allegations made by a former employee concerning the Company's Soliris sales practices." (Ex. 10 – Jan. 4, 2017 10-Q at 25.) In particular, the former employee alleged that these

practices resulted in "customers placing orders for shipments of Soliris in an earlier fiscal quarter than the fiscal quarter they otherwise would have"—i.e., "pull-in" or advanced sales. (*Id.*) The conduct that was investigated did not relate to the practices later addressed in the Bloomberg Article, namely, interactions with physicians, nurses, labs, patients and patient advocacy groups, but rather concerned the conduct of a discrete team at Alexion (the customer operations team), which was responsible for arranging delivery of Soliris infusions to treatment centers for existing patients.

The Audit Committee Investigation was conducted "with the assistance of outside counsel, forensic accountants[,] and other accounting firm advisors." (*Id.*) The purpose of the investigation was to determine "the reasons for pull-in sales, whether such transactions were conducted in accordance with the Company's policies and procedures, and whether revenue from pull-in sales was properly recognized in accordance with U.S. GAAP." (*Id.*)

Based on its investigation, the Audit Committee concluded that Alexion's previously issued financial results did not require restatement and there were no identified "instances of improper revenue recognition" or other accounting irregularities. (*Id.*) Alexion nonetheless concluded that "there was a material weakness in the Company's internal controls over financial reporting because senior management did not set an appropriate 'Tone at the Top' for an effective control environment and such failure resulted in inappropriate business conduct." (*Id.*) As further explained in Alexion's public disclosures, that "inappropriate business conduct" was coordinated by "personnel in the customer operations department in their capacity as coordinators for the shipment of orders for customers" who encouraged customers to place orders for a patient earlier than they might otherwise have placed the order. (*Id.*)

There was no decline in Alexion's stock price in response to this disclosure and Plaintiffs have repeatedly disavowed—to both the Court and to Defendants—that their claims have anything to do with pull-ins.  In fact, Plaintiffs' prior amended complaint, filed July 14, 2017, focused heavily on allegations that Defendants defrauded Alexion's shareholders by failing to disclose that its operational staff was engaging in inappropriate business conduct in order to "pull-in" sales to an earlier accounting period.  (Dkt. 63, ¶¶ 59–71.)  Defendants moved to dismiss, arguing that—among other things—pull-in sales are not inherently unlawful, and in Alexion's case had not resulted in any restatement of prior financial statements or improper revenue recognition.  (Dkt. 79.)  Prior to issuing a decision on Defendants' motion, during a March 26, 2019 telephonic conference, the Court advised Plaintiffs that it was prepared to grant Defendants' motion for failure to adequately plead an actionable misstatement or omission and scienter.  (*See* Dkt. 114.)  In response, Plaintiffs asked for (and were granted) leave to file the now-operative Complaint, in which Plaintiffs reversed course and disclaimed pull-ins as now irrelevant to their claims of securities fraud.  (Dkt. 121.)  Plaintiffs have since repeatedly disavowed the relevance of pull-ins, including in opposing Defendants' subsequent motion to dismiss, which stated that "Defendants' continued focus on pull-in sales . . . is misplaced because the Amended Complaint does not take specific issue with such tactics," that "the Amended Complaint . . . does not focus on pull-in sales" and that "Defendants' focus on 'pull-in sales' and 'Alexion's operations in Brazil' . . . are an attempt to distract from the Amended Complaint's well-pleaded allegations regarding the Company's pervasive illegal and unethical practices." (*See* Dkt. 142 at 31 n.16, 4,19 n.6.)  Instead, the operative Complaint is focused on the other "illegal and unethical practices" and high-pressure sales tactics described in the Bloomberg Article.  (Dkt. 121 ¶ 4.)

Notwithstanding the undisputed irrelevance of pull-ins, Plaintiffs are now seeking to compel (i) the production of "all documents provided to the Audit and Finance Committee in connection with its 'investigation'" (RFP 1); (ii) a response to an interrogatory calling for Defendants to "identify the 'former employee'" who made the allegations prompting that investigation and to whom that complaint was made (Interrogatory 4); and (iii) a response to an interrogatory demanding that Defendants "identify each and every person who was involved" in the Audit Committee Investigation (Interrogatory 5). Plaintiffs' demand with respect to Interrogatory No. 4 is effectively moot, as Defendants already provided Plaintiffs with a response to Interrogatory 4 on November 12, 2021, in an effort to resolve this dispute, and given that the information was readily available. (O'Brien Decl. ¶ 12.) RFP 1 and Interrogatory 5, by contrast, are extremely burdensome and not proportional to the needs of this case, given the lack of relevance. RFP 1, in particular, seeks every document "provided to" the Audit Committee, which encompasses over 3 million electronic documents, including email files of sixteen different custodians, and which have not already been pared down by the type of relevance or privilege review that would be applicable under the Federal Rules of Civil Procedure. (O'Brien Decl. ¶ 19.)

Plaintiffs' principal justification for seeking this discovery is their conjecture that the Audit Committee Investigation was in fact broader in scope than described in Alexion's public disclosures and by Defendants' counsel during the meet-and-confer process. (Dkt. 205-1 ("Pls.' Br.") 4–6.) Neither Plaintiffs' rank speculation nor any of their other arguments provide support for this blatant fishing expedition. *See Tottenham* v. *Trans World Gaming Corp.*, No. 00 Civ. 7697 (WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) ("Discovery requests cannot be based on pure speculation or conjecture.").

*__First__*, Plaintiffs characterize Defendants' good-faith representations regarding the scope of the Audit Committee Investigation as a "unilateral interpretation." (Pls.' Br. 4.) This is not accurate. Defendants' counsel conducted a reasonable and diligent investigation, including by conferring with appropriate individuals, and faithfully described to Plaintiffs the actual scope of the Audit Committee Investigation. (O'Brien Decl. ¶ 15.) Indeed, Defendants' counsel were forthcoming in explaining to Plaintiffs that, although pull-ins were ultimately the nearly exclusive focus of the Audit Committee Investigation, the former employee who prompted the investigation had also made allegations regarding Alexion's compliance with the Health Resources and Services Administration 340B Drug Pricing Program, but that those allegations were quickly resolved by the Audit Committee as lacking merit. (Ex. 4 – Dec. 1, 2021 Email from T. Holoshitz to J. Christie at 3.) When Plaintiffs declined to accept counsel's representation, Defendants offered to allow Plaintiffs to question witnesses knowledgeable about the scope of the investigation during depositions about this topic, and to revisit these requests if Plaintiffs remained unsatisfied. (*Id.*) Plaintiffs refused this reasonable compromise in favor of filing the instant motion. But Plaintiffs' speculation that the Audit Committee Investigation is broader than the topics identified by Defendants' counsel is insufficient to impose upon Defendants the burden of such significant document review and production obligations.

*__Second__*, Plaintiffs argue that Alexion's own public statements establish that the Audit Committee Investigation was broader in scope than the pull-ins issue, but their tortured and selective reading of these disclosures does not contradict Defendants' representations. For example, Plaintiffs point to Alexion's press release stating that the Audit Committee Investigation was "focused ***primarily*** on 'pull-in' sales of Soliris." (Pls.' Br. 5 (quoting Ex. 11 – January 4, 2017 Press Release); Ex. 3 – Nov. 19, 2021 Email from J. Christie to T. Holoshitz.)

But as just noted above, Defendants explained to Plaintiffs that there was a secondary issue (also irrelevant to this litigation) that was quickly resolved as unfounded.  (Ex. 4 at 3 – Dec. 1, 2021 Email from T. Holoshitz to J. Christie.)  Similarly, Plaintiffs cite snippets from Alexion's January 4, 2017 press release and quarterly report that reference "sales practices" and "inappropriate business conduct" as supposed evidence that the Audit Committee also investigated illegal or unethical sales practices apart from pull-ins, such as those described in the Bloomberg Article that form the gravamen of Plaintiffs' complaint.  (Pls.' Br. 5–6 (quoting Ex. 11 – January 4, 2017 Press Release).)  But read as a whole, and as accurately summarized above, Alexion's disclosures make clear that the Audit Committee investigated the conduct of the specific team of operations personnel who encouraged customers to place early orders, and ***not*** communications with doctors, nurses, labs, patients, and patient advocacy groups.  (Ex. 11 – January 4, 2017 Press Release.)

**<u>Third</u>**, Plaintiffs purport to rely on this Court's decision denying Defendants' motion to dismiss to establish the relevance of the Audit Committee Investigation.  (Pls.' Br. 6.)  This argument also fails.  That decision must be understood in context, and Plaintiffs had expressly advised the Court in their motion papers that they were ***not*** relying upon pull-in allegations (which had been the focus of an earlier version of the complaint).  (Dkt. 142 at 31 n.16, 4, 19 n.6.)  Moreover, contrary to Plaintiffs' assertions, the Court did ***not*** "acknowledge[] that the inappropriate Soliris sales conduct that the Audit Committee investigated fell squarely within the allegations in Plaintiffs' Complaint."  (Pls.' Br. 6.)  The specific language that Plaintiffs selectively quote states, in full:

> The Plaintiffs also allege that the statement in the September 30, 2016 Form 10-Q, which was signed by Brennan and Anderson and filed on January 4, 2017, that "[t]he Audit Committee Investigation found that senior management applied pressure on personnel to use

> pull-in sales to meet targets," and that "certain Company personnel
> engaged in inappropriate business conduct to realize pull-in sales,
> as a result of pressure from senior management," was materially
> misleading because it failed to disclose the other allegedly illegal
> sales practices in which Alexion was engaging at that time.

(Ruling on MTD at 16–17 (internal citations omitted).)  Indeed, there is no allegation in the

Complaint that the Audit Committee's investigation was broader than disclosed. Rather,

Plaintiffs alleged that Alexion's January 4, 2017 disclosure was misleading because it failed to

mention that Alexion had engaged in the allegedly "unethical and illegal conduct" identified in

the Bloomberg article—not because it concealed the true scope of the Audit Committee

Investigation.  (*See, e.g.*, Dkt. 121 ¶ 22.)  As such, the Court never endorsed Plaintiffs' new

theory that the Audit Committee actually investigated other allegedly "unethical and illegal"

practices.

Similarly, the Court's reference to the Audit Committee Investigation in discussing

scienter and loss causation does not broadly open the door to obtain every single document

reviewed by the Audit Committee in connection with an investigation that was focused on pull-

ins.  (*See* Pls.' Br. 7-8.)  In particular, Plaintiffs rely on the Court's statement that the allegations

concerning the "tone at the top," in combination with allegations about Defendants' Bell and

Hallal's involvement with high-pressure sales tactics, supported an inference of scienter.  (*Id.*

(quoting Ruling on MTD at 66).)  But the documents sought by RFP 1—i.e., *all documents*

provided to the Audit Committee—are not an efficient way to probe those allegations.  The

overwhelming majority of those documents will relate to pull-ins, which even Plaintiffs have

agreed they are not interested in, and have not been previously reviewed for privilege, which

would significantly increase the burden of producing them.  (O'Brien Decl. ¶¶ 7–8, 11, 19; Ex. 1

– Oct. 31, 2021 Email from B. Sullivan to J. Christie; Ex. 2 – Nov. 4, 2021 Letter from J.

Christie to B. Sullivan.)  Furthermore, Defendants have *already agreed* to broadly produce

documents relating to any of the alleged unethical and illegal practices identified in the Complaint or pressure by senior management to engage in those practices, including Board materials, emails to be collected from key custodians—including Defendants Bell and Hallal— and other centrally maintained files.  (*See* Ex. 4 – Dec. 1, 2021 Email from T. Holoshitz to J. Christie; Ex. 6 – Dec. 22, 2021 Email from T. Holoshitz to J. Christie.)

Plaintiffs also cannot justify the breadth of their demand.  Plaintiffs' demand for "all documents" provided to the Audit Committee is insufficiently tailored to any allegation in this case, and courts routinely reject such broad and unspecific demands.  *See, e.g.*, *Mirmina* v. *Genpact LLC*, No. 3:16-CV-00614(AWT), 2017 WL 2559733, at *3 (D. Conn. June 13, 2017) (requests for "all" documents "would sweep in numerous documents that bear no relevance to the claims or defenses raised in this matter").  Finally, the burden that would be imposed on Defendants is simply not merited.  Where, as here, the additional discovery Plaintiffs seek would have marginal, if any, relevance to the claims in the Complaint and would impose a substantial burden on Defendants, the discovery should be precluded as disproportionate to the needs of the case.  *See Vaigasi* v. *Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016); *S.C. Johnson & Son, Inc.* v. *Henkel Corp.*, No. 3:19CV00805 (AVC), 2020 WL 5640528, at *8 (D. Conn. Sept. 22, 2020) (limiting plaintiff's discovery requests to specific products relevant to their claims, because information about other products would be "at best of marginal relevance"); *Bausch & Lomb Inc.* v. *Alcon Lab'ys, Inc.*, 173 F.R.D. 367, 378 (W.D.N.Y. 1995) (denying motion to compel where the producing party represented it had produced relevant documents and "would have to search through hundreds of thousands of documents which would have marginal, if any, relevance" to comply with an overbroad request).

## II. Plaintiffs' Motion to Compel All Documents Concerning Alexion's FCPA Settlement with the SEC Should Also Be Denied

Plaintiffs' RFP 2 broadly seeks "*[a]ll* documents and communications" relating to "*any* investigation" of Alexion by the "MA USAO, DOJ, DHHS OIG, and/or SEC," including, specifically, Alexion's $21.5 million settlement of FCPA charges with the SEC. (Pls.' Ex. 1 at 15–16 (emphasis added).)[2] This SEC investigation and settlement relates to allegations of FCPA violations, focused upon alleged improper payments made to government officials in Russia and Turkey as well as allegations of failure to maintain proper books and records in Brazil and Colombia. (Ex. 12 – July 2, 2020 SEC Settlement.) Plaintiffs' Complaint does not include a single allegation regarding this type of conduct. Moreover, Plaintiffs do not contend that any of the Individual Defendants (or any other officer of Alexion) had any involvement in the purported FCPA violations by foreign employees in those countries. The FCPA investigation bears no nexus to this action, and Plaintiffs' motion to compel this discovery should therefore be denied.

***First***, the disputed portion of Plaintiffs' RFP 2 calls for *everything* that was previously produced to the SEC in connection with its FCPA investigation. Requests for such overbroad, "cloned" discovery are routinely rejected by courts, because a request for *all* documents previously produced in another matter is not adequately tailored to the claims or defenses of the

---

[2] RFP 2 also seeks documents concerning Alexion's 2019 settlement with the Department of Justice ("DOJ") and the Office of the Inspector General of the U.S. Department of Health and Human Services regarding whether Alexion induced patients to purchase Soliris through contributions it made to charitable organizations that provide patient assistance. Because Plaintiffs' complaint does contain allegations sustained at the motion to dismiss stage by the Court relating to alleged improper charitable contributions to patient assistance organizations (*see* Compl. ¶¶ 148–153), Defendants have agreed to produce all non-privileged documents that Alexion produced to the DOJ, including production letters, executed tolling agreements, subpoenas, and email requests for documents received from the DOJ and search terms and custodians agreed upon with the DOJ. (Ex. 6 – Dec. 22, 2021 Email from T. Holoshitz to J. Christie at 1–2.) Thus, Defendants' objection to RFP 2, and Plaintiffs' motion to compel, concerns only the FCPA-related investigation.

instant matter.  *See, e.g.*, *Wollam* v. *Wright Med. Grp., Inc.*, No. 10-CV-03104-DME-BNB, 2011
WL 1899774, at *2 (D. Colo. May 18, 2011) (denying motion to compel discovery of "all
'documents and things produced'" in discovery from other cases, and observing that narrow
requests are required so that the court can "consider the relevance of the information sought to
the specific claims and defenses in the pending case"); *In re Zyprexa Prod. Liab. Litig.*, No. 04-
MD-1596 (JBW), 2009 WL 1310890, at *1 n.2 (E.D.N.Y. May 8, 2009) (defendants are "not
required to produce . . . documents simply because such documents were made available to [a
government authority]").[3]  Plaintiffs' motion to compel production of these materials should be
denied on this basis alone.

    **_Second_**, Plaintiffs have failed to establish the relevance of the SEC's FCPA investigation
to this action.  During the meet-and-confer process, Plaintiffs offered only the most conclusory
assertions of relevance.  (*See, e.g.*, Ex. 7 – December 29, 2021 Email from J. Christie to Counsel
at 1 ("the SEC FCPA action and subsequent settlement is relevant to Lead Plaintiffs' claims");
Ex. 5 – December 10, 2021 Email from J. Christie to Counsel at 1 ("Lead Plaintiffs maintain that
FCPA violations by Alexion are relevant to this action.").)  Now, in support of the instant

---

[3]    *See also, e.g.*, *Moore* v. *Morgan Stanley & Co.*, No. 07 C 5606, 2008 WL 4681942, at *5
(N.D. Ill. May 30, 2008) ("[J]ust because the information was produced in another lawsuit—
a class action lawsuit—does not mean that it should be produced in this lawsuit, which now
involves only individual claims"); *Midwest Gas Servs., Inc.* v. *Ind. Gas Co.*, No. IP 99-690-
C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("'Cloned discovery,' requesting all
documents produced or received during other litigation or investigations, is irrelevant and
immaterial unless the fact that particular documents were produced or received by a party is
relevant to the subject matter of the instant case."); *Chen* v. *Ampco Sys. Parking*, No. 08-CV-
0422-BEN (JMA), 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009) ("[T]he fact that
Ampco produced certain documents in the state cases does not necessarily make them
discoverable in this case. . . . Rather, Plaintiff must specifically ask for the documents he
wants and be able to demonstrate that the information he seeks is relevant to his claims in
this case.").

motion, Plaintiffs argue that the SEC investigation is relevant because violations of the FCPA fall under the same broad umbrella of "illegal and unethical sales practices" or "inappropriate business conduct" as the improper tactics alleged in the Complaint.  (Pls.' Br. 8–9.)  This argument lacks any merit.

Plaintiffs cannot simply describe all alleged misconduct as "illegal and unethical sales practices" to render that conduct purportedly relevant to their claims.  (Pls.' Br. 8.)  In this case, Plaintiffs' claim of securities fraud is premised on the theory that Defendants failed to disclose that Alexion's revenue was being driven by the specific improper practices described in the Bloomberg Article published in May 2017 and repeated in the Complaint.  That alleged misconduct has nothing whatsoever in common with the matters underlying Alexion's settlement with the SEC—they are quite literally oceans apart.  Unlike the pressure tactics actually alleged by Plaintiffs, the SEC's FCPA investigation was focused on payments made by Alexion Russia and Alexion Turkey to government officials to secure favorable regulatory treatment, as well as asserted books and records violations by Alexion Brazil[4] and Alexion Colombia.  (Ex. 12 – July 2, 2020 SEC Settlement.)  Furthermore, none of the SEC's findings in the settlement (which Alexion did not admit) has any connection to Alexion's U.S.-based senior management team. (*See id.*)

In any event, not only is the conduct different, but the FCPA allegations cannot possibly form the basis for Plaintiffs' securities fraud claim for another reason: Alexion transparently disclosed the existence of the SEC's FCPA investigation in May 2015—years before the

---

[4]   Plaintiffs do allege that Alexion made improper contributions to a Brazilian patient assistance organization that filed "fraudulent lawsuits" for reimbursement of Soliris treatment, but this is distinct from the books and records issues that the SEC investigated.  Defendants have agreed to provide discovery into the allegations in the Complaint about Brazil.  (Ex. 6 – Dec. 22, 2021 Email from T. Holoshitz to J. Christie at 2.)

Bloomberg Article was published, and more than four years before the filing of the operative

Complaint.[5]  (Ex. 13 – July 31, 2015 10-Q at 21, 40, 59.)  Alexion repeatedly disclosed the

investigation in numerous subsequent quarterly and annual filings, until the settlement was

announced in July 2020.  (Ex. 14 – 10-Qs from 2015-2020; Ex. 15 – 10-Ks from 2016-2020.)

Plaintiffs cannot reasonably argue that Alexion fraudulently concealed alleged foreign corrupt

practices that were known to be under investigation for the majority of the class period.

Moreover, Plaintiffs do not contend that misrepresentations concerning FCPA-related conduct

caused them any stock losses:  there is no alleged decline in Alexion's stock price in response to

Alexion's disclosures relating to the SEC investigation and settlement, further underscoring its

lack of relevance to Plaintiffs' claim.  "[D]iscovery may not be used as a 'fishing expedition to

discover additional instances of wrongdoing beyond those already alleged.'"  *Wells Fargo*, 2008

WL 11377691, at *4 (quoting *Tottenham*, 2002 WL 1967023, at *2); *see also In re Honeywell

Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 302 (S.D.N.Y. 2003) (finding plaintiffs' "reliance on

issues concerning pension plans [relating to due diligence on a failed merger] . . . unavailing

since there are no related allegations in their complaint").[6]  Furthermore, had Plaintiffs actually

---

[5]   This also contradicts Plaintiffs' suggestion that they could not have alleged anything about
the FCPA investigation and settlement in the Complaint because the settlement occurred
thereafter.  Plaintiffs' reliance on the supplemental brief they filed notifying the Court of
settlement is similarly unavailing.  (*See* Pls.' Br. 10 (citing Dkt. 156).)  Plaintiffs'
supplemental brief is not a part of the pleadings; moreover, it merely makes the conclusory
assertion that the settlement "demonstrates a sustained pattern of illegal and unethical
conduct in the sales and marketing of Soliris."  (Dkt. 156 at 2.)  Moreover, the Court did not
rely or reference the FCPA investigation or the settlement with the SEC in sustaining in part
Plaintiffs' Complaint.

[6]   Plaintiffs also argue that its request for "all documents" relating to the SEC's FCPA
investigation is proper because "discovery is not limited to issues raised by the pleadings."
(Pls.' Br. 10.)  But none of the cases cited by Plaintiffs support their attempt to vastly expand
the scope of discovery.  Indeed, Plaintiffs have not cited a single case where a court allowed
broad discovery into a regulatory investigation and settlement arising out of distinct facts and

alleged FCPA violations as part of their theory of securities fraud in their Complaint, Defendants would have had the opportunity to move to dismiss those claims on the grounds that they failed to adequately plead actionable misstatements or omissions, and this Court would have potentially dismissed the claims outright.

**_Finally_**, under these circumstances, Plaintiffs' request is vastly overbroad.  Even setting aside all the other categories of documents sought by RFP 2, Alexion's investigation in response to the SEC's requests involved the review of over 4 million documents and the production of over half a million documents to the SEC, from 197 custodians in 10 different countries. (O'Brien Decl. ¶ 20.)  Plaintiffs cannot justify such an exponential expansion of the scope of discovery, especially in light of the broad categories of documents that Defendants have already agreed to collect, review, and produce in response to Plaintiffs' dozens of other requests.

---

legal theories just because claims alleging a different type of misconduct altogether had been sustained.  (*Id.* (citing *Harnage* v. *S. Barrone*, No. 3:15 CV 01035 (AWT), 2017 WL 3448543, at *6 (D. Conn. Aug. 11, 2017) (granting portions of a motion to compel discovery of prison practices and policies in a Section 1983 claim brought pro se by an incarcerated plaintiff who was alleging violation of right to bodily privacy); *Huminski* v. *Stop & Shop Supermarket Co.*, No. 3:16 CV 1136 (RNC), 2017 WL 2779468, at *2 (D. Conn. June 27, 2017) (granting motion to compel production of complaints of age or race discrimination in the past 5 years involving the same decisionmakers as in the present age and race employment discrimination case as relevant to their motive and intent); *MacCartney* v. *O'Dell*, No. 14-CV-3925 (NSR), 2018 WL 5023947, at *2 (S.D.N.Y. Oct. 17, 2018) (not finding clearly erroneous the granting of a motion to compel the production of documents regarding defendant's non-referral case-load where the plaintiff alleged, as part of a law firm payout dispute, that the defendant worked on non-referred cases and did not share the fees with the partnership); *Komondy* v. *Gioco*, No. 3:12-CV-250 (CSH), 2015 WL 917867, at *4 (D. Conn. Mar. 3, 2015) (granting defendant's motion to compel because plaintiff failed to respond to discovery requests and to the motion to compel)).)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.

Dated: February 4, 2022
       Washington, DC

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:   */s/ Jane B. O'Brien*
Jane B. O'Brien (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Tel:  (202) 223-7327
jobrien@paulweiss.com

Daniel J. Kramer (admitted *pro hac vice*)
Audra S. Soloway (admitted *pro hac vice*)
Jonathan Hurwitz (admitted *pro hac vice*)
Tamar Holoshitz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
dkramer@paulweiss.com
asoloway@paulweiss.com
jhurwitz@paulweiss.com
tholoshitz@paulweiss.com

WIGGIN & DANA
David A. Ring
Robyn E. Gallagher
265 Church Street
P.O. Box 1832
New Haven, CT 06510
Phone: (860) 297-3703
dring@wiggin.com
rgallagher@wiggin.com

*Attorney for Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, and Vikas Sinha*