UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>vs.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA, DAVID BRENNAN, DAVID J. ANDERSON, LUDWIG N. HANTSON, and CARSTEN THIEL,<br><br>      Defendants. | No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson<br><br>**DECLARATION OF JANE B. O'BRIEN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

I, Jane B. O'Brien, hereby declare, under penalty of perjury as follows:

  1.  I am an attorney at the law firm Paul, Weiss, Rifkind, Wharton & Garrison LLP, 2001 K Street, NW, Washington, D.C. 20006, attorneys for Defendants Alexion Pharmaceuticals, Inc. ("Alexion"), Leonard Bell, David L. Hallal, and Vikas Sinha (together with Alexion, "Defendants"), in the above-captioned case.

  2.  I submit this declaration in support of Defendants' Opposition to Plaintiffs' Motion to Compel.

  3.  The facts stated herein are true and correct, to the best of my knowledge.

  4.  On September 29, 2021, Plaintiffs served their Amended First Requests for Production ("RFPs") on Defendants, which is attached as an exhibit to Plaintiffs' Motion to Compel. (Dkt. 205-3.)  These RFPs included RFP 1 (concerning an investigation by Alexion's Audit and Finance Committee into allegations by a former employee (the "Audit Committee Investigation")) and RFP 2 (concerning, in relevant part, Alexion's settlement with the SEC regarding alleged violations of the FCPA (the "FCPA Investigation")).

1

5. On September 29, 2021, Plaintiffs also served their Amended First Set of Interrogatories ("Interrogatories") on Alexion, which is attached as an exhibit to Plaintiffs' Motion to Compel. (Dkt. 205-4.) These Interrogatories included Interrogatory 4 (asking Defendants to identify the "former employee" who made the allegations that prompted the Audit Committee Investigation, as well as "each and every person to whom that 'former employee' made those allegations") and Interrogatory 5 (asking Defendants to identify "each and every person" who was involved in the Audit Committee Investigation).

6. On October 20, 2021, Defendants served their Responses and Objections to Plaintiffs' RFPs, which is attached as an exhibit to Plaintiffs' Motion to Compel. (Dkt. 205-5.)

7. On October 28, 2021, Defendants' counsel (including the undersigned) met and conferred with Plaintiffs' counsel. The parties discussed Plaintiffs' RFPs and Defendants' specific objections. With respect to RFP 1, we represented to Plaintiffs' counsel that the Audit Committee Investigation did not relate to the improper sales practices described in the Complaint but rather was focused on pull-in sales.

8. On October 31, 2021, Defendants' counsel sent a follow-up email to Plaintiffs' counsel, a true and correct copy of which is attached as **Exhibit 1**. In that email, we asked Plaintiffs to explain "why they believe they are entitled to documents concerning Alexion's pull-in investigation . . . when plaintiffs have made clear that they do 'not take specific issue with' pull-ins."

9. On November 1, 2021, Defendants' counsel (including the undersigned) met and conferred again with Plaintiffs' counsel. In addition to discussing the lack of relevance of pull-ins to the litigation, Defendants' counsel asked Plaintiffs' counsel to provide an example of alleged violations of the FCPA by Alexion in their Complaint.

10. On November 3, 2021, Defendants served their Responses and Objections to Plaintiffs' Interrogatories, which is attached as an exhibit to Plaintiffs' Motion to Compel. (Dkt. 205-6.)

11. On November 4, 2021, Plaintiffs' counsel sent a letter to Defendants' counsel, a true and correct copy of which is attached as **Exhibit 2**. In that letter, Plaintiffs' counsel made clear that "Plaintiffs no longer allege that Defendants' pull-in practices were in-and-of themselves fraudulent." Plaintiffs' counsel also stated that they disagreed with Defendants' responses and objections to Interrogatories 4 and 5 (which also relate to the Audit Committee Investigation).

12. On November 12, 2021, we responded to Plaintiffs' November 4, 2021 letter. In our response, we explained that "the referenced Audit Committee Investigation was about pull ins, and not about the alleged misconduct in [Plaintiffs'] complaint." In addition, in an effort to resolve the parties' dispute, Defendants provided the information sought by Interrogatory 4 (i.e., the identity of the former employee who made the allegations that gave rise to the Audit Committee Investigation and to whom the allegations were made). We also reiterated our position that the FCPA is irrelevant to Plaintiffs' case.

13. On November 18, 2021, Defendants' counsel (including the undersigned) met and conferred with Counsel for Plaintiffs. During this discussion, we again explained that the Audit Committee Investigation was focused on pull-in sales, and not the "illegal and unethical practices" alleged in Plaintiffs' complaint. We also repeated that the SEC's FCPA investigation was not a relevant area for discovery.

14. On November 19, 2021, Plaintiffs' counsel sent an email to Defendants' counsel, a true and correct copy of which is attached as **Exhibit 3**. In that email, Plaintiffs stated that they "maintain[ed] that Alexion's January 4, 2017 press release concerning the investigation indicated

that it was only 'primarily' about pull-ins." Plaintiffs also "maintain[ed] that Alexion's FCPA violations (leading to Alexion's $21 million FCPA settlement with the SEC) are relevant because they evince Alexion's improper marketing and sale of Soliris, regardless of whether the FCPA was specifically mentioned in the complaint."

15. On December 1, 2021, we sent a response to Plaintiffs' November 19 email, a true and correct copy of which is attached as **Exhibit 4**. After conferring with appropriate individuals regarding Plaintiffs' continued questions regarding the scope of the Audit Committee Investigation, we explained that the "principal issue investigated by the audit committee was an allegation of improper 'pull-in' sales." We also explained that, "[w]hile the investigation ultimately focused exclusively on pull-in allegations, at the outset of the investigation the audit committee was also asked to review Alexion's compliance with the 340B program, which enables pharmaceutical companies to provide outpatient drugs at reduced prices." We explained that "[t]his issue was quickly resolved as lacking any merit, because Alexion customer operations personnel used a publicly available, HRSA hosted list to determine 340B eligibility and there was no evidence of improper denials," and so "the investigation is generally thought of within Alexion as pertaining solely with pull-ins." We also proposed that, "if Plaintiffs wish to seek further information about the [A]udit [C]ommittee [I]nvestigation based on documents produced in discovery and questioning of witnesses knowledgeable about the scope of the investigation, we would reopen negotiations at a later point in time, with the understanding that Plaintiffs would reserve all rights in this regard." As for RFP 2, we also reiterated that the "complaint includes no allegations relating to the subject of the second settlement with the SEC, which involved FCPA allegations" and that as a result, "documents relating to that investigation are irrelevant to this

4

matter and [Plaintiffs'] request for those materials is unduly burdensome and not proportional to the needs of the case."

16. On December 10, 2021, Plaintiffs' counsel sent an email to Defendants' counsel, a true and correct copy of which is attached as **Exhibit 5**. Plaintiffs indicated that they believed the parties were at an impasse with respect to the requests related to the Audit Committee Investigation. Plaintiffs also stated that they "maintain that FCPA violations by Alexion are relevant to this action."

17. On December 22, 2021, we sent a response to Plaintiffs' December 10, 2021 email, a true and correct copy of which is attached as **Exhibit 6**. We "reiterate[d] our offer to revisit [the requests related to the Audit Committee Investigation] in the event [Plaintiffs] believe that discovery suggests that the investigation was broader in scope" than pull-in sales. We also stated, with respect to RFP 2 for documents related to the FCPA Investigation, that Plaintiffs had provided no "colorable rationale for seeking this discovery."

18. On December 29, 2021, Plaintiffs' counsel sent an email to Defendants' counsel, a true and correct copy of which is attached as **Exhibit 7**. Plaintiffs indicated that they believed the parties had reached an impasse with respect to the requests regarding the Audit Committee Investigation and the FCPA Investigation.

19. In connection with the Audit Committee Investigation, the audit committee and its counsel received over 3 million electronic documents, which included the email files of sixteen different custodians and which have not been previously reviewed for privilege.

20. In response to the SEC's investigation, Alexion collected over 4 million documents from 197 custodians in 10 different countries, and ultimately produced over half a million documents to the SEC.

21. Attached as **Exhibit 8** is a true and correct copy of a September 24, 2012 Forbes article titled *How a $440,000 Drug Is Turning Alexion Into Biotech's New Innovation Powerhouse* and available at https://www.forbes.com/sites/matthewherper/2012/09/05/how-a-440000-drug-is-turning-alexion-into-biotechs-new-innovation-powerhouse/.

22. Attached as **Exhibit 9** is a true and correct copy of a May 24, 2017 Bloomberg News article titled *When the Patient is a Gold Mine: The Trouble With Rare-Disease Drugs* and available at https://www.bloomberg.com/news/features/2017-05-24/when-the-patient-is-a-gold-mine-the-trouble-with-rare-disease-drugs.

23. Attached as **Exhibit 10** is a true and correct copy of an excerpt of Alexion's Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 filed on Form 10-Q on January 4, 2017.

24. Attached as **Exhibit 11** is a true and correct copy of an Alexion press release titled "Alexion Pharmaceuticals Files Form 10-Q for Third Quarter 2016" published on January 4, 2017 and available at https://ir.alexion.com/news-releases/news-release-details/alexion-pharmaceuticals-files-form-10-q-third-quarter-2016.

25. Attached as **Exhibit 12** is a true and correct copy of an Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934 between Alexion and the SEC, entered on July 2, 2020 and available at https://www.sec.gov/litigation/admin/2020/34-89214.pdf.

26. Attached as **Exhibit 13** is a true and correct copy of an excerpt of Alexion's Quarterly report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 filed on Form 10-Q on July 31, 2015.

27. Attached as **Exhibit 14** are true and correct copies of excerpts of Alexion's Quarterly reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 filed on July 31, 2015; April 29, 2016; January 4, 2017; April 27, 2017; July 27, 2017; October 26, 2017; April 26, 2018; July 26, 2018; October 24, 2018; April 25, 2019; July 24, 2019; October 23, 2019; and May 6, 2020.

28. Attached as **Exhibit 15** are true and correct copies of excerpts of Alexion's Annual Reports pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 filed on February 8, 2016; February 16, 2017; February 8, 2018; February 6, 2019; and February 4, 2020.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 4, 2022         /s/ Jane B. O'Brien
                                     Jane B. O'Brien