## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA, DAVID BRENNAN, DAVID J. ANDERSON, LUDWIG N. HANTSON, and CARSTEN THIEL,<br><br>Defendants. | Civ. No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson |

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF LEAD PLAINTIFFS' MOTION TO COMPEL
## THE PRODUCTION OF DOCUMENTS AND INTERROGATORY RESPONSES

Lead Plaintiffs Erste Asset Management GmbH and the Public Employee Retirement System of Idaho (collectively, "Plaintiffs"), by their counsel, respectfully submit this reply memorandum of law in support of their motion to compel Defendants Alexion Pharmaceuticals Inc. ("Alexion" or the "Company"), Leonard Bell, David L. Hallal, and Vikas Sinha ("Individual Defendants") (collectively "Defendants"), to produce documents and interrogatory responses.[1]

## I.   INTRODUCTION

Defendants' Opposition attempts to overcomplicate an otherwise straightforward request for two categories of documents, both facially relevant to Plaintiffs' claims.  Defendants rely on pages upon pages of distorted explanations to try and convince the Court that documents related to the Audit Committee Investigation and the SEC FCPA Action are not relevant.  But at bottom, Defendants' Opposition boils down to nothing more than a motion for reconsideration in disguise.

As Plaintiffs explained in their Opening Brief (MTC at 6–8), the Court expressly addressed the Audit Committee Investigation in its Order denying Defendants' Motion to Dismiss (ECF No. 172, "MTD Order"), including its discussion on issues related to falsity and scienter.  MTD Order at 16–19, 49, 65–66.  Contrary to their own public statements, Defendants recycle their argument that the Audit Committee Investigation was merely about pull-in sales and not the unethical sales practices at issue in the Complaint.  Opp. at 5–8.  In doing so, Defendants manufacture a self-serving distinction between two types of sales practices in support of their claims of irrelevancy.  *Id.*  This argument fails for at least two reasons.  *First*, pull-ins remain relevant to Plaintiffs' theory of liability.  *Second*, pull-ins and unethical sales tactics are not mutually exclusive practices—both

---

[1] All capitalized terms have the same definition as set forth in the Memorandum of Law in Support of Lead Plaintiffs' Motion to Compel the Production of Documents and Interrogatory Responses (ECF No. 205-1, the "Opening Brief").  References to the Opening Brief are cited herein as "MTC at __".  References to Defendants' Memorandum of Law in Support of their Opposition to Plaintiffs' Motion to Compel (ECF No. 211) are cited herein as "Opp. at__".

relate to sales practices used artificially to boost Soliris sales revenue.  Indeed, there is no reason a pull-in sale cannot *also* have been made pursuant to unethical sales practices and vice-versa. Accordingly, the ***scope and results*** of the Audit Committee Investigation support the falsity and scienter elements of Plaintiffs' claims ***regardless of the artificial distinction Defendants attempt to draw***.

Defendants' attempt at a sticker-shock burden argument fares no better.  Far from requesting "every document 'provided to' the Audit Committee, which encompasses over 3 million electronic documents" (Opp. at 8), Plaintiffs are simply seeking to have Defendants include these documents in the search terms and custodians that the parties are actively negotiating.  These and other limitations will drastically reduce the volume of documents at issue.

Likewise, documents concerning the SEC FCPA Action are relevant because they concern the very same types of unethical and illegal behavior that Plaintiffs allege Alexion used to boost sales of Soliris.  Defendants urge the Court to limit Plaintiffs' inquiry to the four corners of their Complaint and the contents of the May 2017 Bloomberg Article.  Opp. at 13–17.  In doing so, Defendants largely ignore the well-settled principle set forth in Plaintiffs' Opening Brief that "***discovery is not limited to issues raised by the pleadings***."  *Komondy v. Gioco*, 2015 WL 917867, at *2 n.3 (D. Conn. Mar. 3, 2015); MTC at 9–11.  Indeed, documents evidencing Alexion's bribery of foreign officials to boost Soliris sales during the same time frame as the Class Period here are probative of both falsity and scienter as it pertains to statements concerning the source of Soliris's success.  Here, too, Defendants once again overstate their burden, given that they have already collected, reviewed and produced these same documents to the SEC.

## II.     ARGUMENT

### A.     Defendants' Arguments About the Relevance of the Audit Committee Investigation Fail

Defendants' attempts to shield the Audit Committee Investigation from discovery are nothing more than a motion for reconsideration in disguise.  Defendants spill much ink trying to convince the Court that the Audit Committee Investigation was solely about pull-ins and therefore irrelevant.  But Defendants already advanced this very argument in support of their Motion to Dismiss.  *See, e.g.*, ECF No. 130-1 at 35 ("[T]he [Audit Committee] investigation was 'focused primarily' on 'pull-in' sales, and referenced 'inappropriate business conduct' . . . . There thus was not then and is not now any factual basis to construe the findings as broadly as Plaintiffs claim they ought to be interpreted.").  As Plaintiffs explained in their Opening Brief (MTC at 6-8), the Court already addressed Defendants' argument and expressly referenced the Audit Committee Investigation in the MTD Order, including in its discussions of falsity and scienter.  MTD Order at 16–19, 49, 65–66.  The Court should not allow Defendants to use after-the-fact representations to effectively amend the MTD Order and prevent Plaintiffs from conducting discovery into a subject matter that is so obviously relevant to Plaintiffs' claims that it was discussed at length in Plaintiffs' Complaint and referenced by the Court in its order sustaining Plaintiffs' allegations.

In an attempt to persuade the Court to see it their way this time around, Defendants point to a strained interpretation of their ***own public statements*** about the scope and results of the Audit Committee Investigation to argue that it was irrelevant to Plaintiffs' claims, stating that Plaintiffs' view is nothing more than "rank speculation . . . for [a] fishing expedition."  Opp. at 8–10.  Yet, they refuse to address the specific language that Plaintiffs point to head on and instead rely on their own reading of other language in the same Company press release to claim that the investigation had nothing to do with Alexion's sales practices.  *Id*.  Indeed, as Plaintiffs explained in their

Opening Brief (MTC at 5), the Company's press release on January 4, 2017 plainly stated that the investigation "stemm[ed]" from allegations by a former employee about Soliris "sales practices":

> As previously announced, the Company had delayed the filing while ***the Audit and Finance Committee of the Board of Directors conducted an investigation stemming from allegations made by a former employee concerning certain of the Company's Soliris® (eculizumab) sales practices***.

Opp. at Ex. 11 (ECF No. 211-12, January 4, 2017 Press Release).

Defendants' unsupported contention that this reference to "sales practices" only related to pull-ins and therefore is unrelated to Plaintiffs' allegations confirms nothing, and if anything, presents more questions than it answers. Opp. at 10.[2]  Indeed, Defendants draw an artificial distinction between pull-in sales and the unethical high-pressure sales practices described in the May 2017 Bloomberg Article. But the two are not mutually exclusive. Both were sales tactics performed by Alexion employees to artificially increase sales revenues of Soliris. And there is no reason why a pull-in sale cannot also have been made pursuant to using one of the unethical high-pressure sales tactics identified in the May 2017 Bloomberg Article, rendering Defendants' artificial distinction meaningless. At bottom, Defendants' artificial distinction (and Plaintiffs'

---

[2] Indeed, Defendants' entire argument is predicated on the faulty premise that Plaintiffs ***completely*** abandoned the pull-in aspect of their claims, including any plain and unambiguous reading of statements contained in Alexion's public documents about pull-ins, such as "***certain Company personnel engaged in inappropriate business conduct to realize pull-in sales***." ¶ 297; MTC at 6. This is nonsensical. While the operative Complaint focused ***more*** on Alexion's unethical sales practices than the previous complaint did, at no time did Plaintiffs disclaim the relevance of pull-ins or any unethical or illegal conduct that Company personnel engaged in to "realize" pull-in sales. *Id*. Of course, it is in Defendants' best interests to make it seem as if they are distinct sales practices because removing pull-ins would eliminate an important aspect of Plaintiffs' theory of liability. But again, this is a discovery motion, not a motion for reconsideration on allegations related to the Audit Committee Investigation that this Court has already upheld. The Court should reject Defendants' faulty premise.

disagreement with such a distinction) highlights that discovery is needed to determine whether Defendants misled investors about the scope and results of the Audit Committee Investigation.

Finally, Defendants vastly overstate the number of documents that Plaintiffs are seeking by stating that Plaintiffs seek "every document 'provided to' the Audit Committee" and that this includes "over 3 million electronic documents."  Opp. at 8.  Defendants completely ignore the critical fact that the parties are currently in the process of negotiating search terms and custodians that will be applied to the universe of documents relevant to Plaintiffs' claims.  Plaintiffs have proposed that the Audit Committee Investigation documents would be included among that same universe of documents.  Indeed, the volume of documents at issue will be narrowed substantially by de-deduplication of closely-related documents, application of search terms, and the identification of document custodians.[3]

### B.   Defendants' Attempts to Downplay the Relevance of the SEC FCPA Action Should be Rejected

Defendants downplay the relevance of the SEC Investigation and Settlement, claiming it "bears no nexus to this action" because it was not specifically mentioned in the May 2017 Bloomberg Article and that "Plaintiffs cannot simply describe all alleged misconduct as 'illegal and unethical sales practices.'"  Opp. at 13–15.  Their argument ignores well-settled case law that discovery is not limited to the four corners of the Complaint.  *Id.* at 13–17.

As explained in Plaintiffs' Opening Brief, the thrust of Plaintiffs' allegations concern Alexion's misrepresentations and omissions regarding the ***true*** source of Soliris's success— Defendants' illegal and unethical sales practices.  MTC at 8–11.  Defendants cannot seriously dispute whether bribing foreign officials to increase Soliris prescriptions is an illegal and unethical

---

[3] None of the cases cited by Defendants in support of their burden argument are applicable here as those cases dealt with categories of documents that had minimal relevance, whereas the Audit Committee Investigation is central to Plaintiffs' claims.

sales practice.  Accordingly, discovery into such information bears directly on falsity and scienter because it relates to Defendants' false and misleading statements touting the reasons for Soliris's success.  And such discovery remains relevant regardless of whether the activity took place outside the United States (Opp. at 15), Alexion disclosed the existence of the investigation during the Class Period (*id.* at 15–16), or the announcement of the SEC FCPA Action resulted in a stock price decline (*id.* at 16-17).  *See Harnage v. Barrone*, 2017 WL 3448543, at *6 (D. Conn. Aug. 11, 2017) (holding "records involving complaints of a similar nature . . . could lead to evidence that would be admissible at trial and thus, are discoverable"); *Huminski v. Stop & Shop Supermarket Co.*, 2017 WL 2779468, at *2 (D. Conn. June 27, 2017) (stating information related to prior actions discoverable because it was "relevant to the defendant's motive and intent").

Defendants' burden argument related to the SEC FCPA Action also fails.  Opp at. 17.  Defendants again overstate the burden by referencing "over 4 million documents and the production of over half a million documents to the SEC, from 197 custodians in 10 different countries." *Id.*  But Defendants' reference to these figures is irrelevant.  In reality, there is minimal burden for Defendants to produce these documents because they have ***already searched for and produced*** them in the SEC action.

## III.    CONCLUSION

For the foregoing reasons and those in Plaintiffs' Opening Brief, the Court should (1) compel Defendants to include the Audit Committee Investigation documents as part of their ESI search and collection; (2) compel Defendants to produce the same documents that the Company produced in the SEC FCPA Action; and (3) order Defendants to provide a complete and non-evasive answer to Plaintiffs' Interrogatory No. 5.[4]

---

[4] Plaintiffs have reviewed the relevant correspondence and agree that Interrogatory No. 4 is no longer in dispute.

DATED:      February 14, 2022      Respectfully submitted,


LABATON SUCHAROW LLP

By: */s/ James W. Johnson*
    JAMES W. JOHNSON (*pro hac vice*)

Michael H. Rogers (*pro hac vice*)
James T. Christie (*pro hac vice*)
140 Broadway
New York, NY  10017-5563
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
jchristie@labaton.com

MOTLEY RICE LLC
William H. Narwold
Mathew P. Jasinski
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1681
Facsimile:   (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

    -and-

Gregg S. Levin (*pro hac vice*)
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
Meredith B. Weatherby (*pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
mweatherby@motleyrice.com

7

*Co-Lead Counsel for Lead Plaintiffs*
*and the Class*