## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Civ. No. 3:16-cv-2127 (AWT) |
| | Hon. Alvin W. Thompson |
| Plaintiff, | |
| | **LEAD PLAINTIFFS'** |
| vs. | **MEMORANDUM OF LAW** |
| | **IN OPPOSITION TO DEFENDANTS'** |
| ALEXION PHARMACEUTICALS, INC., | **MOTION FOR AN EXTENSION OF** |
| LEONARD BELL, DAVID L. HALLAL, | **TIME TO OPPOSE PLAINTIFFS'** |
| VIKAS SINHA, DAVID BRENNAN, | **MOTION FOR CLASS** |
| DAVID J. ANDERSON, LUDWIG N. | **CERTIFICATION** |
| HANTSON, and CARSTEN THIEL, | |
| | |
| Defendants. | |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...........................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................4

III.  ARGUMENT...................................................................................................................10

    A.    Legal Standards on a Motion for Extension ................................................10

    B.    Any Delay in Obtaining Additional Discovery from State Street and DWS Is Due to Defendants' Failure to Pursue Hague Requests After Erste AM Consented to, and Offered to Facilitate, Such Requests ................................11

    C.    Despite Defendants' Delays and Reversals, Erste AM Has Diligently Sought and Produced Documents Concerning State Street and DWS ....................12

    D.    While Erste AM Has Reached Out to State Street and DWS and Obtained Documents on a Voluntary Basis, Erste AM Does Not Have Possession, Custody, or Control of These Non-Parties ....................................................13

    E.    German Authorities Routinely Process Hague Requests for Documents and Testimony in Pre-Trial Discovery Proceedings ........................................15

    F.    The VBV Fund and DWS Fund Incurred Only a Small Fraction of the Total Losses Sustained by Erste AM ...................................................................23

IV.   CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

### CASES

*Anwar v. Fairfield Greenwich Ltd.*,
   982 F. Supp. 2d 260 (S.D.N.Y. 2013) ..................................................... 20

*Arcelik A.S. v. E.I. DuPont de Nemours & Co.*,
   856 F. App'x 392 (3d Cir. 2021) ............................................................. 18

*Burns v. Bank of Am.*,
   2007 WL 1589437 (S.D.N.Y. June 4, 2007) ........................................... 12

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   2014 WL 202102 (W.D. Wash. Jan. 17, 2014) ....................................... 21

*City of Livonia Emps.' Ret. Sys. v. Wyeth*,
   284 F.R.D. 173 (S.D.N.Y. 2012) ............................................................ 25

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
   2013 WL 12291616 (S.D. Ind. Apr. 26, 2013) ................................. 19, 21

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*,
   545 F.3d 357 (6th Cir. 2008) .................................................................. 23

*Gorsoan Ltd. v. Bullock*,
   652 F. App'x 7 (2d Cir. 2016) ................................................................ 20

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003) ..................................................................... 10

*Hefferan v. Ethicon Endo-Surgery, Inc.*,
   2015 WL 2169689 (S.D. Ohio May 8, 2015) .......................................... 23

*Hudson v. Hermann Pfauter GmbH & Co.*,
   117 F.R.D. 33 (N.D.N.Y. 1987) ............................................................. 16

*In re Accredo Health, Inc. Sec. Litig.*,
   2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006) ..................................... 25

*In re ICG Commc'ns, Inc., Sec. Litig.*,
   2005 WL 8180470 (D. Colo. Sept. 7, 2005) ........................................... 13

*In re Lehman Bros. Sec. & ERISA Litig.*,
   2013 WL 440622 (S.D.N.Y. Jan. 23, 2013) ........................................... 24

*In re Qualcomm Incorporated Securities Litigation*,
   No. 3:17-cv-00 121-BEN-MSB (S.D. Cal.) ....................................... 19, 20

*In re Subpoena Issued to Cisco Sys., Inc.*,
   2010 WL 3155895 (N.D. Cal. Aug. 9, 2010) .......................................... 14

*In re Urethane Antitrust Litigation*,
   267 F.R.D. 361 (D. Kan. 2010) .............................................................. 18

*In re Vicuron Pharms., Inc., Sec. Litig.*,
   233 F.R.D. 421 (E.D. Pa. 2006) ............................................................. 25

*Julian v. Equifax Check Servs. Inc.*,
    178 F.R.D. 10 (D. Conn. 1998) ........................................................................... 10

*Longuidice v. City of Hartford*,
    2015 WL 1245563 (D. Conn. Mar. 18, 2015) ..................................................... 10

*Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs, Inc.*,
    318 F.R.D. 28 (S.D.N.Y. 2016) .......................................................................... 14

*Metso Mins. Inc. v. Powerscreen Int'l Distribution Ltd.*,
    2007 WL 1875560 (E.D.N.Y. June 25, 2007) ................................................... 20

*Multimedia Pat. Tr. v. Apple Inc.*,
    2012 WL 12868304 (S.D. Cal. July 30, 2012) ................................................... 21

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000) ............................................................................... 10

*Phila. Gear Corp. v. Am. Pfauter Corp.*,
    100 F.R.D. 58 (E.D. Pa. 1983) ........................................................................... 17

*Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH*,
    2015 WL 9216845 (N.D. Okla. Dec. 17, 2015) ................................................. 18

*S & S Screw Mach. Co. v. Cosa Corp.*,
    647 F. Supp. 600 (M.D. Tenn. 1986) ................................................................. 17

*S.E.C. v. Credit Bancorp, Ltd.*,
    194 F.R.D. 469 (S.D.N.Y. 2000) ....................................................................... 14

*S.E.C. v. Tourre*,
    2011 WL 350286 (S.D.N.Y. Jan. 31, 2011) ...................................................... 16

*Silversman v. Motorola, Inc.*,
    259 F.R.D. 163 (N.D. Ill. 2009) ......................................................................... 25

*Société Nationele Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*,
    482 U.S. 522 (1987) ....................................................................... 16, 21, 23

*St. Jude Medical S.C., Inc. v. Janssen-Counotte*,
    104 F. Supp. 3d 1150 (D. Or. 2015) .................................................................. 23

*Tatum v. Schwartz*,
    2007 WL 2220977 (E.D. Cal. Aug. 2, 2007) ..................................................... 13

*Tiffany (NJ) LLC v. Andrew*,
    2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011) ................................................. 20

*Tiffany (NJ) LLC v. Qi Andrew*,
    276 F.R.D. 143 (S.D.N.Y. 2011) ....................................................................... 20

*Volkswagenwerk Aktiengesellschaft v. Super. Ct.*,
    123 Cal. App. 3d 840, 176 Cal. Rptr. 874 (1981) .............................................. 17

**OTHER AUTHORITIES**

Am. Bar Ass'n, Int'l Litig. Comm., Section of Int'l L. & Prac., Report on Survey of
    Experience of U.S. Lawyers with the Hague Evidence Convention Letter of Request
    Procedures, at 10 (Oct. 9, 2003) ............................................................... 22

Permanent Bureau of the Hague Conference on Private Int'l Law, Synopsis of Responses
    to the Questionnaire of May 2008 Relating to the Hague Convention of 18 Mar. 1970
    on the Taking of Evid. Abroad in Civ. and Commercial Matters, at 123 (2009) ..................... 21

**RULES**

Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment ............................................. 10

Fed. R. Civ. P. 16(b)(4) ......................................................................................................... 10

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 24, 25

Fed. R. Civ. P. 34(a)(1) ......................................................................................................... 2, 13

L.R. 7(b) .............................................................................................................................. 10

**TREATISES**

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
    Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. 7444 ................................................................ *passim*

Lead Plaintiffs Erste Asset Management GmbH ("Erste AM") and the Public Employee Retirement System of Idaho ("PERSI") (collectively, "Plaintiffs") respectfully oppose Defendants' Motion (the "Motion") for an Extension of Time to Oppose Plaintiffs' Motion for Class Certification (ECF No. 207).

## I.    PRELIMINARY STATEMENT

Defendants seek an unnecessary 60-day extension to file their opposition to Plaintiffs' motion for class certification (ECF No. 198) to complete non-party discovery that they have not served and apparently do not intend to serve, having concluded that the non-parties—German investment managers[1]—are not subject to compulsory service.  There is no "good cause" for extending the schedule by nearly two months to afford Defendants more time not to do something. As discussed below, Defendants' Motion should be denied for at least five reasons.

***First***, any delay or hindrance in obtaining discovery from State Street or DWS is of Defendants' own making.  Simply put, Defendants themselves have not been diligent in seeking to obtain discovery from State Street and DWS in the manner that Erste AM has repeatedly and in good faith suggested and offered to consent to and facilitate:  by filing and serving letters of request pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. 7444 (the "Hague Convention" or "Hague").  *See* § III. B, *infra*.

***Second***, Defendants already have received substantial discovery from Erste AM relating to Erste AM's investments in Alexion common stock through the two funds that were managed by

---

[1]    The non-party investment managers, State Street Global Advisors GmbH ("State Street") and DWS Investment GmbH ("DWS"), respectively managed two of Erste AM's funds—VBV Low Carbon World Equities (the "VBV Fund") and DWS (Austria) Vermögensbildungsfonds (the "DWS Fund").

State Street and DWS:  the VBV Fund and DWS Fund.  To date, Erste AM has produced over 3,000 pages of documents to Defendants—among them, documents that DWS voluntarily agreed to produce at Erste AM's request—including fund regulations, analyst reports, Erste AM's emails with both State Street and DWS, and handwritten notes by a DWS fund manager regarding Alexion.  State Street has informed Erste AM that it does not have the documents Defendants seek.  This is unsurprising given that the VBV Fund is a passively managed index fund.  Erste AM's own document production also includes numerous documents that implicate Defendants' requests for documents related to State Street and DWS, the VBV Fund and DWS Fund, and their investments in Alexion common stock, including account statements and trade tickets for all relevant transactions for all the relevant funds (including the VBV Fund and DWS Fund) and the externally managed funds' prospectuses, fact sheets, and periodic reports.  *See* § III.C.

*Third*, although Defendants accuse Erste AM of "disavow[ing] any responsibility for providing documents or depositions from [DWS] or [State Street]," and of not "cooperat[ing]" with their requests by "ma[king] its investment advisors available"—the simple fact remains that Erste AM does not have "possession, custody, or control" of the business records or employees of State Street or DWS, which are non-parties located in Germany.  *See* Fed. R. Civ. P. 34(a)(1).  Tellingly, Defendants do not directly argue the contrary.  Nevertheless, Erste AM has been diligently working with State Street and DWS to facilitate a voluntary document production and has been producing those documents to Defendants on a rolling basis.  Erste AM also requested they sit for deposition.  *See* § III.D.

*Fourth*, attempting to excuse their lack of diligence, Defendants argue that German authorities will not honor Hague letters of request for pre-trial discovery—including both documents and testimony.  *See* § III.E.  Far from demonstrating futility, however, Defendants

confusedly assert that "Germany will, under certain circumstances, execute requests for pre-trial testimony"; "it is not" a "certainty that [Hague] proceedings would result in the issuance of enforceable third-party subpoenas directed to Erste AM's investment advisors"; that "the likelihood of success of obtaining document discovery under the [Hague] is slim-to-none"; that such evidence "cannot be obtained through the Hague Convention"; and that "the entire process under the [Hague] is very lengthy," "may take several months up to two years," "may take several weeks or months," "can range between 2 and 13 months," "would take at least several months," or "will take several weeks or months." Defs.' Br. 10-12; Defs.' Mot. 2-3; Defs.' Ex. 16 at 4, 10, 15.[2] *See infra* at 21.

Defendants' shifting descriptions may explain their months of indecision, but they are simply mistaken that the evidence they seek from State Street and DWS cannot be obtained via the Hague process. To the contrary, Germany itself has confirmed that "***Germany allows Letters of Request submitted in pre-trial discovery proceedings to be processed to an appropriate extent within the country***." This is why litigants—including those in currently pending securities class actions much like this one—avail themselves of the Hague Convention to pursue discovery from non-party investment managers in Germany (including from one of the same investment advisors at issue here, DWS).

***Finally***, Defendants' purported prejudice from any hindrance or delay in receiving (even more) discovery from State Street or DWS (to the extent it exists) is belied by the relative financial

---

[2]     References to "Defs.' Mot. __," "Defs.' Br. __," and "Defs.' Ex. __" are to Defendants' Motion and the brief and exhibits in support thereof (ECF Nos. 207, 207-1, 207-3–207-19). References to "O'Brien Decl. ¶ __" are to the Declaration of Jane O'Brien submitted in support of Defendants' Motion (ECF No. 207-2). References to "Moriarty Decl. ¶ __" and "Ex. __" are to the Declaration of Christopher F. Moriarty, filed herewith, and the exhibits thereto. All emphases are added and all internal citations and quotations are omitted unless otherwise noted.

losses at issue with two funds they advised—the VBV Fund and DWS Fund.  As discussed below, the VBV Fund and DWS Fund's financial losses from their Class Period transactions in Alexion common stock were approximately *2.07%* and *8.64%*, respectively, of Erste AM's funds' total losses.  In contrast, Erste AM's internally managed fund accounts for approximately *89.29%* of Erste AM's total losses.  *See* § III.F.[3]

Given that Defendants already have received a substantial amount of information from Erste AM relating to the relevant funds that were managed by State Street and DWS (and that Erste AM does not control these outside entities and cannot compel them to produce documents or sit for a deposition), Defendants' request for a 60-day extension is untethered to any actual need or practical reality.  Thus, Defendants' arbitrary request for two extra months should be seen for what it is—an attempt to manufacture a discovery dispute about two non-parties that Defendants hope to parlay into a challenge to Erste AM's adequacy at class certification.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2021, several weeks after being eligible to do so and knowing the schedule for Plaintiffs' document production was likely to be tight, Defendants served their First Request for Production of Documents Directed to Lead Plaintiffs ("Defendants' RFPs").  *See* Moriarty Decl. ¶ 5.  Defendants requested 30 separate categories of documents, excluding subparts, that were in Lead Plaintiffs' "possession, custody, or control."  *Id.*

On October 18, 2021, Plaintiffs served their Initial Disclosure Statement Pursuant to Rule 26(a)(1), disclosing State Street and DWS as Erste AM's external investment managers who

---

[3]     Defendants have not raised a single concern about Erste AM's discovery production concerning the internally managed fund.

purchased or sold Alexion common stock on behalf of Erste AM during the Class Period.  Erste AM disclosed both investment managers' addresses in Germany.  *Id.* ¶ 6.

State Street and DWS each manage one of Erste AM's funds that traded in Alexion common stock during the Class Period.  *Id.* ¶ 9.  State Street is the external manager for the VBV Fund.[4]  DWS is the external manager for the DWS Fund.  *Id.*

On October 28, 2021, while Plaintiffs' responses to Defendants' RFPs were pending, the parties engaged in a meet-and-confer.  *Id.* ¶ 7.  At that time, Defendants requested answers related to Erste AM's ability to obtain documents from State Street and DWS.  Plaintiffs explained that while Defendants' RFPs had only recently been served and document collection was in progress, Plaintiffs did not believe the management agreements provided Erste AM with the authority to compel the production of documents from State Street and DWS.  *Id.*  Counsel for Defendants asked Erste AM's counsel for their consent to file a motion to obtain discovery from State Street and DWS pursuant to the Hague Convention.  Erste AM's counsel immediately provided their consent.  *Id.*  Plaintiffs also stated that Erste AM and its counsel were willing to contact State Street and DWS to ask them to produce any specific documents on a voluntary basis, and reiterated that Plaintiffs did not believe Erste AM had the ability to compel production of documents and that Defendants should proceed via the Hague Convention.  At that time, Defendants did not state what documents they wanted from State Street or DWS.  *Id.*

On December 2, 2021, Erste AM produced 2,083 pages of documents responsive to Defendants' RFPs, including the management agreements between Erste AM and State Street and Erste AM and DWS.  *Id.* ¶ 9.  This production also contains numerous documents that implicate the external managers and their investments in Alexion, including account statements and trade

---

[4]     VBV Low Carbon World Equities was formerly called VBV Passive World Equities.

tickets for all relevant transactions for all the relevant funds (including the VBV Fund and DWS Fund) and the externally managed funds' prospectuses, fact sheets, and periodic reports. Among other things, those documents explain the investment strategies employed by State Street and DWS and relevant tracking indices. *Id.* The document production shows that the VBV Fund, managed by State Street, pursues a passive investment strategy, i.e., it is an index fund.[5] The documents also show that the DWS Fund, managed by DWS, pursues an active investment policy in which assets are selected on a discretionary basis. *Id.* On December 15, 2021, the deadline for Lead Plaintiffs' Production of Documents Responsive to Defendants First Requests for Production Related to Class Certification Substantially Completed passed. *Id.* ¶ 10.

On December 20, 2021, Defendants requested a meet-and-confer the following day or day after. *Id.* ¶ 11. Defendants represented that they "intend[ed] to initiate Hague proceedings" to obtain discovery from DWS and State Street and requested that Lead Plaintiffs "consent to Defendants making a motion for the issuance of letters of request to the appropriate German authorities." *Id.* (quoting Defs.' Ex. 4 at 1). Defendants also noted that they believed such discovery may be relevant to a "reliance challenge at the class certification stage." *Id.*

On December 22, 2021, Plaintiffs responded to Defendants' request for consent to their request to "initiate Hague proceedings" by stating Erste AM had provided that consent during the October 28, 2021 meet and confer. *Id.* ¶ 12. In connection with Defendants' "reliance challenge," Plaintiffs asked if Defendants had "searched for any communications between Alexion and Erste AM's external managers? As you know, any such documents would be in Alexion's possession." *Id.* On December 28, 2021, Defendants stated with respect to their reliance

---

[5]     Because the VBV Fund is an index fund, State Street unsurprisingly does not have additional responsive discovery that has not already been provided by Erste AM.

challenge:   "Whether Defendants have done so [searched for any communications between Alexion and Erste AM's external managers] or not is irrelevant to the issue at hand" and refused—and continue to refuse—to provide a substantive response.  *Id.* ¶ 13.

On December 29, 2021—two months after Plaintiffs had consented to Defendants seeking discovery via the Hague—Defendants wrote to Plaintiffs demanding thirteen categories of documents from DWS and State Street "no later than January 14, [2022,] and that representatives of Erste AM's investment advisors agree to sit for depositions to take place by the end of January." *Id.* ¶ 14.  This was the first time that Defendants identified the specific categories of documents sought specifically from State Street and DWS, as well as Defendants' first indication that they want to take depositions of non-parties State Street and DWS.  This was also Defendants' first indication that, contrary to their representation just nine days earlier, they no longer intended to pursue discovery from State Street and DWS via the Hague, but demanded Erste AM facilitate the voluminous discovery they sought.  Significantly, many of the requested documents had been produced on December 2, 2021.  *See* Defs.' Ex. 9 (requesting "Documents sufficient to show the investment objectives and parameters pursuant to which Erste AM's investments are managed, including agreements with Erste AM and/or its outside managers, as well as internal guidelines for portfolio management"; "Trade info on Alexion on behalf of Erste AM"; "Documents concerning the price of Alexion Securities or movements thereof.").

On December 30, 2021, the parties met and conferred.  Plaintiffs explained again that Erste AM did not have the authority to compel the documents Defendants sought from DWS and State Street, and that many of the documents Defendants requested the day before had already been produced by Erste AM on December 2, 2021.  Plaintiffs also stated that Erste AM would request additional documents and deposition dates from DWS and State Street even though Erste

AM did not have the authority to compel their production or the deposition testimony Defendants sought. Defendants acknowledged that many of the documents requested on December 29, 2021 had been produced nearly a month earlier and it was thus unnecessary to request those documents from DWS and State Street. Moriarty Decl. ¶ 15. Plaintiffs reiterated (again) that Defendants should proceed via the Hague Convention. *Id.* Defendants also informed Plaintiffs that unless DWS and State Street complied with all of Defendants' demands, Defendants reserved the right to oppose Erste AM's request for appointment as a class representative. *Id.*[6]

On January 3, 2022, Defendants requested that Erste AM "please advise us by this Friday, January 7 whether you will be able to provide documents in response to each of the requests outlined below, and whether representatives of DWS Investment GmbH and State Street Global Advisors GmbH will sit for a deposition." *Id.* ¶ 16. Accordingly, Defendants demanded confirmation by January 7, 2022, that two non-parties (that Lead Counsel do not represent) would sit for a deposition, notwithstanding that Defendants had only first raised this request on December 29, 2021. *Id.*

On January 4, 2022, Plaintiffs wrote to Defendants to correct the account of the meet-and-confer contained in Defendants' Counsel's January 3, 2022 e-mail and stated that "[o]ur agreements during the hour-long meet and confer last Thursday were much more nuanced than us agreeing to ask Erste AM to ask its external managers 'to provide documents in response to each of the requests outlined below.'" *Id.* ¶ 17 (quoting Defs.' Ex. 9 at 1). Plaintiffs also provided a list of the items that the parties had agreed to. Defendants did not challenge that correction. *Id.*

---

[6]     This appears to be Defendants' real aim, to manufacture a discovery dispute and then use it as a basis to argue Erste AM is an inadequate class representative. It is for this reason that Plaintiffs believe a fulsome response to Defendants' Motion is appropriate.

Following the December 30, 2021 meet-and-confer, Erste AM repeatedly contacted DWS and State Street to request the documents first demanded by Defendants on December 29, 2021 (as revised following the December 30, 2021 meet-and-confer) and to ask DWS and State Street to sit for depositions. *Id.* ¶ 18. On January 7, 12, and 26, 2022, Erste AM produced additional documents to Defendants. *Id.* ¶ 19. On February 9, 2022, Erste AM produced documents showing its correspondence between itself and DWS, and itself and State Street concerning Alexion. *Id.* ¶ 20.

On February 11, 2022, Erste AM produced documents that it had received voluntarily from DWS. The documents included handwritten notes by a DWS fund manager regarding Alexion. *Id.* ¶ 21. Plaintiffs also provided information from State Street—namely that, as an index fund, the VBV Fund was (and is) passively managed, and, as a result, there are unlikely to be many documents responsive to Defendants' requests that have not already been produced. *Id.*

On February 15, 2022, State Street informed Erste AM that "VBV Low Carbon World Equities was a passive equity index mandate and would have been tracking the index passively. Passive equity index mandates do not apply fundamental analysis and the SSGA Global Equity Beta Solutions Portfolio Management Team does not, therefore, keep documents, emails, chat messages, notes or similar pertaining to investment decisions in respect of individual securities for such mandates. Investment decisions would have been driven by the constituents and weightings of the index only." This information was relayed to Defendants the same day. *Id*. ¶ 22.

On February 16, 2022, Plaintiffs told Defendants that "in the interest of compromise and to avoid further wasting the Court's time on an issue that can be worked out by mutual agreement and compromise, Plaintiffs are amenable to offering Defendants two additional weeks to file their class cert opposition, or until April 5, in order to resolve Defendants' motion." *Id*. ¶ 23. On

February 17, 2022, Defendants stated that they were unable to agree to Plaintiffs' proposal. *Id*. ¶ 24.

## III.   ARGUMENT

### A.   Legal Standards on a Motion for Extension

"A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension."  L.R. 7(b)(1) ("All motions for extensions of time must be decided by a Judge and will not be granted except for good cause").  In determining whether a party has shown the necessary "good cause" pursuant to Rule 16(b), courts consider the diligence of the party who is seeking such relief and/or whether the pretrial schedule set by the court "cannot reasonably be met despite the diligence of the party seeking the extension."  Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment.

"[A] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'"  *Longuidice v. City of Hartford*, 2015 WL 1245563, at *2 (D. Conn. Mar. 18, 2015).  Accordingly, "[a] finding of good cause depends on the diligence of the moving party," meaning that the moving party must show that the schedule cannot be reasonably met despite that party's diligence.  *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003).  *See also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("[I]n certain cases the court may determine that '[the deadline] cannot reasonably be met despite the diligence of the party seeking the extension.'"); *Julian v. Equifax Check Servs. Inc.*, 178 F.R.D. 10, 16 (D. Conn. 1998) ("'Good cause' means that the schedule cannot reasonably be met despite that party's diligence.").

Here, Defendants' Motion is not supported by good cause for numerous reasons.

**B.** **Any Delay in Obtaining Additional Discovery from State Street and DWS Is Due to Defendants' Failure to Pursue Hague Requests After Erste AM Consented to, and Offered to Facilitate, Such Requests**

Any delay that Defendants have experienced in obtaining documents from State Street or DWS has been of Defendants' own making due to their failure to follow through on their repeated representation that they intended to serve discovery under the Hague. As noted above, on October 28, 2021, Erste AM's counsel informed Defendants that Erste AM would not oppose Defendants' request to this Court for Hague letters of request directed to State Street and DWS. At this same time, Defendants were told that Erste AM and its counsel were also willing to contact State Street and DWS to ask them to produce any specific documents on a voluntary basis.

If Defendants had followed through on their initial acceptance of Plaintiffs' invitation on October 28, 2021, to file and serve unopposed Hague letters of request to State Street and DWS, those requests would have been pending for more than four months by the time this motion is fully briefed.

As late as December 20, 2021, Defendants wrote to Plaintiffs that "Defendants intend to initiate Hague proceedings" and again asked Plaintiffs to "confirm that Plaintiffs consent to Defendants making a motion for the issuance of letters of request to the appropriate German authorities." Defs.' Ex. 8 at 11. Plaintiffs responded by reminding Defendants that Plaintiffs had already "told Defendants that Plaintiffs consented to such [Hague] requests during a meet and confer in October . . . ." *Id.* at 10. *See also* Moriarty Decl. ¶ 7 (noting that on October 28, 2021, Plaintiffs "immediately provided Erste AM's consent" to Defendants "fil[ing] a motion to obtain discovery from State Street and DWS pursuant to the Hague Convention" and "also stated that Erste AM did not object to contacting DWS and State Street to ask them to produce any potentially relevant documents on a voluntary basis"). Thus, Defendants waited more than two months before reneging on their repeated representations that they would seek discovery from State Street and

DWS through the Hague Convention and changing their strategy instead to demand that Erste AM was solely responsible for facilitating this discovery—including depositions—from these non-parties.

To distract from Defendants' own months of delay, vacillation, and reversals, Defendants assert that "Erste AM . . . has not made its investment advisors available for discovery"; "Erste AM has disavowed any responsibility for providing documents or depositions from [DWS] or [State Street]"; "Erste AM . . . refused to facilitate discovery" from those advisors; and complain that "Defendants do not know whether Erste AM will cooperate with the parties' requests to produce documents and witnesses for testimony, or, if so, when those documents will be produced."  Defs.' Br. 1; O'Brien Decl. ¶ 6(a).  Nothing could be further from the truth.  Rather than "refus[e] to facilitate discovery" from State Street and DWS, Erste AM and its counsel have agreed to take steps to request the material in question, as detailed below.

### C.   Despite Defendants' Delays and Reversals, Erste AM Has Diligently Sought and Produced Documents Concerning State Street and DWS

Defendants already have received substantial discovery from Erste AM relating to Erste AM's investments in Alexion common stock through the two funds that were managed by State Street and DWS:  the VBV Fund and DWS fund.  *See* Moriarty Decl. ¶¶ 9, 14, 15, 21.  *See also Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].").

To date, Erste AM has produced over 3,000 pages of documents to Defendants, including documents that DWS has voluntarily produced to Erste AM and Defendants, including fund regulations, analyst reports, Erste AM's e-mails with both State Street and DWS, and handwritten notes by a DWS fund manager regarding Alexion.  Erste AM's own document production also

includes numerous documents that implicate State Street and DWS, the VBV Fund and DWS Fund, and their investments in Alexion common stock, including account statements and trade tickets for all relevant transactions for all the relevant funds (including the VBV Fund and DWS Fund) and the externally managed funds' prospectuses, fact sheets, and periodic reports.  As discussed above, State Street has represented it does not have documents responsive to Defendants' specific requests.

> **D.** **While Erste AM Has Reached Out to State Street and DWS and Obtained Documents on a Voluntary Basis, Erste AM Does Not Have Possession, Custody, or Control of These Non-Parties**

While Erste AM has been diligently seeking and producing documents from and concerning DWS and State Street, the fact remains that Erste AM does not have "possession, custody, or control" of the business records or employees of State Street or DWS, which are entirely separate legal entities located in an entirely separate country, Germany, from Erste AM, which is located in Austria.  Fed. R. Civ. P. 34(a)(1).  This is hardly surprising as courts have routinely found that pension funds do not have "control" over the contents of their investment advisors' files.  *See In re ICG Commc'ns, Inc., Sec. Litig.*, 2005 WL 8180470, at *1 (D. Colo. Sept. 7, 2005) (holding that "[t]he documents in the possession of the plaintiff's investment advisors, which the plaintiffs have no right to obtain, are not in the plaintiffs' possession, custody, or control").  Courts have similarly found in analogous situations that parties do not have requisite control over non-parties.  *See, e.g.*, *Tatum v. Schwartz*, 2007 WL 2220977, at *6 (E.D. Cal. Aug. 2, 2007) ("[D]efendants have not demonstrated plaintiff's control over entities such as her bank.").

Erste AM does have business relationships with State Street and DWS, which are governed by management agreements, but those agreements do not give Erste AM custody or control over State Street or DWS's files, records, or e-mail accounts.  *See In re Subpoena Issued to Cisco Sys., Inc.*, 2010 WL 3155895, at *3 (N.D. Cal. Aug. 9, 2010) (finding that party lacked control over

documents held by its contract manufacturers and explaining that a "mere business relationship will [not] suffice to confer legal control by one company over the documents of another").[7]

Perhaps most telling of all, although Defendants accuse Erste AM of not "cooperat[ing] with [Defendants'] requests to produce documents and witnesses" on behalf of State Street and DWS, Defs.' Mot. 2, and fault Erste AM for not "*ma[king]* its investment advisors available for discovery," Defs.' Br. 1, Defendants noticeably refrain from ever directly asserting that Erste AM actually has possession, custody or control over DWS or State Street, their documents, or employees. *See* Defs.' Br. 5-6.[8]  Ultimately, Erste AM's "good faith averment that the items sought . . . are not in [its] possession, custody, or control, should resolve the issue[.]"  *Mason Tenders Dist. Council of Greater N.Y. v. Phase Constr. Servs, Inc.*, 318 F.R.D. 28, 42 (S.D.N.Y. 2016).  In sum, Erste AM has asked DWS and State Street for *everything* Defendants requested and provided documents and information in response.

---

[7]    In this context, it is not enough for the party seeking documents to show that the opposing party has "control" over *some* documents in the possession of a non-party; rather, the party seeking discovery must make a sufficient showing that the party controls the *specific* documents requested for production.  *See S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 475 (S.D.N.Y. 2000) (holding *"*SECO has not made a sufficient showing as to SASI's control *over the documents SECO seeks*").  Here, Defendants have not shown that Erste AM has control over *any* of State Street or DWS's documents, much less the *specific* documents Defendants purport to seek.  *See* Defs.' Ex. 10.

[8]    Defendants translate "Erste AM's agreement with DWS" as stating that "[DWS] will support [Erste AM] in carrying out any Class Action proceedings (e.g.[,] by questioning the portfolio management)."  Defs.' Br. 5.  But an agreement to ask the portfolio manager questions hardly gives Erste AM possession, custody, or control of DWS's proprietary documents or files or the practical ability to force DWS employees in Germany to sit for sworn depositions.  Notably, Defendants do not mention Erste AM's management agreement with State Street—likely because that agreement does not give Erste AM the right to demand, or practical ability to obtain, such documents.  *See* Defs.' Br. 10 (noting that "Erste AM . . . produced the relevant agreements" with State Street and DWS).  The fact that Defendants elected not to attach that management agreement to their Motion should tell the Court all it needs to know about Defendants' arguments.

**E.      German Authorities Routinely Process Hague Requests for Documents and Testimony in Pre-Trial Discovery Proceedings**

In an attempt to excuse their lack of diligence in pursuing compulsory discovery under the Hague Convention (and reneging on their prior representations), Defendants argue that doing so would be futile.  This is incorrect.  Defendants' characterizations of Germany's law and practices related to discovery requests under the Hague are simply not accurate.  Germany routinely processes such requests under the Hague for both documents and testimony in pending civil litigation to the satisfaction of U.S. litigants.

Defendants argue that their failure to pursue Hague Convention letters of request—despite requesting and receiving Plaintiffs' consent to do so—is justified because "German authorities will not execute a request for ***pre-trial*** documents or an adversarial deposition, because such proceedings are not recognized under German law."  Defs.' Br. 1-2.  In their Motion, Defendants rely on the declaration of a German lawyer,[9] who states that Germany, in implementing the Hague Convention, availed itself of Article 23, which states that a "Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining ***pre-trial*** discovery of documents as known in Common Law countries." Defs.' Br. 11; Defs.' Ex. 16 ¶ 15.

One cannot understand discovery under the Hague Convention and the meaning of Article 23 without knowing that the term "pre-trial discovery" has a vastly different and much narrower meaning that this term's normal usage in the United States.  On this precise issue, Justice Blackmun has explained that "although Article 23 refers broadly to 'pre-trial discovery,' ***the intended***

---

[9]      *See* Defs.' Ex. 16 ¶¶ 7, 15 (asserting that "letters of request . . . with respect to pre-trial discovery of documents from third parties located in German ***must fail***" because of Germany's declaration under "Article 23 . . . concerning pre-trial discovery").

meaning of the term appears to have been much narrower than the normal United States usage."
*Société Nationele Industrielle Aérospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522,
563 (1987) (Blackmun, J., concurring and dissenting).  Specifically, "[t]he use of the term 'pre-
trial' seems likely to have been the product of a **lack of communication**."  *Id.* at 563 n.21 "[I]n
1978, delegates from civil-law countries revealed a '**gross misunderstanding**' of the meaning of
'pre-trial discovery,' thinking that it is something used before the institution of a suit to search for
evidence that would lead to litigation."  *Id.*  As Justice Blackmun further explained, "the emerging
view of this exception [i.e., Article 23's exception for 'pre-trial discovery'] is that it **applies only
to 'requests that lack sufficient specificity or that have not been reviewed for relevancy by the
requesting court**.'"  *Id.* at 564-65.  "Thus, **in practice, a reservation is not the significant obstacle
to discovery under the Convention that the broad wording of Article 23 would suggest.**"  *Id.*

In its amicus brief filed in *Aérospatiale* (*see* Ex. 1), Germany itself told the U.S. Supreme
Court that "from 1980 through 1985," 154 out of 181 (**85%**) of the "formal letters of request from
U.S. courts [that] were received by German Central Authorities" were "accepted and executed."
Germany noted that "*[t]hese figures disprove the argument that application of the [Hague]
Convention is futile*."  *Id.* at *8-9.

Consistent with *Aérospatiale*, U.S. courts routinely order and approve discovery in
Germany via Hague letters of request.  *See, e.g.*, *S.E.C. v. Tourre*, 2011 WL 350286, at *1
(S.D.N.Y. Jan. 31, 2011) (granting application for "issuance by the court of a [Hague] letter of
request addressed to a governmental agency in Germany and requesting the production of a wide
range of documents from two German entities"); *Hudson v. Hermann Pfauter GmbH & Co.*, 117
F.R.D. 33, 40 (N.D.N.Y. 1987) (granting a motion "requiring plaintiffs to serve their
interrogatories in accordance with the terms of the Hague Convention"; finding that "it is not at all

clear that use of [Hague] Convention procedures will be much more costly or time consuming than would the direct use of the Federal Rules"; noting that "it appears that plaintiffs can obtain most if not all of the information they seek in their interrogatories through [Hague] Convention procedures"; finding that "[t]he inconvenience that results when unfamiliar procedures must be used to obtain evidence located abroad does not unfairly prejudice plaintiffs in this case"; and concluding that "[u]nder all the circumstances, *use of [Hague] Convention procedures seems desirable*."); *S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 617 & n.33 (M.D. Tenn. 1986) (finding "[i]t is reasonable to expect that West German authorities will process the Letter of Request expeditiously" given that "[A]rticle 9 provides that letters 'shall be executed expeditiously'" and that Article 13 states that "[i]n every instance where the Letter is not executed in whole or in part, the requesting authority shall be informed *immediately* through the same channel and advised of the reasons" and concluding that "*the likelihood that [plaintiff's] resort the [Hague] Convention will produce results roughly equivalent to those likely pursuant to [Fed. R. Civ. P.] 33 and 34 is substantial*").[10]

---

[10]     *See also Phila. Gear Corp. v. Am. Pfauter Corp.*, 100 F.R.D. 58, 60–61 (E.D. Pa. 1983) ("I am, of course, aware that the government of West Germany has declared that pursuant to Article 23 of the convention it will not execute letters of request issued in an effort to obtain pre-trial document discovery.  However, this declaration is tempered by Article 9 which provides that German courts should seek to implement in good faith any legitimate discovery procedure that may be requested by this court.  Thus, once plaintiff proceeds in the manner set forth in the Hague Convention, *it can be anticipated that the German authorities will fully cooperate in gathering the necessary evidence*."); *Volkswagenwerk Aktiengesellschaft v. Super. Ct.*, 123 Cal. App. 3d 840, 858, 176 Cal. Rptr. 874, 885 (1981) ("We believe claimants read the Hague Convention too narrowly: The Convention expressly contemplates that the German courts should seek in good faith to implement any legitimate discovery procedure the California court may request.  *It is true that by the terms of its ratification West Germany has indicated that it will not execute letters of request for pretrial discovery of documents, but we suggest that this limitation should be tested, in this action, by a specific request that West Germany permit inspection of documents in light of the manifest need for full disclosure of evidence in the pending California action*.").

Regarding Defendants' ability to obtain deposition testimony in Germany via the Hague, Defendants correctly concede that "Germany will . . . execute requests for pre-trial testimony." Defs.' Br. 12.  U.S. courts routinely issue letters [of request] seeking testimony in Germany.  For example, in *In re Urethane Antitrust Litigation*, 267 F.R.D. 361 (D. Kan. 2010), the court granted the plaintiffs' "motion [for] the issuance of letters of request" to "secure the testimony" of three non-party witnesses in Germany.  *Id.* at 363.  In so ruling, the court noted that "Germany's Response to the 2008 Hague Conference Questionnaire states that, under the German Code of Civil Procedure, the German court will permit a witness to 'present his perceptions on the subject on which evidence is to be given in summary form" and then will "interrogate witnesses to complete the statement.'  Thereafter, 'it is primarily the parties' lawyers who have the right to directly question witnesses.'  Although this right is usually exercised 'by submitting questions to the witness,' Germany's Response goes on to state that 'the party may also be permitted by the court to interrogate the witness directly.'"  *Id.* at 366-67.  *See also Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 F. App'x 392, 400 (3d Cir. 2021) (affirming denial of motion to vacate letters of request that district court issued under Hague Convention seeking testimony from individuals in Germany).  *See also* Exs. 2-7 (Hague letters by Qualcomm seeking testimony from six German investment advisors, including DWS).

Indeed, "[a]ccording to the United States Consulate Office in Germany, American style civil litigation depositions may be taken in Germany."  *Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH*, 2015 WL 9216845, at *2 (N.D. Okla. Dec. 17, 2015) (noting "[t]here is a practice to allow for U.S.-style depositions in Germany with regard to German nationals if the German Ministry of Justice is informed and approves the deposition in advance, which . . . it usually

does."). *See also Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 2013 WL 12291616, at *4 (S.D. Ind. Apr. 26, 2013) ("Article 23 reservations do not apply to depositions.").

Consistent with the cases above, savvy litigants who understand the meaning and function of Article 23's exception for "pre-trial discovery" have not hesitated to seek discovery in Germany. For example, on September 5, 2019, the defendants in *In re Qualcomm Incorporated Securities Litigation*, No. 3:17-cv-00121-BEN-MSB (S.D. Cal.), moved for the issuance of letters of request "seek[ing] documents from, and the right to depose" six German "Investment Managers" that "'made the relevant investment decisions' to invest in Qualcomm securities on [Lead Plaintiffs'] behalf[.]" *See* Ex. 8 at 2, 6.[11] The court granted the motion the next day (*see* Ex. 9) and issued the six Hague letters of request to Germany's relevant Central Authorities. *See* Exs. 2-7. The *Qualcomm* court's Hague letters recognized the specialized meaning of "pre-trial discovery" under Article 23 of the Hague Convention and accordingly stated that "the documentary evidence [being] sought . . . is not discovery within the meaning of Article 23 of the Hague Convention" but rather "documents and oral testimony" that "are directly relevant to the parties' claims and defenses in this action":

> This Court considers that the evidence sought herein (1) is directly relevant to the issues in dispute, (2) will be used at trial, and (3) is evidence without which the ends of justice could not be properly met. This Court also considers that the ***documentary evidence sought herein is not discovery within the meaning of Article 23 of the Hague Convention (that is, discovery intended to lead to relevant evidence for trial). Rather, the documents and oral testimony sought are directly relevant to the parties' claims and defenses in this action*** and will be used as evidence, in particular in connection with Lead Plaintiffs forthcoming Motion for Class Certification. Finally, this Court believes that this evidence is not available from any other source.

---

[11] The *Qualcomm* defendants, represented by Cravath, Swain & Moore LLP and Cooley LLP, also sought, and the court issued, Hague letters to non-party investment managers in Switzerland and the United Kingdom. *See* Ex. 8 at 1-2. Just as Plaintiffs have offered their consent to any motion by Defendants for Hague letters, the *Qualcomm* defendants' motion was unopposed. *Id.* at 1.

*Id.* at 1.  In fact, one of the *Qualcomm* court's Hague letters was directed to DWS:  the same investment manager from whom Defendants in this case have not bothered to seek discovery through the Hague. (Instead, Defendants opted to retain a German lawyer to opine to this Court why doing so would be futile).  *See* Ex. 2.

As with Germany, courts in this Circuit and across the country routinely issue Hague Convention letters of request to countries that, like Germany, have declarations under Article 23 regarding "pre-trial discovery."  *See, e.g.*, *In re Application of Gorsoan Ltd. & Gazprombank OJSC for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2014 WL 7232262, at *8 (S.D.N.Y. Dec. 10, 2014) ("Cyprus's declaration regarding letters of request . . . does not constitute a blanket prohibition on such letters, but rather indicates that letters of request must be sufficiently substantiated."), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016); *Anwar v. Fairfield Greenwich Ltd.*, 982 F. Supp. 2d 260, 267-68 (S.D.N.Y. 2013) ("[I]n the Netherlands, 'pre-trial' means the time before a proceeding is commenced.  Thus, the text of Article 23 should not be construed to suggest that the Netherlands forbids document disclosure once a case is filed."); *Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 155-56 (S.D.N.Y. 2011) (holding that the same "reservation under Article 23 of the Hague Convention" that "China adopted"  has "been adopted by thirty-six Hague Convention signatories, including the United Kingdom and Switzerland, and, thus, the reservation does not demonstrate that China would refuse to execute a request for the documents plaintiffs seek"), *aff'd sub nom. Tiffany (NJ) LLC v. Andrew*, 2011 WL 11562419 (S.D.N.Y. Nov. 14, 2011); *Metso Mins. Inc. v. Powerscreen Int'l Distribution Ltd.*, 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007) (granting motion for the issuance of a Hague Convention letter of request to obtain evidence in the United Kingdom despite its exception to Article 23 similar to Germany and noting that "in practice, a

reservation is not the significant obstacle to discovery under the [Hague Evidence] Convention

that the broad wording of Article 23 would suggest" (quoting *Aérospatiale*, 482 U.S. at 564)).[12]

In 2008, Germany itself corroborated the above authority by publicly stating to the Hague

Conference on Private International Law ("HCCH") that "[t]here is no reason" for Germany to

change its "declaration" regarding "[p]re-trial discovery of documents (Art. 23)" because

"***Germany allows Letters of Request submitted in pre-trial discovery proceedings to be processed***

***to an appropriate extent within the country***. ***Such requests can be dealt with*** under Section 14

Paragraph 2 of the law implementing the Evidence Convention insofar as this is not precluded by

fundamental principles of German procedural law."[13]

---

[12]     *See also Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2014 WL 202102, at \*1-2 (W.D. Wash. Jan. 17, 2014) (granting motion for letters rogatory seeking "to obtain documents and testimony from third-parties in Spain and Italy"; rejecting argument that "the requested issuance of Letters Rogatory is futile as Spain and Italy have both made reservations, in accordance with Article 23"; and stating that "[w]hether the Letters Rogatory will be executed in light of Spain and Italy's Article 23 reservations is a matter for the appropriate Spanish and Italian tribunals"); *Eli Lilly*, 2013 WL 12291616, at \*3-5 (granting motion for letter request pursuant to Hague "to obtain testimony and documents" from a non-party in U.K. despite fact that "the [U.K.] has limited the scope of documents that may be obtained pursuant to Letters of Request as such requests relate to the 'pre-trial' discovery of documents" and noting "'the emerging view of this exception to discovery is that it applies only to requests that lack sufficient specificity or that have not been reviewed for relevancy by the requesting court.'" (quoting *Aérospatiale*, 482 U.S. at 564)); *Multimedia Pat. Tr. v. Apple Inc.*, 2012 WL 12868304, at \*1, \*3-4 (S.D. Cal. July 30, 2012) (granting motion "for the issuance of a Letter of Request under the Hague Convention . . . request[ing] documents" from company in Switzerland and noting "Switzerland's declared reservations in accordance with Article 23").

[13]     Permanent Bureau of the Hague Conference on Private Int'l Law, Synopsis of Responses to the Questionnaire of May 2008 Relating to the Hague Convention of 18 Mar. 1970 on the Taking of Evid. Abroad in Civ. and Commercial Matters, at 123 (2009) (Ex. 10) ("2008 Hague Questionnaire Response"), *available* at https://assets.hcch.net/upload/wop/2008synopsis20.pdf (citing German Act on the Implementation of the Hague Evidence Convention (Implementation Act; AusfG HBÜ), § 14(2) (Translation), *available at* http://www.justiz.nrw.de/Bibliothek/ir_online_db/ir_htm/65_70_ausfuehrungsgesetz.htm) ("***Requests for legal assistance relating to proceedings under Article 23 of the Convention . . . can be dealt with***, taking into account the interests of the data subject worthy of protection, after the requirements for the settlement and the procedure to be used have been regulated in more detail

In view of the foregoing, the Court may well ask how U.S. litigants have actually fared by proceeding in Germany through the Hague.  In 2003, the ABA conducted a survey of U.S. lawyers' experiences with the Hague Evidence Convention, which is posted on the HCCH's official website.[14]  The ABA received 42 responses from attorneys regarding their experiences in various countries, five of which concerned Germany.  *See* Ex. 11 at 4-5 ("France (11 responses), the UK (10), Switzerland (7), ***Germany (5)***, Australia (2), . . .").   Of the five responses received for Germany three "respondents indicated that their experience [in Germany] was '***more satisfactory*** ***than they had anticipated***."  *Id.* at 6.  Three respondents who "respond[ed] as to their experiences in . . . Germany" stated that "***they were 'glad' they had used the Convention and would again*** ***initiate the Convention procedures under the same circumstances***."  *Id.*  The ABA Survey suggests that the reason these respondents were unexpectedly "satisf[ied]" and generally "glad" they had pursued Hague discovery in Germany was because their efforts resulted in their successfully obtaining documents and testimony.   For example, one respondent reported that Germany's "***judicial authority . . . compelled production of some of the documents requested[.]***" *Id.* at 9.   Regarding depositions, the ABA Survey noted that "***as to . . . Germany – several*** ***respondents indicated being quite satisfied with the examination procedures*** . . . ."  *Id.* at 26.

---

by statutory order, which the Federal Minister of Justice has approved with the consent of the Federal Minister of Justice of the Federal Council.").  While Defendants' German lawyer argues that this provision "does not lead to any other legal conclusion" regarding Germany's interpretation of Article 23 (Defs.' Ex. 16 at 7), it is clear from Germany's 2008 Hague Questionnaire Response that Germany itself disagrees and does in fact interpret this provision as "allow[ing] Letters of Request submitted in pre-trial discovery proceedings to be processed . . . ." Ex. 10 at 123.

[14]     *See* Am. Bar Ass'n, Int'l Litig. Comm., Section of Int'l L. & Prac., Report on Survey of Experience of U.S. Lawyers with the Hague Evidence Convention Letter of Request Procedures, at 10 (Oct. 9, 2003) ("ABA Survey"), *available at*: https://assets.hcch.net/docs/be59770a-4eec-4c58-ad36-11d9f5734fdd.pdf (Ex. 11).

Accordingly, Defendants' conclusion that Germany does not process Hague letters of request for pre-trial documents or testimony is based on a gross—and self-serving—misunderstanding of how such letters are actually handled in Germany.[15]  Defendants' continuing failure to serve requests under the Hague Convention is, at best, based on faulty reasoning, and, at worst, an attempt to manufacture a dispute they might use to challenge Erste AM's adequacy at class certification.  The Court should see through these efforts.

### F.    The VBV Fund and DWS Fund Incurred Only a Small Fraction of the Total Losses Sustained by Erste AM

Defendants argue that "there is no dispute about the relevance, necessity, or discoverability of the . . . documents that Defendants are seeking from Erste AM's German investment managers . . . ."  Defs.' Br. 8.  But, while State Street and DWS may have additional relevant information regarding the VBV Fund and DWS Fund's transactions (and losses sustained) in Alexion common stock—which is unlikely given the documents produced and passive nature of

---

[15]    In arguing that Hague letters of request are futile in Germany, Defendants cite three inapposite cases.  *See* Defs.' Br. 11.  **First**, *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp.*, 545 F.3d 357, 366 (6th Cir. 2008), concerned South Africa (not Germany); the primary issue was forum non-convenience (not the efficacy of Hague letters); and the court stated that "compulsory process may be obtained" despite South Africa's "Reservations and Declarations" as to "pre-trial discovery").  **Second**, in *St. Jude Medical S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1168 (D. Or. 2015), the court relied on Germany's Article 23 declaration that "'it will not, in its territory, execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents,'" but there is no indication the court was aware that "pre-trial discovery" as used in Article 23, has a "much narrower" meaning under Article 23 than "the normal United States usage." (citation omitted).  **Third**, in *Hefferan v. Ethicon Endo-Surgery, Inc.*, 2015 WL 2169689 (S.D. Ohio May 8, 2015), another *forum-non-conveniens* case, the court mistakenly relied on *Estate of Thomson* (discussing South Africa) for its conclusion that "Germany does not allow Letters of Request to obtain pretrial discovery of documents," *id.* at *5, but again there is no indication that the court realized that "pretrial discovery" has a much different meaning under Article 23 than this term is normally used in the United States.  *See supra*, at 15-17 (discussing *Aérospatiale*).  Moreover, the *Hefferan* court acknowledged that "[a]ny court will necessarily face some difficulty in securing evidence from abroad, but these complications do not necessarily justify [a *forum non conveniens*] dismissal."  *Hefferan*, 2015 WL 2169689, at *5.

the VBV Fund's investment strategy[16]—any extension of time that may be granted with respect to information in the possession of those non-party investment managers should be consistent with Rule 26's mandates that the discovery sought be "proportional" considering the "importance of the issues," the "amount in controversy," the "importance of the discovery," and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the proportionality of the discovery for which Defendants seek an extension of time should be considered in the context of the financial losses incurred by the two funds that State Street or DWS managed for Erste AM—the VBV Fund and DWS Fund. And as noted below, these losses constitute only a small fraction of the overall losses incurred by Erste AM and Lead Plaintiffs in this case.

As detailed in Lead Plaintiffs' certifications (ECF Nos. 69-70) filed in connection with their July 14, 2017 Consolidated Class Action Complaint (ECF No. 63), Erste AM's total losses from trading in Alexion common stock during the Class Period (calculated on a last-in-first-out ("LIFO") basis) were $2,007,034.50. *See* ECF Nos. 69-70 (listing Lead Plaintiffs' purchases and sales). Of these losses, the VBV Fund and DWS Fund's respective LIFO losses were only $41,573.06 and $173,594.60—or only ***2.07%*** and ***8.64%***, respectively, of Erste AM's total losses. *Id.*[17] The VBV Fund and DWS Fund's respective LIFO losses constitute merely ***0.55%*** and ***2.31%***, respectively, of Lead Plaintiffs' total combined LIFO losses of $7,499,298.99.

---

[16]     Courts have repeatedly held that passive investment models, such as those employed by index funds, do not prevent reliance or make an investor atypical. *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at *2 (S.D.N.Y. Jan. 23, 2013) ("Tracking an index for an efficient market is sufficient reliance for the purpose of class certification.").

[17]     Defendants assert that "tak[ing] discovery" from external "investment advisors" is "routine" because "often ***all*** of the institutional plaintiffs' transactions in the relevant security were made at the direction of the advisor, rather than the investor itself." Defs.' Br. 8-9. That is not the case here. Rather, the vast majority (***89.29%***) of Erste AM's losses were incurred by Erste AM's

Accordingly, because Erste AM's two externally managed funds incurred only a small fraction of Erste AM's (or Lead Plaintiffs') overall losses, any extension to pursue discovery from the non-parties that managed these funds should be "proportional" to the "importance" and "amount in controversy" at issue with these funds. Fed. R. Civ. P. 26(b)(1).[18] On this record, a request for 60 additional days is not "proportional" to the "importance" of the discovery at issue.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion be denied for lack of good cause, especially because, on February 9, 2022, the Court granted Defendants two additional weeks to oppose class certification. If the Court is inclined to provide Defendants even more additional time, Plaintiffs respectfully submit that 60 days is unnecessarily

---

*internally* managed fund, ERSTE STOCK BIOTEC (formerly called ESPA STOCK BIOTEC). *See* ECF No. 70 at 3-4. As explained above, Erste AM already has produced thousands of pages of documents, many of which concern ERSTE STOCK BIOTEC and its trading in Alexion common stock.

[18]   Defendants argue that "a nonparty investment adviser's knowledge" is relevant to class certification. Defs.' Br. 9 n.5. Defendants omit, however, that courts have recognized for years that institutional investors' use of investment advisors to make investment decisions poses no impediment to class certification, and that institutional investors—who typically employ investment advisors—can and should be deemed adequate and typical representatives of investor classes under Rule 23. Indeed, district courts routinely hold "that neither typicality nor adequacy are defeated when institutional investors give investment managers discretionary authority to make investment decisions." *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 179 (S.D.N.Y. 2012). *See also Silversman v. Motorola, Inc.*, 259 F.R.D. 163, 172-73 (N.D. Ill. 2009) (noting that to preclude "an institutional investor from serving as a class representative merely because it delegated investment responsibilities to a money manager would appear to be in tension with the PSLRA") (collecting cases); *In re Vicuron Pharms., Inc., Sec. Litig.*, 233 F.R.D. 421, 427 (E.D. Pa. 2006) (holding that "the fact that institutional plaintiffs used money managers and investment advisors to purchase Vicuron stock does not suggest plaintiffs are inadequate to protect and pursue the interests of the class" and that "[s]uch a result is contrary to the intentions of Congress embodied in the PSLRA that institutional investors should oversee more securities actions"); *In re Accredo Health, Inc. Sec. Litig.*, 2006 WL 1716910, at *4 (W.D. Tenn. Apr. 19, 2006) (certifying an institutional investor as class representative and noting that "institutional investors are likely to use investment managers, and reliance on these managers does not disqualify an institutional investor from serving as lead plaintiff").

long and request that Defendants be granted not more than a 30-day extension to file their opposition to Plaintiffs' motion for class certification.  If the Court does grant any extension, Plaintiffs respectfully request that Plaintiffs be granted an equivalent extension to file their reply in support of Plaintiffs' motion for class certification.

Dated:    February 17, 2021                          Respectfully submitted,

                                                     MOTLEY RICE LLC

                                                     By: */s/ William H. Narwold*
                                                          WILLIAM H. NARWOLD (CT 00133)
                                                     Mathew P. Jasinksi
                                                     One Corporate Center
                                                     20 Church Street, 17th Floor
                                                     Hartford, CT  06103
                                                     Telephone:  (860) 882-1681
                                                     Facsimile:   (860) 882-1682
                                                     bnarwold@motleyrice.com
                                                     mjasinski@motleyrice.com

                                                          -and-

                                                     Gregg S. Levin (*pro hac vice*)
                                                     William S. Norton (*pro hac vice*)
                                                     Joshua C. Littlejohn (*pro hac vice*)
                                                     Christopher F. Moriarty (*pro hac vice*)
                                                     Meredith B. Weatherby (*pro hac vice*)
                                                     28 Bridgeside Blvd.
                                                     Mount Pleasant, SC  29464
                                                     Telephone:  (843) 216-9000
                                                     Facsimile:   (843) 216-9450
                                                     glevin@motleyrice.com
                                                     bnorton@motleyrice.com
                                                     jlittlejohn@motleyrice.com
                                                     cmoriarty@motleyrice.com
                                                     mweatherby@motleyrice.com

                                                     *Co-Lead Counsel for Lead Plaintiffs*
                                                     *and the Class*

26

LABATON SUCHAROW LLP
Michael H. Rogers (*pro hac vice*)
James W. Johnson (*pro hac vice*)
James T. Christie (*pro hac vice*)
140 Broadway
New York, NY  10017-5563
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477
mrogers@labaton.com
jjohnson@labaton.com
jchristie@labaton.com

*Co-Lead Counsel for Lead Plaintiffs
and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2022, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

*/s/ William H. Narwold*
William H. Narwold (CT 00133)

MOTLEY RICE LLC
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone:  (860) 882-1681
Facsimile:  (860) 882-1682
barwold@motleyrice.com