UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------- x
BOSTON RETIREMENT SYSTEM          :
on behalf of itself and all       :
others similarly situated,        :
                                  :
          Plaintiffs,             :
                                  :
          v.                      :   Civil No. 3:16-cv-2127(AWT)
                                  :
ALEXION PHARMACEUTICALS, INC.;    :
LEONARD BELL; DAVID L. HALLAL;    :
VIKAS SINHA; DAVID BRENNAN;       :
DAVID J. ANDERSON; LUDWIG N.      :
HANTSON; and CARSTEN THIEL,       :
                                  :
          Defendants.             :
------------------------------- x
```

**RULING ON LEAD PLAINTIFFS' MOTION TO COMPEL**

Lead Plaintiffs Erste Asset Management GmbH and the Public Employee Retirement System of Idaho move to compel defendants Alexion Pharmaceuticals, Inc. ("Alexion") and Leonard Bell, David L. Hallal, and Vikas Sinha (the "Individual Defendants") (collectively, the "Defendants") to produce certain documents and interrogatory responses.

For the reasons set forth below, the motion to compel is being granted.

**I.  BACKGROUND**

The Lead Plaintiffs seek from the Defendants documents and information related to the plaintiffs' claims as set forth in the Amended Consolidated Class Action Complaint, ECF No. 121,

-1-

(the "Amended Complaint"). At issue in this motion are Lead Plaintiffs' Requests for Production ("RFP") No. 1 and No. 2 and Interrogatory No 5.[1]

RFP No. 1 and Interrogatory No. 5 concern an investigation by Alexion's audit committee (the "Audit Committee Investigation"). RFP No. 1 asked the Defendants to produce:

> All documents provided to the Audit and Finance Committee in connection with its "investigation into allegations that recently have been made by a former employee with respect to the Company's sales practices of Soliris® (eculizumab)" and/or its investigation concerning "whether Company personnel have engaged in sales practices that were inconsistent with Company policies and procedures and the related disclosure and other considerations raised by such practices," as discussed in Alexion's November 9, 2016 press release announcing that the Company would not be able to timely file its Form 10-Q for the third quarter ended September 30, 2016. *See* Complaint ¶ 174.

Lead Pls.' Am. First Set of Reqs. for Produc. Doc., at 15, ECF No. 205-3.

Interrogatory No. 5 asks the Defendants to "[i]dentify each and every person who was involved in the 'investigation' referenced by the Company in its January 4, 2017 press release, as described in ¶ 190 of the Complaint." Lead Pl. Erste Asset Management GMBH's Am. First Set Interogs. on Def. Alexion Pharmaceuticals, Inc., at 14, ECF No. 205-4.

---

[1] Interrogatory No. 4 was originally a subject of this motion, but it is no longer in dispute.

RFP No. 2 relates to improper payments to foreign officials in violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, et seq., that ultimately led to a U.S. Securities and Exchange Commission ("SEC") investigation and $21.5 million settlement with Alexion in 2020 (the "SEC FCPA Action"). RFP No. 2 asks the Defendants to produce:

> All documents and communications concerning any investigation of Alexion by MA USAO, DOJ, DHHS OIG, and/or SEC including, but not limited to, any documents and communications concerning any investigation leading to (i) Alexion's agreement "to pay $13 million to resolve the government's allegations" as announced in the DOJ's April 4, 2019 press release; and (ii) <u>Alexion's settlement with the SEC and payment of approximately $21.5 million in disgorgement, civil penalties, and pre-judgment interest as announced in Alexion and SEC's July 2, 2020 press releases.</u> This request specifically includes, but is not limited to:
>
> i.  all communications between or among You and MA USAO, DOJ, DHHS OIG, and/or SEC;
>
> ii. all documents produced or otherwise provided by You to MA USAO, DOJ, DHHS OIG, and/or SEC;
>
> iii. all documents (including subpoenas, CIDs, and any other requests for documents, whether formal or informal) produced or otherwise provided to You by MA USAO, DOJ, DHHS OIG, and/or SEC;
>
> iv. all transcripts of any witness interviews, depositions, or other proceedings in connection with any such investigation(s);
>
> v.  documents sufficient to identify any and all search terms proposed or agreed-upon between You and MA USAO, DOJ, DHHS OIG, and/or SEC; and

>      vi. documents sufficient to identify the
>          identities of any persons contacted,
>          interviewed, deposed, or otherwise of interest
>          in connection with any such investigation(s)
>          or proceeding(s).

Mem. L. Supp. Lead Pls.' Mot. Compel Produc. Docs. and Interrog. Resps., ("Lead Pls.' Mem.") at 15-16, ECF No. 205-1 (emphasis added). Emphasis has been added to show that clause (ii) is the portion of RFP No. 2 that is in dispute.

## I.   LEGAL STANDARD

Under the Federal Rules of Civil Procedure,

> Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the
> needs of the case, considering the importance of the
> issues at stake in the action, the amount in controversy,
> the parties' relative access to relevant information,
> the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need
> not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevance for discovery purposes is an extremely broad concept which 'has been construed . . . to encompass any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" Martino v. Nationstar Mortg. LLC, No. 17-CV-1326, 2019 WL 2238030, at *1 (D. Conn. May 23, 2019) (quoting Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 101 (S.D.N.Y. 1997) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

(1978))). "[R]elevance for the purpose of discovery is broader in scope than relevance for the purpose of the trial itself." Huseby, LLC v. Bailey, No. 3:20-CV-00167 (JBA), 2021 WL 3206776, at *6 (D. Conn. July 29, 2021) (quoting Vaigasi v. Solow Mgmt. Corp., No. 11-Civ.-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016)).

"When a party files a motion to compel, it bears the initial burden to show the relevance of the information it seeks." Id. "Once the party seeking discovery has demonstrated relevance, '[t]he objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each request is not relevant or how each question is overly broad, unduly burdensome or oppressive.'" Luck v. McMahon, No. 3:20-CV-00516 (VAB), 2021 WL 413638, at *3 (D. Conn. Feb. 5, 2021) (alteration in original) (quoting Klein v. AIG Trading Grp. Inc., 228 F.R.D. 418, 422 (D. Conn. 2005)).

**II. DISCUSSION**

    **A. Relevance--The Audit Committee Investigation**

The plaintiffs claim that the Defendants made false and misleading statements about the reasons for Alexion's financial success. The Amended Complaint sets forth twenty misstatements in this category, nineteen of which survived the motion to dismiss. The plaintiffs maintain that because the Defendants

raised the issue of the cause of the company's financial success, the "Defendants had a duty to disclose information concerning the source of its success and reasonable investors would find that Alexion's reliance on illegal tactics to drive sales would significantly alter the mix of available information about the Company." Am. Consolidated Class Action Compl. for Violation of Federal Securities Laws ("Am. Compl.") at ¶ 237, ECF No. 121. See Bos. Ret. Sys. v. Alexion Pharms., Inc., No. 3:16-CV-2127 (AWT), 2021 WL 3675180, at *11 (D. Conn. Aug. 19, 2021) ("Those statements in which the Defendants specifically put at issue the source of Alexion's revenue growth triggered a duty to disclose the whole truth.").

The Amended Complaint alleges that the "illegal sales tactics" included a series of practices set forth in subparagraphs (a) through (i) of paragraph 237 of the Amended Complaint. Pull-in sales is not listed in paragraph 237. The Defendants argue that because the primary focus of the Audit Committee Investigation was pull-in sales of Soliris, rather than any of the practices listed in paragraph 237, documents related to the Audit Committee Investigation are irrelevant to the plaintiffs' claims.

The plaintiffs also claim that Individual Defendants filed SOX certifications that were false and misleading because "the SEC filings to which these certifications were appended

contained numerous materially false and misleading statements and omissions." Am. Compl. at ¶ 317.

Although Alexion ultimately announced that the Audit Committee Investigation focused <u>primarily</u> (not exclusively) on pull-in sales of Soliris,[2] it originally characterized the investigation as one into "whether Company personnel have engaged in sales practices that were inconsistent with Company policies and procedures and the related disclosure and other considerations raised by such practices." Am. Compl. at ¶ 174 (emphasis omitted). This language was in Alexion's November 6, 2016 press release.

On December 12, 2016, in the midst of the Audit Committee Investigation, Alexion issued a press release announcing that Individual Defendant David L. Hallal had resigned as CEO and Vikas Sinha had resigned as CFO and were departing immediately.

In its January 4, 2017 press release, Alexion announced that "senior management not setting an appropriate tone at the top" had caused "a material weakness in [the company's] internal controls over financial reporting." <u>Id.</u> at ¶ 190.

On January 4, 2017, Alexion also filed its Form 10-Q for the quarter ended September 30, 2016. "In discussing the allegations of Alexion's improper sales tactics made by a former

---

[2] <u>See</u> Alexion Pharmaceuticals Files Form 10-Q for Third Quarter 2016, at 2, ECF No. 211-12 ("The Audit and Finance Committee investigation focused primarily on 'pull-in' sales of Soliris.")

employee against the Company, Defendants stated that 'The Audit Committee Investigation found that senior management applied pressure on personnel to use pull-in sales to meet targets,' and that 'certain Company personnel engaged in inappropriate business conduct to realize pull-in sales, as a result of pressure from senior management.'" Id. at ¶ 297 (emphasis omitted).

On March 6, 2017, Interim CEO David Brennan advised analysts and investors that the Board was "disappointed with the idea that tone at the top was a material weakness for the Company" and "we might have had some pressure to do some things that were not in accordance with our policies and procedures that we weren't going to do that going forward, and we wanted to create a more open, honest environment and a culture around that . . . ." Id. ¶ 197 (emphasis omitted).

The plaintiffs have alleged facts that could establish that Alexion engaged in inappropriate business conduct and that CEO Hallal and Bell, who was his predecessor as CEO during a portion of the Class Period, were personally involved and acted with scienter. Even if pull-in sales was at the core of the Audit Committee Investigation but not at the core of the plaintiffs' claims, a significant aspect of the plaintiffs' claims is that senior management was personally involved in Alexion's use of illegal sales tactics and the tone at the top set by senior

management pressured employees to use such tactics. The Audit Committee Investigation found that something similar had happened with respect to pull-in sales, i.e. that senior management had not set an appropriate tone at the top and applied pressure on company personnel to engage in inappropriate business conduct, and when originally characterized by Alexion, the scope of the investigation was not limited to pull-in sales. Consequently, the court concludes that the Audit Committee Investigation is relevant to the plaintiffs' claims.

The Audit Committee Investigation is also relevant with respect to scienter. In ruling on the motion to dismiss, the court concluded, "[t]hese allegations with respect to the tone at the top, coupled with the specific factual details as to the personal involvement of Bell and Hallal in high-pressure sales tactics and pressuring Alexion employees to engage in illegal and unethical sales practices, support an inference of scienter." Bos. Ret. Sys., 2021 WL 3675180, at *22.

### B. Relevance--SEC FCPA Action

The plaintiffs maintain that:

> [J]ust as Plaintiffs have alleged that Defendants misled investors by touting the supposed source of Alexion's continued success—its ability to identify new patients—which in fact differed significantly from the actual source of that success—its illegal and unethical sales and marketing practices, see e.g. ¶¶ 11, 297-300—the SEC FCPA Action alleged that Alexion paid foreign bribes to obtain regulatory approval and increase approved patient prescriptions and thus sales. By any measure, Alexion's

> FCPA violations involved illegal and unethical sales practices and inappropriate business conduct by Alexion employees during the Class Period (January 30, 2014 to May 26, 2017)."

Lead Pls.' Mem. at 9.

The Defendants argue that "Plaintiffs cannot simply describe all alleged misconduct as 'illegal and unethical sales practices' to render that conduct purportedly relevant to their claims. In this case, Plaintiffs' claim of securities fraud is premised on the theory that Defendants failed to disclose that Alexion's revenue was being driven by the specific improper practices described in the Bloomberg Article published in May 2017 and repeated in the Complaint." Defs.' Mem. L. Supp. Opp. Pls.' Mot. Compel ("Defs.' Mem.") at 15, ECF No. 211 (internal citations omitted). However, as discussed above, the plaintiff's theory is that the defendants made false and misleading statements about the reasons for Alexion's financial success. Those reasons include but are not limited to the specific improper practices described in the Bloomberg Article published in May 2017.

The Defendants also argue that "the FCPA allegations cannot possibly form the basis for Plaintiffs' securities fraud claim for another reason: Alexion transparently disclosed the existence of the SEC's FCPA investigation in May 2015." Id. at 15. But the plaintiffs do not claim that the FCPA allegations

-10-

are the basis for the securities fraud claim. Rather, they relate to potential evidence in support of that claim. Also, as the plaintiffs state, "discovery [with respect to the SEC FCPA Action] remains relevant regardless of whether the activity took place outside the United States, Alexion disclosed the existence of the investigation during the Class Period, or the announcement of the SEC FCPA Action resulted in a stock price decline." Reply Mem. L. Supp. Lead Pls.' Mot. Compel Produc. Docs. and Interrog. Resps. ("Lead Pls.' Reply") at 6, ECF No. 215 (internal citations omitted).

### C. **Proportionality**

The Defendants argue that the additional discovery sought by the plaintiffs is of "marginal, if any, relevance to the claims in the Complaint and would impose a substantial burden on Defendants." Defs.' Mem. at 12. The Defendants note that they "have already agreed to broadly produce documents relating to any of the alleged unethical and illegal practices identified in the Complaint or pressure by senior management to engage in those practices, including Board materials, emails to be collected from key custodians—including Defendants Bell and Hallal—and other centrally maintained files," id. at 11-12; they emphasize the number of custodians and documents that would have to be searched.

The plaintiffs represent that they "have offered to limit the scope of production by applying search terms and custodians to RFP Nos. 1 and 2 (as the parties agreed to do with most of Plaintiffs' other RFPs), thereby reducing the burden and expense on Defendants." Lead Pls.' Mem. at 11. Thus, the plaintiffs are "seeking to have Defendants include these documents in the search terms and custodians that the parties are actively negotiating." Lead Pls.' Reply at 2. The plaintiffs note, with respect to the documents related to the SEC FCPA Action, that the Defendants have already collected, reviewed, and produced these same documents to the SEC.

After considering the pertinent factors, the court concludes that the additional discovery being requested is proportional to the needs of the case and is not unduly burdensome on the Defendants. As the plaintiffs point out, the amount in controversy here is very large. See Lead Pls.' Mem. at 11. ("[T]he amount in controversy is in the billions of dollars (as measured by market capitalization loss . . . ."). The issues in this case "relate to protecting investors from securities fraud in the context of a class action consisting of thousands of class members," id., so they are significant. Also, the relevant information is in the sole possession of the defendants.

The court has not been persuaded by the Defendants' argument that only documents related to the factual allegations in the Amended Complaint and the contents of the May 2017 Bloomberg article are relevant. Rather, for the reasons discussed above, the court has concluded that documents related to the Audit Committee Investigation and the SEC FCPA Action are relevant, and because of the reasons why the documents are relevant, they have the potential for being important in resolving the issues in this case.

Finally, the court concludes that the burden of the expense of the proposed discovery does not outweigh its likely benefit, particularly in light of the plaintiffs' offer to limit to the scope of production by applying search terms and custodians.[3]

**III. CONCLUSION**

For the reasons set forth above, Lead Plaintiffs' Motion to Compel the Production of Documents and Interrogatory Responses (ECF No. 205) is hereby GRANTED.

It is so ordered.

Dated this 31st day of March 2021, at Hartford, Connecticut.

---

[3] In the event the parties are unable to reach agreement with respect to search terms and/or custodians, they should contact chambers as opposed to engaging in motion practice.

-14-

```
                          /s/ AWT
                     Alvin W. Thompson
                United States District Judge
```