UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, and VIKAS SINHA,<br><br>     Defendants. | No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson<br><br>**Oral Argument Requested** |

**DEFENDANTS' SURREPLY IN OPPOSITION TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**WIGGIN & DANA**
265 Church Street
P.O. Box 1832
New Haven, CT 06510
Tel: (860) 297-3700

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000

2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7327

*Attorneys for Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, and Vikas Sinha*

Defendants submit this surreply in response to Lead Plaintiffs' Reply Memorandum of Law in Further Support of Lead Plaintiffs' Motion for Class Certification, ECF No. 248 ("Reply") to address two discrete points raised for the first time in the Reply: (i) plaintiffs' contention that, in an efficient market, the publication of an alleged corrective disclosure can move the stock's price more than a day later, and thus that the conceded absence of a statistically significant price impact on the day of the disclosure does not show a lack of price impact, Reply at 4–7; and (ii) plaintiffs' argument that the absence of *any* statistically significant price movement does not demonstrate the absence of price impact, an argument that relies in material part on mischaracterizing the deposition testimony of Dr. David Smith, defendants' price impact expert, Reply at 8–9.  Defendants do not address in this surreply the other arguments in the Reply (including the inappropriate expert submissions plaintiffs filed with the Reply), which defendants have already addressed in their Opposition to Lead Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Co-Class Counsel, ECF No. 237 ("Opp.").

I.      **Plaintiffs' Theory of Delayed Price Impact Is Incompatible with Their Position that Alexion Stock Traded on an Efficient Market.**

Plaintiffs' motion for class certification rests on their contention that Alexion common stock traded on an efficient market.  As described in defendants' opposition, plaintiffs seek to satisfy the predominance requirement of Fed. R. Civ. P. 23(b)(3) by invoking the *Basic* presumption of reliance on the stock's market price.  Opp. 12–13, citing *Basic Inc*. v. *Levinson*, 485 U.S. 224 (1988).  The "fraud on the market" theory that *Basic* recognized, however, applies only if plaintiffs establish that the relevant market (here, the market for Alexion common stock) is efficient.  Opp. at 13, 16.  As the Supreme Court explained in *Halliburton Co*. v. *Erica P. John Fund, Inc*., 573 U.S. 258 (2014) ("*Halliburton II*"), a plaintiff seeking to invoke the *Basic*

presumption must establish, among other things, "that the stock traded in an efficient market." *Id.* at 268. *See also Erica P. John Fund, Inc.* v. *Halliburton Co.*, 309 F.R.D. 251, 257 (N.D. Tex. 2015) ("*Halliburton III*") (noting that the *Basic* presumption allows the plaintiff to satisfy the predominance requirement by establishing, among other things, "market efficiency"). Recognizing this burden, plaintiffs contend that Alexion common stock trades in an efficient market, ECF 198-1 at 19–27, and they have proffered a report from an expert opining that "the market for Alexion's Common Stock was efficient during the Class Period." ECF No.198-3 ("Coffman Rep't") at 4–5.

Plaintiffs make the extraordinary claim that, although the market for Alexion stock was efficient, the impact of alleged corrective disclosures was nevertheless delayed for a full day or more *after* the disclosure. Reply at 4–6; *see* Opp. at 14–17 (discussing absence of statistically significant same-day price impact following alleged corrective disclosures on November 4, 2016; November 9, 2016; March 6, 2017; and May 8, 2017).[1] To take just one example, plaintiffs allege that one of the purported corrective disclosures—Alexion's announcement that its Audit Committee was investigating a former employee's claims about sales practices—occurred after the close of trading on the afternoon of November 9, 2016. ECF No. 121 ("Compl.") ¶ 174; *see* Opp. at 14. The analysis performed by plaintiffs' expert shows that there was no statistically significant price impact for a full trading day (November 10) after that disclosure. Opp. at 14. Indeed, plaintiffs' expert concedes that there was no such statistically significant price impact on that day. ECF No. 248-4 ("Coffman Rebuttal") ¶ 58. Instead, plaintiffs contend that a decline in Alexion's stock price the *next day*, November 11—more than a full day after the alleged

---

[1] In the interest of simplicity, defendants use the same convention as in their opening brief, *see* Opp. at 14 n.2, in referring to "same-day" price impact as the impact on the same calendar day as a disclosure made before the close of the market and the impact on the day following disclosures made after the market close.

2

disclosure—can be attributed to that disclosure. Reply at 8. Thus, according to plaintiffs, while Alexion's stock traded in an efficient market, that market took more than a full trading day to react to the disclosure. *See* Opp. 14–15 (discussing similar absence of same-day price impact following alleged corrective disclosures on November 4, 2016; March 6, 2017; and May 8, 2017); *id*. at 17 (same regarding May 25 and 26, 2017); ECF 237-14 ("Smith Rep't") at 19–45 (same).

Efficient markets do not work that way. *See* Opp. at 15–17; Smith Rep't. ¶¶ 20–28. Rather, in an efficient market, as plaintiffs' expert acknowledges, "*all publicly available information* is reflected in a security's *current* market price." Coffman Rep't ¶ 18 (emphasis added); *see also Erica P. John Fund, Inc*. v. *Halliburton Co*., 563 U.S. 804, 811 (2011) ("the market price of shares traded on well-developed markets reflects all publicly available information"). Thus, courts have rejected the argument plaintiffs proffer here, Reply at 4–6, that in determining price impact in an efficient market, absent unusual circumstances, it is appropriate to consider changes in the stock price beyond the same day as the relevant disclosure (*i.e*., to use a "multi-day event window"). As courts have reasoned, "the use of a two-day window is inappropriate to measure price impact in an efficient market" because "[a]n efficient market is said to digest or impound news into the stock price in a matter of minutes." *Halliburton III*, 309 F.R.D. at 280; *see also In re Intuitive Surgical Sec. Litig.*, No. 13-cv-01920, 2016 WL 7425926, at *14 (N.D. Cal. Dec. 22, 2016) (concluding that use of "two-day window to calculate price impact here" was "inappropriate").

Plaintiffs cite no cases finding price impact in an efficient market in circumstances such as those here, where the only statistically significant price impact occurred more than a full trading day after the disclosure. While they cite a handful of cases that they contend support the

3

use of a multi-day event window, those cases are easily distinguished. Some of the cases on which plaintiffs rely involved unusual circumstances not present here, such as a "complex" disclosure that was made late in the trading day and that "required analysts and investors to conduct substantial reevaluation of the [c]ompany." *Monroe Cnty. Emps.' Ret. Sys.* v. *S. Co.*, 332 F.R.D. 370, 386, 392 (N.D. Ga. 2019) (also noting that the majority of analyst reports covering the disclosure were released after the close of the trading day); *United States* v. *Hatfield*, No. 06-CR-0550, 2014 WL 7271616 (E.D.N.Y. Dec. 18, 2014) (taking account of stock price movement on the day following an alleged corrective disclosure because the disclosure "occurred late in the day," and refusing to consider trading on the second day after the announcement because doing so "would be inconsistent with the purpose of the event study and the efficient market hypothesis"). Other cases on which plaintiffs rely involved additional information being disclosed on the second day of the two-day window—again, a circumstance not present here. *Pelletier* v. *Endo Int'l PLC*, 338 F.R.D. 446, 486 (E.D. Pa. 2021) (considering two-day window in assessing price impact because additional clarifying information was disclosed on the second day); *Carpenters Pension Tr. Fund of St. Louis* v. *Barclays PLC*, 310 F.R.D 69, 93–96 (S.D.N.Y. 2015) (finding efficiency based in part on stock price decline the day after an alleged corrective disclosure, in reaction to post-close and second-day statements suggesting possible "collateral consequences" arising from disclosure, and where defendants offered no expert testimony addressing price impact; *see* Decl. of John D. Finnerty, Ph.D. in Supp. Lead Pls.' Mot. Class Cert., *Carpenters*, No. 12-cv-05329 (S.D.N.Y. Apr. 20, 2015), ECF 140 ¶¶ 56–59 (plaintiffs' expert report describing later disclosures)). No such circumstances are present here.[2]

---

[2]  The remaining cases plaintiffs cite are wholly off-point, either because the opposing party did

Nor do the non-legal sources plaintiffs cite support their theory of delayed price impact in an efficient market. Their principal source is an unpublished, non-peer reviewed article posted nearly 20 years ago on the website of NERA, an economic consulting firm. Reply at 6 (citing *Determination of the Appropriate Event Window Length in Individual Stock Event Studies*, NERA, Nov. 4, 2003). As Dr. Smith explained during his deposition, that article cannot be relied upon to support plaintiffs' delayed price impact theory. The article does not cite or rely on any peer-reviewed academic papers that support its methods; it is based on limited data from a sample of companies that had a securities fraud lawsuit filed against them in six identified months; and it did not "examine whether those stocks are traded in an efficient market." ECF No. 248-3 ("Smith Tr.") 56:20–24; *see also* Smith Rep't. at ¶ 25 n.52.

The remaining academic sources plaintiffs cite do not even purport to show that in an efficient market the price impact of new, value-relevant information can be delayed by more than a day. Two of those sources indicate only that a multi-day window may be appropriate in

---

not oppose the motion or offered no expert evidence on the issue; because a multi-day event window was not at issue; or because other circumstances existed that are not even alleged here. *See Katz* v. *Image Innovations Holdings, Inc.*, No. 06-cv-3707, 2010 WL 2926196, at *1 (S.D.N.Y. July 22, 2010) (granting class certification motion as unopposed, and noting without analysis that plaintiffs relied on price decline the day following the alleged corrective disclosure); *Carpenters*, 310 F.R.D. at 93–96 (finding efficiency where defendants offered no expert evidence on price impact); *In re Initial Public Offering Sec. Litig.*, 260 F.R.D. 81, 101–02 (S.D.N.Y. 2009) (no issue of multi-day event window; approving the plaintiffs' expert's analysis of "share price movements on a daily basis," and rejected defendants' argument that it should instead focus on share price movements within a single day); *Dougherty* v. *Esperion Therapeutics*, No. 16-10089, 2020 WL 6793326, at *5 (E.D. Mich. Nov. 19, 2020) (concluding that plaintiffs sufficiently established efficiency by showing same-day statistically significant price impact on "approximately twenty-six percent of news days" as well as second-day impact in some instances). Similarly inapposite is *Fogarazzo* v. *Lehman Bros., Inc.*, 232 F.R.D. 176, 189–90 (S.D.N.Y. 2005), where the court considered only the distinct question, not raised here, whether the plaintiffs' expert's analysis was required to take account of confounding news events. The same court emphasized in a subsequent ruling in that case that the use of a multi-day event window is appropriate only in unusual circumstances that do not exist here, such as "a report being issued late in the day, a mis-classification of the date, or simply momentum trading by investors," or where "the information is released to a select group of investors prior to being released to the public." *Fogarazzo* v. *Lehman Bros., Inc.*, 263 F.R.D. 90, 104 (S.D.N.Y. 2009).

5

circumstances not present here, such as where the time of the alleged disclosure is uncertain. Mark L. Mitchell & Jeffry M. Netter, *The Role of Financial Economics in Securities Fraud Cases: Application at the Securities & Exchange Commission*, 9 Bus. Law 545, 558–59 (1994) (explaining that defining the length of the event window depends on the particular circumstances, including when all of the relevant information becomes available to the market); A. Craig MacKinlay, *Event Studies in Economics & Finance*, 35 J. Econ. Literature, no. 1, March 1997, at 13, 14–15 (discussing the need to expand the event window where there is uncertainty as to the timing of a news announcement).  Their remaining source, David Hillier, Mark Grinblatt & Sheridan Titman, *Financial Markets & Corporate Strategy* 634, 637 (2d ed. 2002), discusses *inefficiencies* in the incorporation of new information by markets.  None of these sources rebuts defendants' showing of a lack of price impact where, as plaintiffs contend here, the relevant stock traded in an efficient market.

II.     **The Absence of Any Statistically Significant Price Movement Following an Alleged Corrective Disclosure Rebuts Price Impact Here.**

Even if plaintiffs establish that the market was efficient, the presumption of reliance under *Basic* may be rebutted by "evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock." *Halliburton II*, 573 U.S. at 279–80. Indeed, "[a]ny showing that severs the link" between the alleged misrepresentation or corrective disclosure and the price paid or received by the plaintiff "will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248; *see* Opp. at 13–14.  As shown in defendants' opposition, the evidence here—including the analysis done by plaintiffs' expert showing no statistically significant price movement—demonstrates that there was no price impact here for four of the seven alleged corrective disclosures. Opp. at 13–17.

6

Plaintiffs argue that "even if there was no statistically significant movement following a corrective disclosure, 'it does not prove the **absence** of price impact.'" Reply at 8 (quoting *Pirnik* v. *Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 46 (S.D.N.Y. 2018)).  But the cases they rely on do not support that conclusion.  In *Pirnik*, the court reasoned that statistical significance at the 92.12% confidence level "is obviously less comfort than a result that is statistically significant at a confidence level of 95%," but does not conclusively disprove price impact.  *Id.* at 46.  But other courts have made clear that "courts generally require a party's expert to testify based on an event study that meets the 95% confidence standard."  *Halliburton III*, 309 F.R.D. at 262.  And, in any event, plaintiffs' expert here has not opined that price movement at a level below the standard 95% level is evidence of price impact.  Likewise, in *Rooney* v. *EZCOPR, Inc.*, 330 F.R.D. 439, 450 (W.D. Tex. 2019), the court held that defendants had not rebutted price impact where they relied solely on absence of a showing of price impact at the 95% confidence level and did "not point[] to any evidence that the alleged misrepresentations did not affect the stock price."  *Id*. at 450.  Here, by contrast, defendants have presented ample evidence that the alleged corrective disclosures at issue did not impact Alexion's stock price on the disclosure dates.  *See* Smith Rep't. ¶¶ 29–77.[3]

Finally, plaintiffs resort to flagrantly mischaracterizing Dr. Smith's deposition testimony to support their position.  They assert that Dr. Smith "conceded that 'the absence of statistically significant price movement' does not necessarily mean no price impact."  Reply at 9 (citing Smith Tr. 44:8–23; 148:21–149:2).  That assertion is grossly misleading.  Dr. Smith explained

---

[3]   *In re Petrobras Securities*, 862 F.3d 250 (2d Cir. 2017), cited with a "cf." signal in Reply at 8–9, did not address price impact at all.  Instead, it held only that plaintiffs could prove market efficiency in reliance on indirect evidence, such as the number of outstanding shares and high trading volume, without a reliable event study directly demonstrating efficiency.  That issue is not presented here.  *Petrobras*, 862 F.3d at 278–78.

7

that the "lack of a statistically significant stock price reaction following a disclosure is really, really good evidence that it . . . had no price impact." Smith Tr. 149:9–12. He added that, faced with such a lack of statistically significant price impact, he "would also examine analyst reports, press releases, filings, news articles around that disclosure to make sure there's no information that would confound bad information and cancel it out." Smith Tr. 149:14–18; *see also id.* at 44:15–23. But that additional investigation is precisely what Dr. Smith did in reaching the conclusion that certain of the alleged corrective disclosures had no price impact. *See* Smith Rep.'t ¶¶ 29–77. Defendants have accordingly demonstrated a lack of price impact from four of the alleged corrective disclosures at issue.

## CONCLUSION

For the foregoing reasons, and those set forth in defendant's opposition brief, plaintiffs' motion for class certification should be denied.

Dated: July 5, 2022

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Jane B. O'Brien*
Daniel J. Kramer (admitted *pro hac vice*)
Audra J. Soloway (admitted *pro hac vice*)
Jonathan Hurwitz (admitted *pro hac vice*)
Tamar Holoshitz (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (212) 373-3000
dkramer@paulweiss.com
asoloway@paulweiss.com
jhurwitz@paulweiss.com
tholoshitz@paulweiss.com

Jane B. O'Brien (admitted *pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Tel:  (202) 223-7327
jobrien@paulweiss.com


WIGGIN & DANA
Robyn E. Gallagher (CT 29596)
David A. Ring (CT 14362)
265 Church Street
P.O. Box 1832
New Haven, CT 06510
Tel:  (860) 297-3700
rgallagher@wiggin.com
dring@wiggin.com

*Attorneys for Alexion Pharmaceuticals, Inc., Leonard Bell, David L. Hallal, and Vikas Sinha*

9