## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | Civ. No. 3:16-cv-2127 (AWT) |
| | Hon. Alvin W. Thompson |
| Plaintiff, | |
| vs. | |
| ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA, DAVID BRENNAN, DAVID J. ANDERSON, LUDWIG N. HANTSON, and CARSTEN THIEL, | June 5, 2023 |
| Defendants. | **Oral Argument Requested** |

## MEMORANDUM OF LAW IN SUPPORT OF
## LEAD PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE
## UNREDACTED VERSIONS OF INDEPENDENT AUDITOR'S WORK PAPERS

**TABLE OF CONTENTS**

I.   INTRODUCTION AND BACKGROUND ........................................................................ 1

II.  ARGUMENT ............................................................................................................ 4

    A.   Legal Standards.................................................................................................. 4

    B.   The PwC Documents Were Not Created Because of the Prospect of
         Litigation.............................................................................................................. 6

    C.   Plaintiffs Have a Substantial Need for PwC's Work Papers ................................ 11

    D.   Defendants' Work-Product Claims Have Been Waived....................................... 14

III. CONCLUSION........................................................................................................ 21

# TABLE OF AUTHORITIES

**C**ASES

*American Oversight v. United States Department of Justice*,
   45 F.4th 579 (2d Cir. 2022) ............................................................................ 14

*Bank of America, N.A. v. Terra Nova Insurance Co.*,
   212 F.R.D. 166 (S.D.N.Y. 2002) ...................................................................... 15

*Bennett v. Metro-North Railroad Co.*,
   2019 WL 6894093 (D. Conn. Dec. 18, 2019).................................................... 10

*Clark v. Quiros*,
   2022 WL 3716355 (D. Conn. Aug. 29, 2022) ......................................... 4, 14, 19

*Cohen v. City of New York*,
   255 F.R.D. 110 (S.D.N.Y. 2008) ...................................................................... 13

*Ellis v. Grant Thornton LLP*,
   530 F.3d 280 (4th Cir. 2008) ............................................................................ 15

*Federal Deposit Insurance Corp. v. Wachovia Insurance Services Inc.*,
   241 F.R.D. 104 (D. Conn. 2007) ................................................................... 4, 12

*First Horizon Nat'l Corp. v. Hous. Cas. Co.*,
   2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016)................................................... 16

*Gould Inc. v. Mitsui Mining & Smelting Co.*,
   825 F.2d 676 (2d Cir. 1987) ............................................................................. 12

*Grant Thornton, LLP v. Federal Deposit Insurance Co.*,
   535 F. Supp. 2d 676 (S.D. W. Va. 2007).......................................................... 15

*Gruss v. Zwirn*,
   2013 WL 3481350 (S.D.N.Y. July 10, 2013) ..................................................... 20

*Gruss v. Zwirn*,
   296 F.R.D. 224 (S.D.N.Y. 2013) ...................................................................... 22

*Handsome, Inc. v. Town of Monroe*,
   2014 WL 348196 (D. Conn. Jan. 31, 2014)....................................................... 12

*Harding v. Dana Transport, Inc.*,
   914 F. Supp. 1084 (D.N.J. 1996) ...................................................................... 20

*Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Casualty Co.*,
   2015 WL 164069 (D. Conn. Jan. 13, 2015)....................................................... 22

*Imperati v. Semple*,
   2020 WL 6441007 (D. Conn Nov. 3, 2020) ......................................................... 5

*In re Aggrenox Antitrust Litigation*,
   2017 WL 5885664 (D. Conn. Nov. 29, 2017) ............................................... 11, 13

*In re Diasonics Sec. Litig.*,
   1986 WL 53402 (N.D. Cal. June 15, 1986) ....................................................... 16

*In re Grand Jury Subpoena Dated July 6, 2005*,
510 F.3d. 180 (2d Cir. 2005) ............................................................................................ 11

*In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*,
318 F.3d 379 (2d Cir. 2003) ........................................................................................... 4, 5

*In re King Pharms., Inc. Sec. Litig.*,
2005 U.S. Dist. LEXIS 49983 (E.D. Tenn. Sept. 21, 2005) ........................................... 15

*In re MicroStrategy, Inc. Securities Litigation*,
115 F. Supp. 2d 620 (E.D. Va. 2000) ............................................................................... 6

*In re Qwest Communications International, Inc. Securities Litigation*,
2005 U.S. Dist. LEXIS 19129 (D. Colo. Aug. 15, 2005) ............................................... 15

*In re San Juan Dupont Plaza Hotel Fire Litigation*,
859 F.2d 1007 (1st Cir. 1988) ......................................................................................... 12

*In re Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993) ................................................................................................. 14

*Koumoulis v. Independent Financial Marketing Group, Inc.*,
29 F. Supp. 3d 142 (E.D.N.Y. 2014) ................................................................................ 5

*Matter of Grand Jury Subpoenas Dated October 22, 1991, & November 1, 1991*,
959 F.2d 1158 (2d Cir. 1992) ............................................................................................ 5

*Medinol, Ltd. v. Bos. Sci. Corp.*,
214 F.R.D. 113 (S.D.N.Y. 2002) ................................................................................ 15, 18

*New York Times v. United States Dep't of Just.*,
939 F.3d 479 (2d Cir. 2019) ............................................................................................ 14

*Pfizer Inc. v. Regor Therapeutics Inc.*,
2023 WL 1766419 (D. Conn. Feb. 3, 2023) .................................................................... 15

*Philadelphia Indemnity Insurance Co. v. 1961 Boston Post Rd. LLC*,
2021 WL 1783119 (D. Conn. May 4, 2021) ...................................................................... 5

*Pilkington North America, Inc. v. Mitsui Sumitomo Insurance Co. of America*,
341 F.R.D. 10 (S.D.N.Y. 2022) ....................................................................................... 21

*Police & Fire Retirement System of Detroit v. Musk*,
2023 WL 1525022 (Del. Ch. Jan. 31, 2023) ................................................................... 18

*QBE Insurance Corp. v. Interstate Fire & Safety Equipment Co.*,
2011 WL 692982 (D. Conn. Feb. 18, 2011) .................................................................... 10

*Reich v. Hercules, Inc.*,
857 F. Supp. 367 (D.N.J. 1994) ....................................................................................... 12

*U.S. v. Hatfield*,
Civ. No. 06-CR-0550 (JS), 2009 WL 3806300 (E.D.N.Y. Nov. 13, 2009) ................... 17

*United States v. Adlman* (*Adlman II*),
134 F.3d 1194 (2d Cir. 1998) ............................................................................................ 5

*United States v. Arthur Young & Co.*,
    465 U.S. 805 (1984)............................................................................ 3, 17

*United States v. El Paso Co.*,
    682 F.2d 530 (5th Cir. 1982) ................................................................ 4

*United States v. Hatfield*,
    2010 WL 183522 (E.D.N.Y. Jan. 8, 2010) ............................... 3, 17, 18

*United States v. Montero-Camargo*,
    208 F.3d 1122 (9th Cir. 2000) ............................................................ 17

*United States v. Nobles*,
    422 U.S. 225 (1975)............................................................................. 6

*United States v. Oakar*,
    111 F.3d 146 (D.C. Cir. 1997) ........................................................... 17

*United States v. Petit*,
    438 F. Supp. 3d 212 (S.D.N.Y. 2020) ............................................... 11

*United States v. Textron Inc.*,
    577 F.3d 21 (1st Cir. 2009)................................................................. 10

*Warren v. Harvey*,
    472 F. Supp. 1061 (D. Conn. 1979) ................................................... 17

*Weber v. Paduano*,
    2003 WL 161340 (S.D.N.Y. Jan. 22, 2003) ........................................ 6

*Weil Ceramics & Glass, Inc. v. Work*,
    110 F.R.D. 500 (E.D.N.Y. 1986)......................................................... 4

*Westinghouse Electric Corp. v. Republic of the Philippines*,
    951 F.2d 1414 (3d Cir. 1991) ...................................................... 19, 20

**OTHER AUTHORITIES**

Code of Professional Conduct § 0.300.050.01 (AICPA 2014).................... 16

**RULES**

Fed. R. Civ. P. 26(b)(3)................................................................................. 5

Fed. R. Civ. P. 26(b)(3)(A)(ii) ............................................................. 11, 12

**TREATISES**

6 *Moore's Federal Practice – Civil* (Mathew Bender 2023)...................... 10

**REGULATIONS**

Addressing the Risk of Fraud,
    Exchange Act Release No. 55876, 2007 WL 2031580 (S.E.C. June 7, 2007) ........................ 19

Public Company Accounting Oversight Board,
    Exchange Act Release No. 53427, 2006 WL 159841 (S.E.C. Mar. 7, 2006).......................... 16

Revision of the Commission's Auditor Independence Requirements,
    Exchange Act Release No. 1911, 2000 WL 1726933 (S.E.C. Nov. 21, 2000) ........................ 16

Lead Plaintiffs Erste Asset Management GmbH and the Public Employee Retirement System of Idaho (together, "Plaintiffs"), by their counsel, respectfully submit this memorandum of law in support of their motion to compel Defendants Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company"), Leonard Bell, David L. Hallal ("Hallal"), and Vikas Sinha ("Sinha") (collectively, "Defendants") to produce the complete, *unredacted* audit work papers of Alexion's external, independent auditor, PricewaterhouseCoopers LLC ("PwC").

## I.       INTRODUCTION AND BACKGROUND

For nearly seven months, Plaintiffs have diligently sought the highly relevant work papers of PwC, Alexion's independent auditor.  Defendants are determined to keep them concealed. Plaintiffs first sought materials related to Defendants' admitted material weakness in internal controls regarding "Tone at the Top" with their first set of document requests served in September 2021.  Defendants initially took the untenable position that this material would not be produced because it was not relevant and of minimal benefit to Plaintiffs' claims.  This forced Plaintiffs to move this Court on January 14, 2022, for an order requiring that documents related to "Tone at the Top" be produced, including materials created in connection with Alexion's Audit Committee's investigation into a fraudulent pull-in scheme (an allegation made by ███████████

████████████████████████████████████████████████████████████████

██████████  ECF No. 205.  This Court unequivocally agreed with Plaintiffs, ruling that the Audit Committee's investigation was relevant to Plaintiffs' claims.  ECF No. 229.

However, instead of ensuring that Plaintiffs received all relevant materials consistent with the Court's prior ruling, Defendants are now employing a new tactic to prevent Plaintiffs from receiving crucial evidence on this subject:  asserting broad work-product protection over PwC's work papers.

As background, PwC is a firm of certified public accountants that served as Alexion's independent auditor since at least 2008—years before the events at issue in this case. In October 2016, as usual, Alexion had again engaged PwC to audit its year-end 2016 financial statements. As with any independent auditor of any public corporation, PwC agreed (and was required) to design its testing to detect fraud. Likewise, consistent with PwC's engagement letter, Alexion agreed (and was required) to promptly report any potential fraud to PwC.



Hence, although PwC also investigated the issue of pull-ins, PwC did so in the ordinary course of its duties as the external, independent auditor retained by Alexion to audit the Company's financial statements. As an independent auditor of a publicly-traded company, PwC had well-defined role that courts and regulators acknowledge requires independence from the public company whose finances are being audited. Indeed, the Supreme Court has acknowledged that an auditor "assumes a *public* responsibility transcending any employment relationship with the client.

The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to [the] investing public." *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984); *see also United States v. Hatfield*, 2010 WL 183522, at *3 (E.D.N.Y. Jan. 8, 2010) (same).

On October 20, 2022, Plaintiffs issued a subpoena to PwC seeking documents related to PwC's work auditing Alexion's 2016 financial statements. On November 22, 2022, following several meet-and-confers with PwC's counsel, PwC agreed to produce (subject to any work-product claims by Alexion) non-privileged work papers created during the third-quarter and year-end 2016 accounting periods. Additionally, PwC expressly agreed to produce work papers related to Alexion's conclusion that it had a material weakness in internal controls over financial reporting with respect to "Tone at the Top."

Since that time, PwC has made two document productions on March 31, 2023 and May 10, 2023. However, both productions contain a significant number of redacted materials based on work-product claims interposed by Defendants. Defendants' redactions of PwC's work papers— which Plaintiffs contend are wholly unsupported—are the subject of this motion.

Consistent with this Court's Local Rules, on April 26, 2023, counsel for Plaintiffs met and conferred by telephone with counsel for Defendants about their work-product claims. Plaintiffs explained that the parties would be at impasse if Defendants refused to produce *all* of PwC's work papers without redactions. Defendants have refused, as evidenced by the significant number of work product claims referenced in their May 8, 2023 privilege log. All told, 82 PwC work papers

were either redacted or withheld completely from discovery based on Alexion's specious work-product claims.[1]

As discussed below, Defendants' work-product claims are entirely unsupported. ***First***, Defendants cannot meet their burden of showing that PwC's work papers were created in anticipation of litigation. *See, e.g.*, *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y. 1986) (work-product protection "does not apply to '[m]aterials assembled . . . ***pursuant to public requirements unrelated to litigation***'" (first alteration in original) (emphasis added) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982))). ***Second***, even if Defendants could meet this burden, Plaintiffs have a substantial need for PwC's materials because they cannot be replicated elsewhere. ***Finally***, any work-product claim to this information was waived when Alexion voluntarily disclosed it to the Company's independent auditor, PwC. Accordingly, Plaintiffs respectfully submit that this motion should be granted in its entirety.

## II.    ARGUMENT

### A.    Legal Standards

The party invoking the work-product doctrine bears the "heavy" burden "of establishing its applicability to the case at hand." *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003). In order for work-product protection to attach, three conditions must be met: the material (1) "must be a document or tangible thing," (2) "must have been prepared in anticipation of litigation," and (3) "must have been prepared by or for a party or its representative." *Fed. Deposit Ins. Corp. v. Wachovia Ins. Servs. Inc.*, 241 F.R.D. 104, 106 (D. Conn. 2007); *Clark v. Quiros*, 2022 WL 3716355, at *5 (D. Conn. Aug. 29, 2022) (same). In

---

[1]    This number increased to 83 last week when Defendants clawed back yet another document from PwC's production.

the Second Circuit, the "in anticipation of litigation" element is satisfied only when the documents in question were "prepared or obtained *because of* the prospect of litigation." *United States v. Adlman* (*Adlman II*), 134 F.3d 1194, 1202 (2d Cir. 1998); *Phila. Indem. Ins. Co. v. 1961 Boston Post Rd. LLC*, 2021 WL 1783119, at *3 (D. Conn. May 4, 2021) (same).

Moreover, courts agree that "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" cannot be deemed to have been created "in anticipation of litigation." *Adlman II*, 134 F.3d at 1202; *see also* Fed. R. Civ. P. 26(b)(3) advisory committee's note to 1970 amendment ("Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."). In other words, "[e]ven if . . . documents might . . . help in preparation for litigation, they do not qualify for [work-product] protection because it could not fairly be said that they were created 'because of' actual or impending litigation." *Adlman II*, 134 F.3d at 1202; *see, e.g., Imperati v. Semple*, 2020 WL 6441007, at *13 (D. Conn Nov. 3, 2020) (quoting *Adlman II*).[2] This includes any "documents . . . that were prepared by a third party in the ordinary course of business." *In re Grand Jury*, 318 F.3d at 385.

Even when it applies, the work-product privilege is qualified and its protections may be overcome upon a showing by the party seeking disclosure that it "has a 'substantial need' for the materials for preparation of its case and 'is unable without undue hardship to obtain the substantial equivalent of the materials by other means.'" *Matter of Grand Jury Subpoenas Dated Oct. 22, 1991, & Nov. 1, 1991*, 959 F.2d 1158, 1166 (2d Cir. 1992) (quoting Fed. R. Civ. P. 26(b)(3)); *see*

---

[2] "[S]imply declaring that something is prepared in 'anticipation of litigation' does not necessarily make it so." *Koumoulis v. Ind. Fin. Mktg. Grp, Inc.*, 29 F. Supp. 3d 142, 150 (E.D.N.Y. 2014).

*also Weber v. Paduano*, 2003 WL 161340, at *3 (S.D.N.Y. Jan. 22, 2003) ("[T]he work product doctrine does not constitute a true privilege, as it affords only qualified protection to the materials within its scope, allowing discovery of the documents if the party seeking production can establish substantial need and undue hardship."). And, "[l]ike other qualified privileges, it may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975).

### B.     The PwC Documents Were Not Created Because of the Prospect of Litigation

PwC was not *retained* by Alexion "because of" actual or threatened litigation concerning the pull-in allegations or other related malfeasance. Instead, PwC was merely doing what it was already obligated to do as the Company's independent auditor: ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████        The foregoing tasks had everything to do with ensuring Alexion's compliance with SEC standards and nothing whatsoever to do with litigation. *See, e.g.*, *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 650 n.60 (E.D. Va. 2000) ("[SEC] regulations stipulate that . . . financial reports must be audited by an independent certified public accountant in accordance with generally accepted auditing standards. By examining the

corporation's books and records, the independent auditor determines whether the financial reports of the corporation have been prepared in accordance with generally accepted accounting principles.") (alterations in original).

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

Significantly, these allegations have been fully corroborated by internal documents produced during discovery in this case. For example, ████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

Additionally, other documents produced by PwC make clear that ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████



In view of the foregoing, Defendants cannot credibly claim that 83 redacted or withheld work papers—documents that would have been assembled by any independent auditor in the ordinary course of a similar audit of a publicly-traded company—were created "because of"

---

potential or existing litigation. *See Bennett v. Metro-N. R.R. Co.*, 2019 WL 6894093, at *1-2 (D. Conn. Dec. 18, 2019) (finding burden to show "documents were prepared 'because of' anticipated litigation" not met when documents in question were created in ordinary course of business and did not discuss litigation strategy or possible litigation); *QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co.*, 2011 WL 692982, at *3 (D. Conn. Feb. 18, 2011) (finding adjustor's claim notes "written in the normal course of the insurer's business" not work product); *see also United States v. Textron Inc.*, 577 F.3d 21, 31 (1st Cir. 2009) ("work papers prepared to support financial filings and gain auditor approval" deemed discoverable because "the work product privilege is aimed at protecting work done for litigation, not in preparing financial statements"); 6 *Moore's Federal Practice – Civil* § 26.70(3)I(ii) (Mathew Bender 2023) ("If the party routinely causes reports to be prepared under similar circumstances without regard to whether subsequent litigation occurs, work product protection does not apply.").

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

In sum, PwC's auditing work was not undertaken "because of" the pull-in allegations or due to the prospect that litigation may later result. Rather, PwC performed its work as part of its "normal" and pre-existing audit responsibilities. Because Defendants cannot meet their "heavy" burden to show that PwC's work papers were created in anticipation of litigation, their claim to work-product protection over PwC's work papers fails.

### C.    Plaintiffs Have a Substantial Need for PwC's Work Papers

Even if Defendants could somehow meet their burden to show that PwC's work papers were created "because of" existing or potential litigation (they cannot for all of the reasons set forth above), Plaintiffs have a "substantial need" for the materials and cannot obtain "substantial[ly] equivalent" information absent "undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii) ("[Work-product] materials may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.").

This is the standard applicable to "fact work product," such as the results of a factual investigation, *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F3d. 180, 183 (2d Cir. 2005), as opposed to "core work product" that reveals an attorney's mental process or legal strategy, *see In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *6 (D. Conn. Nov. 29, 2017); *Vasquez v. City of New York*, 2014 WL 6356941, at *1 (S.D.N.Y. Nov. 14, 2014).

Although Defendants represent that their work-product claims involve "core" work product,  Ex. K, the documents in question relate to PwC's auditing work, including work performed in connection with PwC's investigation of ███████ pull-in allegations, which necessarily involved assembling and collecting factual information. *See also United States v. Petit*, 438 F. Supp. 3d 212, 215 (S.D.N.Y. 2020) (finding substantial need exception applied to fact work product including "statements made by potential witnesses to K[ing]&S[paulding] and the contents of presentations to the Audit Committee, the DOJ, and the SEC").

Even if some of the redacted work papers include some "core" work product of Alexion's lawyers (Plaintiffs in no way concede this), that is not dispositive as "not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions, or legal theories is protected as opinion work product. Were the doctrine to sweep so massively, the exception would

hungrily swallow up the rule." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988); *see also Gould Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987) (explaining that, whatever heightened protection may be conferred upon opinion work product, "its application depends upon the existence of a real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed"); *Fed. Deposit Ins. Corp.*, 241 F.R.D. at 108 (explaining work-product claims must relate to "a real, rather than speculative, concern" and "courts should narrowly construe, not expansively interpret, exceptions to discoverability").[4] In any event, facts, even if referenced in "core" work-product materials, are not protected. *See, e.g.*, *Reich v. Hercules, Inc.*, 857 F. Supp. 367, 373 (D.N.J. 1994) ("A party may not shield facts from discovery merely by combining them with an attorney's core work product."); *Coastline Terminals of Conn. v. U.S. Steel Corp.*, 221 F.R.D. 14, 19 (D. Conn. 2003) ("[T]he work product doctrine 'does not protect facts concerning the creation of work product, or facts contained within work product.'").

As decisions in this district recognize, the "trial court has wide discretion in determining the existence of substantial need and undue hardship." *Handsome, Inc. v. Town of Monroe*, 2014 WL 348196, at *7 (D. Conn. Jan. 31, 2014) (citation omitted). Here, Plaintiffs have no way of re-creating or obtaining auditor work papers that are the "substantial equivalent," Fed. R. Civ. P. 26(b)(3)(a)(ii), to PwC's work papers. ████████████████████████████████████████████████████████████████████████████████ The notion that Plaintiffs could somehow obtain these work papers from any other source or substantially re-create them during discovery through document requests, dozens of depositions,

---

[4]     As explained below at 14, even if Defendants claim that *all* of the redacted PwC materials contain non-speculative, "core" work product, these work product claims have been waived.

and accounting experts—more than six years after the underlying events occurred—is neither realistic nor efficient. *See In re Aggrenox*, 2017 WL 5885664, at *6 (recognizing "inability to obtain the equivalent [material] without undue hardship" supports "substantial need" exception); *Cohen v. City of New York*, 255 F.R.D. 110, 125 (S.D.N.Y. 2008) (substantial need met when "the notes are the product of contemporaneous observations, [as] they cannot be replicated").

Defendants cannot seriously dispute that PwC's work papers are highly relevant to Plaintiffs' claims. Indeed, as documents already produced by PwC confirm, *supra* at 8, the work papers relate to pull-in practices and "Tone at the Top" determinations that this Court already has decided were relevant following an earlier motion to compel. *See* ECF No. 229 at 9 ("Even if pull-in sales was at the core of the Audit Committee Investigation but not at the core of the plaintiffs' claims, ***a significant aspect of the plaintiffs' claims is that senior management was personally involved in Alexion's use of illegal sales tactics and the tone at the top set by senior management pressured employees to use such tactics. . . . Consequently, the court concludes that the Audit Committee Investigation is relevant to the plaintiffs' claims.***") (emphasis added).

PwC's work papers are also relevant because they provide insight into ███████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████  *See* ECF No. 267 at 39 (Class Certification Order) (recognizing Defendants failed to prove absence of price impact for December 12, December 13, and other dates during the Class Period). ████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████



In sum, Plaintiffs have shown a substantial need for PwC's work papers, which cannot be substantially replicated or obtained from any other source.

### D.     Defendants' Work-Product Claims Have Been Waived

"Like other discovery privileges, work-product protection is waivable." *Am. Oversight v. U.S. Dep't of Just.*, 45 F.4th 579, 593 (2d Cir. 2022). "A party waives the work product protection by taking actions inconsistent with . . . its purpose, such as disclosing work product to its adversary." *N.Y. Times v. U.S. Dep't of Just.*, 939 F.3d 479, 494 (2d Cir. 2019); *see also In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share otherwise privileged thought processes of counsel, the need for the privilege disappears."). Work-product protection also is deemed waived when "a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion." *Clark*, 2022 WL 3716355, at *6; *see also In re Steinhardt Partners*, 9 F.3d at 235 ("We have previously denied a claim of privilege after a claimant decided to selectively disclose confidential materials in order to achieve other beneficial purposes."). In either case (whether by voluntary disclosure to an adversary or through disclosure

to "prove a point" or gain a benefit unrelated to litigation), "[t]he party invoking the protection . . .

has the burden of showing both that the protection exists and that is has not been waived." *Pfizer*

*Inc. v. Regor Therapeutics Inc.*, 2023 WL 1766419, at *4 (D. Conn. Feb. 3, 2023) (alterations in

original) (quoting *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002)).

Here, as Alexion's independent auditor, PwC was adversarial to the Company. Therefore,

Alexion has waived any work-product protection that otherwise might apply to documents that the

Company, the Audit Committee, or its agents shared voluntarily with PwC while it was conducting

its 2016 audit. Courts across the country have repeatedly recognized that accountants performing

their independent audit functions under the federal securities laws are adversarial to their clients.

*See, e.g.*, *Medinol, Ltd. v. Bos. Sci. Corp.*, 214 F.R.D. 113, 116 (S.D.N.Y. 2002). The *Medinol*

court explained that:

> as has become crystal clear in the face of the many accounting scandals that have
> arisen as of late, in order for auditors to properly do their job, they *must* not share
> common interests with the company they audit. **[G]ood auditing requires**
> **adversarial tensions between the auditor and the client**. Roberta S. Karmel, *A*
> *New Watchdog for Public Accountants*, N.Y. Law J., Aug. 15, 2002, at 3.

*Id.* (alteration in original) (second emphasis added). Numerous other decisions are in accord. *See,*

*e.g.*, *Grant Thornton, LLP v. Fed. Deposit Ins. Co.*, 535 F. Supp. 2d 676, 709-10 (S.D. W. Va.

2007) ("An independent certified public accountant does not play the role of an advocate for its

client. In order to properly do their job, auditors must not share common interests with the

company they audit."), *rev'd in part on other grounds*, *Ellis v. Grant Thornton LLP*, 530 F.3d 280

(4th Cir. 2008); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 19129, at

*18-19 (D. Colo. Aug. 15, 2005) (finding company "impliedly waived the work-product privilege

as to all 'fact' (or non-opinion) work-product on the same subject matter as that disclosed" to

outside auditor); *In re King Pharms., Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 49983, at *13-14

(E.D. Tenn. Sept. 21, 2005) (citing *Medinol* and holding "attorney work product doctrine has no

application" to documents provided to company's "usual outside auditor"); *In re Diasonics Sec. Litig.*, 1986 WL 53402, at *1 (N.D. Cal. June 15, 1986) ("[T]he public accountant has responsibilities to creditors, stockholders, and the investing public which transcend the relationship with the client."); *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, 2016 WL 5867268, at *10 (W.D. Tenn. Oct. 5, 2016) ("[T]he court finds that disclosure of privileged communications to outside auditors waives ***both*** attorney-client privilege and the work-product protection." (emphasis added)).[5]

Further, the U.S. Supreme Court has stressed the importance of auditor independence, reinforcing the view that independent auditors are adversarial with their clients:

> [T]he independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to [the] investing public. This "public

---

[5] The SEC and others take a similar view of auditor independence, recognizing that unqualified independence must exist between the auditor and its client and that an auditor's primary responsibility is to a company's stakeholders, ***not*** to the company itself. *See* Revision of the Comm'n's Auditor Indep. Requirements, Exchange Act Release No. 1911, 2000 WL 1726933 (S.E.C. Nov. 21, 2000) ("Independent auditors have an important public trust. Investors must be able to rely on issuers' financial statements. It is the auditor's opinion that furnishes investors with critical assurance that the financial statements have been subjected to a rigorous examination by an objective, impartial, and skilled professional. . . . If investors do not believe that an auditor is independent of a company, they will derive little confidence from the auditor's opinion and will be far less likely to invest in that public company's securities."); *see also* Pub. Co. Acct. Oversight Bd., Exchange Act Release No. 53427, 2006 WL 1594841 (S.E.C. Mar. 7, 2006) ("A registered public accounting firm and its associated persons must be independent of the firm's audit client throughout the audit and professional engagement period"); Code of Prof'l Conduct § 0.300.050.01 (AICPA 2014) ("A member should maintain objectivity and be free of conflicts of interest in discharging professional responsibilities. A member in public practice should be independent in fact and appearance when providing auditing and other attestation services."), available at https://us.aicpa.org/content/dam/aicpa/research/standards/codeofconduct/downloadabledocuments/2014december14codeofprofessionalconduct.pdf.

watchdog" function demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust.

*Arthur Young & Co.*, 465 U.S. at 817-18.[6]

The facts of this case are similar to those in *U.S. v. Hatfield*, Civ. No. 06-CR-0550 (JS), 2009 WL 3806300, at *1 (E.D.N.Y. Nov. 13, 2009), which also concerned allegations that the CEO directed a scheme to enhance his personal compensation at the expense of a public corporation's shareholders. There, David Brooks ("Brooks"), the former CEO and board member of the publicly-traded company D.H.B Industries Inc. ("DHB"), was accused of engaging in a scheme to defraud public shareholders by inflating DHB's gross profit margins, converting company resources into unauthorized and undisclosed compensation, and concealing related party transactions. *Id.* Brooks asserted work-product protection over certain documents related to the government's investigation, including documents that DHB shared with Huron Consulting Group ("Huron"), a consultant retained by DHB's independent auditor. *Id.* at *4.

The Honorable Joanna Seybert, rejecting cases that held that outside auditor work papers can be withheld from discovery based on work-product claims made by the corporation, explained that "Huron worked principally to assist DHB's independent auditor in assembling the information it needed to enable DHB to file its 10-K." *Hatfield*, 2010 WL 183522, at *2. The court further explained that this was "classic corporate accounting work that every public company undertakes

---

[6]     Though some courts in the Southern District of New York have declined to follow *Medinol*, those decisions disregard the import of the Supreme Court's discussion of an auditor's "public watchdog" function in *Arthur Young & Co*. Even if the Supreme Court's commentary is considered to be dictum, it is still entitled to considerable deference from the lower federal courts. *See, e.g.*, *Warren v. Harvey*, 472 F. Supp. 1061, 1072 (D. Conn. 1979) ("Supreme Court dicta must be given considerable weight and cannot be ignored."). Indeed, reported decisions from across the country recognize that "[c]arefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative." *United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) (alteration in original); *see also United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) ("We do not treat considered dicta from the Supreme Court lightly.").

'in the ordinary course of business.'" *Id.* In holding that Huron's sharing of work papers with DHB's independent auditor waived the work-product protection asserted by Brooks (who hired Huron), the court stated:

> Mr. Brooks disputes this holding [of waiver as to Huron], correctly noting that most courts have concluded that disclosure to an independent auditor does not waive the work product immunity. **But, at least on the facts presented here (and without any binding Second Circuit authority), the Court chooses to apply Medinol*'s* holding. As Medinol *recognized, 'the independent auditor assumes a* public responsibility transcending any employment relationship with the client.**'** Thus, although DHB hired [its independent auditor], [the auditor] owed its 'ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public.'"

*Id.* at *3 (emphasis added) (quoting *Medinol*, 214 F.R.D. at 116).[7]

Here, the work that PwC conducted for Alexion and its Audit Committee—including reviewing or detecting potential allegations of fraud—was "classic corporate accounting work that every public company undertakes" and otherwise ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████

---

[7] It also bears noting that Delaware's Chancery Court, arguably the most sophisticated business court in the country, follows the *Medinol* line of cases. *See, e.g.*, *Police & Fire Ret. Sys. of Detroit v. Musk*, 2023 WL 1525022, at *2 (Del. Ch. Jan. 31, 2023) ("Generally, Delaware courts do not treat outside auditors as 'part of the circle of persons . . . with whom confidential information may be shared without destroying the privilege' as a consequence of their responsibility to the public. **This is due to [the] independent auditor's unique responsibility to the public**." (ellipsis in original) (emphasis added)).

Moreover, even if allegations like the pull-in scheme do not occur with consistent regularity, █████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████ Indeed, the detection of fraud is required by the Public Company Accounting Oversight Board ("PCAOB"), the body charged with overseeing public accountants. *See* Addressing the Risk of Fraud, Exchange Act Release No. 55876, 2007 WL 2031580 (S.E.C. June 7, 2007) ("When planning and performing the audit of internal control over financial reporting, ***the auditor should take into account the results of his or her fraud risk assessment***.") (emphasis added).

Simply put, the fact that Alexion and its Audit Committee voluntarily shared the material at issue here with the Company's independent auditor ends the inquiry and this Court should order these documents to be produced fully and without redaction. But, even if Alexion and PwC were not found to be adversaries, Defendants' conduct still resulted in waiver as the Company's "objectives" in disclosing its attorneys' (purported) work product to PwC were "foreign to the objectives underlying the . . . doctrine." *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1429 (3d Cir. 1991). Indeed, whether Alexion's Audit Committee shared "factual" or "core" attorney work product with PwC, their motive for so doing was ultimately the same: to "prove a point" and thereby obtain the benefit of gaining ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████ *See Clark*, 2022 WL 3716355, at *6 (work-product claim waived by "selectively presenting materials to prove a point," while simultaneously "prevent[ing] an opponent from challenging the assertion").

Indeed, even though PwC ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████, none of these details have ever been

publicly disclosed.  Nor has Alexion disclosed that ███████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████

In other words, Alexion shared its purported attorney work product with PwC not for the

purpose of requesting or receiving legal advice or because of the prospect of litigation, but ████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████  By any measure, attempting to control

the public narrative around an internal company investigation is inconsistent with the policies

underlying the work-product doctrine.  *See Westinghouse Elec. Corp.*, 951 F.2d at 1429; *see also*

*Harding v. Dana Transp., Inc.*, 914 F. Supp. 1084, 1098 (D.N.J. 1996) ("[L]itigants must not

manipulate the work product doctrine for their own benefit by attempting to selectively disclose

their attorney's work product."); *Gruss v. Zwirn*, 2013 WL 3481350, at *11 (S.D.N.Y. July 10,

2013) ("[S]trategic and manipulative use of the attorney-client privilege and work product doctrine

has been explicitly rejected by the Second Circuit.").

To be sure, Alexion was successful in this regard.  It is one thing to disclose that some unspecified employees engaged in inappropriate business conduct related to pull-in sales.  *See* Alexion Press Release (Jan. 4, 2017)[8] ("[T]he investigation found that certain revenue pulled in from the first quarter of 2016 into the fourth quarter of 2015 ***was realized by employee actions that involved inappropriate business conduct***, including violations of Company policies and procedures.").  It is quite another to state what the investigation actually uncovered:

Because Alexion and its agents voluntarily disclosed (what Defendants claim to be) work product to PwC, not because of litigation or to facilitate the provision of legal advice, but for the "other beneficial purpose" of controlling the public narrative surrounding the pull-in investigation, any work-product protection has been waived.  Alternatively, Alexion voluntarily shared its work product with an adversary, as set forth above, which "obviously" waives work product-protection as to other parties.  *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 14 (S.D.N.Y. 2022).

## III.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully submit that Defendants' work-product claims over PwC's work papers are (i) unsupported, (ii) fall within the substantial-need exception, and (iii) have been waived.  Plaintiffs request that the Court order these materials to be produced

---

[8]      Ex. P, ALXN-BRS-00353679 at 3680.

forthwith in unredacted form.  Alternatively, Plaintiffs have no objection if, prior to issuing any

ruling, the Court requires *in camera* review of the withheld and redacted work papers.[9]

DATED:  June 5, 2023                                    Respectfully submitted,

MOTLEY RICE LLC

By:  */s/ William H. Narwold*
        WILLIAM H. NARWOLD (CT 00133)
Mathew P. Jasinski
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  (860) 882-1681
Facsimile:   (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

        -and-

Gregg S. Levin (*pro hac vice*)
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
Meredith B. Weatherby (*pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
mweatherby@motleyrice.com

---

[9]      Courts in this district routinely rely on *in camera* review to resolve privilege and work product disputes.  *See, e.g.*, *Hartford Roman Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*, 2015 WL 164069, at *3 (D. Conn. Jan. 13, 2015) ("Courts have broad discretion to conduct *in camera* review to make this initial determination and the Supreme Court 'has long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of . . . privilege.'" (citation omitted)); *see also Gruss v. Zwirn*, 296 F.R.D. 224, 231 (S.D.N.Y. 2013) ("[A]ttorney representations regarding the content of allegedly privileged materials do not preclude a court from conducting an *in camera* review of such materials.").

*Co-Lead Counsel for Lead Plaintiffs*
*and the Class*

LABATON SUCHAROW LLP
Michael H. Rogers (*pro hac vice*)
James W. Johnson (*pro hac vice*)
James T. Christie (*pro hac vice*)
140 Broadway
New York, NY  10017-5563
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477
mrogers@labaton.com
jjohnson@labaton.com
jchristie@labaton.com

*Co-Lead Counsel for Lead Plaintiffs*
*and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2023, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ William H. Narwold*
William H. Narwold (CT 00133)

MOTLEY RICE LLC
Once Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile:  (860) 882-1682
bnarwold@motleyrice.com