**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BOSTON RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEXION PHARMACEUTICALS, INC., LEONARD BELL, DAVID L. HALLAL, VIKAS SINHA,<br><br>Defendants. | Civ. No. 3:16-cv-2127 (AWT)<br><br>Hon. Alvin W. Thompson |

**MEMORANDUM OF LAW IN SUPPORT OF CO-CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .....1

ARGUMENT .....3

I. THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD .....3

A. The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method .....4

B. Percentage Fees Awarded in Comparable Cases Within the Second Circuit .....5

C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method .....8

II. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS .....12

A. Plaintiffs' Counsel Have Devoted Significant Time and Labor to the Action .....12

B. The Magnitude and Complexity of the Action Support the Requested Fee .....13

C. The Risks of the Litigation Support the Requested Fee .....16

D. The Quality of Co-Class Counsel's Representation Supports the Fee .....17

E. The Requested Fee in Relation to the Settlement .....20

F. Public Policy Considerations Support the Requested Fee .....20

III. THE REACTION OF THE CLASS TO DATE .....21

IV. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .....22

V. CLASS REPRESENTATIVES SHOULD BE AWARDED REIMBURSEMENT UNDER 15 U.S.C. § 78u-4(a)(4) .....24

CONCLUSION .....26

# TABLE OF AUTHORITIES

**CASES**

*Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .................................................. 4

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .................................................. 3

*Carlson v. Xerox Corp.*,
355 F. App'x (2d Cir. 2009) .................................................. 6

*Carlson v. Xerox Corp.*,
596 F. Supp. 2d 400 (D. Conn. 2009) .................................................. 6

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................. 10, 25

*City of Providence v. Aeropostale Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................. 4, 15, 17

*Collins v. Olin Corp.*,
2010 WL 1677764 (D. Conn. Apr. 21, 2010) .................................................. 5

*Edwards v. North America Power & Gas, LLC*,
2018 WL 3715273 (D. Conn. Aug. 3, 2018) .................................................. 16

*Gay v. Tri-Wire Engineering Solutions, Inc.*,
2014 WL 28640 (E.D.N.Y. Jan. 2, 2014) .................................................. 6

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43, 47 (2d Cir. 2000) .................................................. 4, 8, 12

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .................................................. 4, 19, 21, 25

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) .................................................. 20

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
272 F. App'x. 9 (2d Cir. 2008) .................................................. 20

*In re American Bank Note Holographics Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................. 16, 17

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation*,
772 F.3d 125 (2d Cir. 2014) .................................................. 26

*In re Bayer AG Securities Litigation*,
2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) .................................................. 16

*In re Bristol-Myers Squibb Securities Litigation*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005) .................................................. 8

*In re China Sunergy Securities Litigation*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .................................................. 19, 24

*In re Colgate-Palmolive Co. ERISA Litigation*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................ 11

*In re Comverse Technology, Inc. Securities Litigation*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................... 10, 16, 20

*In re Deutsche Telekom AG Securities Litigation*,
2005 WL 7984326 (S.D.N.Y. June 9, 2005) ............................................................ 11

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)............................................................ 13

*In re FLAG Telecom Holdings, Ltd. Securities Litigation*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...................................................... 10, 17, 21

*In re General Motors LLC Ignition Switch Litigation*,
2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) .......................................................... 25

*In re Global Crossing Securities & ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 18

*In re Hi-Crush Partners L.P. Securities Litigation*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................... 14

*In re Ikon Office Solutions, Inc. Securities Litigation*,
194 F.R.D. 166 (E.D. Pa. 2000)............................................................................ 13

*In re Marsh & McLennan Cos. Securities Litigation*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 17, 26

*In re Marsh ERISA Litigation*,
265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................... 20

*In re Petrobras Securities Litigation*,
317 F. Supp. 3d 858 (S.D.N.Y. 2018)...................................................................... 26

*In re Priceline.com, Inc., Securities Litigation*,
2007 WL 2115592 (D. Conn. July 20, 2007) ............................................................ 5

*In re Qudian Inc. Securities Litigation*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ............................................................ 26

*In re Signet Jewelers Ltd. Securities Litigation*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...................................................... 13, 26

*In re Sturm, Ruger & Co., Securities Litigation*,
2012 WL 3589610 (D. Conn. Aug. 20, 2012) ...................................................... 13, 21

*In re Telik, Inc. Securities Litigation*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................................................ 9

*In re Teva Securities Litigation*,
2022 WL 16702791 (D. Conn. June 2, 2022)................................................... 8, 10, 26

*In re U.S. Foodservice Inc. Pricing Litigation*,
2014 WL 12862264 (D. Conn. Dec. 9, 2014)..................................................... 5, 6, 10

*In re Veeco Instruments Inc. Securities Litigation*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........ 16, 18, 20, 22

*Kiefer v. Moran Foods, LLC*,
2014 WL 3882504 (D. Conn. Aug. 5, 2014) ........ 24

*Lea v. Tal Education Group*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........ 19

*Lopez v. Fashion Nova*,
2021 WL 4896288 (S.D.N.Y. Oct. 19, 2021) ........ 10

*Luciano v. Olsten Corp.*,
109 F.3d 111 (2d Cir. 1997) ........ 9

*Macedonia Church v. Lancaster Hotel, LP*,
2011 WL 2360138 (D. Conn. June 9, 2011) ........ 5

*Maley v. Del Global Technologies Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 21

*McDaniel v. County of Schenectady*,
595 F.3d 411 (2d Cir. 2010) ........ 4

*Menkes v. Stolt-Nielsen S.A.*,
2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25, 2011) ........ 24

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ........ 9

*Pearlstein v. BlackBerry*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ........ 9

*Savoie v. Merchants Bank*,
166 F.3d 456 (2d Cir. 1999) ........ 5

*Seijas v. Republic of Argentina*,
2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017) ........ 5

*Spicer v. Pier Sixty LLC*,
2012 WL 4364503 (S.D.N.Y. Sept. 14, 2012) ........ 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........ 3

*U.S. Bank National Ass'n v. Dexia Real Estate Capital Markets*,
2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ........ 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005) ........ 4, 8, 10

*Woburn Retirement System v. Salix Pharmaceuticals, Ltd.*,
2017 WL 3579892 (S.D.N.Y. 2017) ........ 10

Court-appointed Co-Class Counsel, Labaton Sucharow LLP ("Labaton Sucharow") and Motley Rice LLC ("Motley Rice"), respectfully submit, on behalf of all Plaintiffs' Counsel,[1] this memorandum of law in support of their motion for an award of attorneys' fees in the amount of 25% of the Settlement Fund for their efforts in this Action. Co-Class Counsel also seek payment of $ 1,364,364.07 in Litigation Expenses that they reasonably incurred in prosecuting the Action, as well as a total award of $51,960 as reimbursement to Class Representatives Erste Asset Management GmbH, f/k/a Erste-Sparinvest Kapitalanlagegesellschaft mbH (hereinafter, "Erste AM" or "Erste") and the Public Employee Retirement System of Idaho ("PERSI," and together with Erste AM, "Lead Plaintiffs" or "Class Representatives"), directly related to their representation of the certified Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(4).[2]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $125 million cash payment pursuant to the terms of the Stipulation. As detailed in the Joint Declaration, the Settlement brings to a close, with a very favorable result, six years of extensive litigation. The Settlement, achieved through substantial effort, will provide meaningful

[1] Unless noted, all capitalized terms that are not otherwise defined in this memorandum have the meanings given to them in the Stipulation and Agreement of Settlement, dated as of September 11, 2023 (the "Stipulation"), ECF No. 306. Plaintiffs' Counsel are Labaton Sucharow LLP, Motley Rice LLC, Risch Pisca, PLLC, and Sturman LLC.

[2] Co-Class Counsel are simultaneously submitting herewith the Joint Declaration of Gregg S. Levin and Michael H. Rogers in Support of (I) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Co-Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses (the "Joint Declaration"), dated November 15, 2023 (cited herein as "¶").

All exhibits referenced below are attached to the Joint Declaration. For clarity, citations to exhibits that themselves have exhibits will be referenced as "Ex. ___ - ___." The first reference is to the designation of the entire exhibit attached to the Joint Declaration and the second reference is to the exhibit designation within the exhibit itself.

compensation to the Class while avoiding the delay and significant risks of continued litigation. The benefits of the Settlement are particularly clear when weighed against the risk that the Class might recover less (or nothing) if litigation continued. Defendants were vigorously pursuing a Rule 23(f) challenge to certification of the Class and had substantial defenses to both liability and damages. Class Representatives would have faced significant hurdles in connection with the Rule 23(f) proceedings before the Second Circuit and ultimately proving falsity, scienter, loss causation, and damages given the arguments advanced (or likely to be advanced) by Defendants at summary judgment and trial. Finally, if Class Representatives succeeded in establishing both Defendants' liability and damages at trial, Defendants would almost certainly have pursued appeals, which would have further delayed and threatened any recovery. The Settlement eliminates these risks while providing a very favorable result to the Class.

In the face of these challenges—as well as the fully contingent nature of the case—Co-Class Counsel devoted substantial resources to prosecuting this Action against highly skilled opposing counsel. Among the other work detailed in the Joint Declaration, Co-Class Counsel, *inter alia*: (i) conducted an extensive factual investigation in connection with the filing of two consolidated complaints, including a rigorous analysis of Alexion's public filings and statements and analysts' reactions thereto, the review of news articles and analyst reports about Alexion, and contacting approximately 414 former Alexion employees, and interviewing approximately 68 of them; (ii) researched and briefed Defendants' two Motions to Dismiss and Lead Plaintiffs' Class Certification Motion; (iii) reviewed and analyzed approximately 3,500,000 pages of documents obtained from Defendants and non-parties; (iv) prepared for and took or defended 24 depositions of fact witnesses, experts, non-parties, and corporate representatives; (v) consulted with an economic expert, Chad Coffman of Global Economics Group LLC, on issues pertaining to market

efficiency, price impact, loss causation and damages; (vi) consulted with other legal and subject matter experts relevant to the case; and (vii) engaged in extensive mediation efforts overseen by an experienced and highly respected mediator, retired United States District Court Judge Layn R. Phillips ("Judge Phillips"), including the preparation of mediation material in connection with two full-day mediation sessions over the span of a year. *See generally* Joint Decl. Parts III-IV.

Against this backdrop, Co-Class Counsel request a fee of 25% of the Settlement Fund, which would represent a modest lodestar "multiplier" of approximately 1.22 on Plaintiffs' Counsel's lodestar; payment of Litigation Expenses in the amount of $ 1,364,364.07; and an award of $51,960, in total, to Class Representatives for the time and resources they dedicated to representing the Class over the past six years. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class actions of this magnitude, and the fee and expense requests are well supported by both case law and the facts of this case.

For the following reasons, Co-Class Counsel respectfully submit that their efforts and the results achieved in this Action justify the requested fees and expenses.

## ARGUMENT

### I. THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD

The Supreme Court has emphasized that private securities actions are "an essential supplement to criminal prosecutions and [SEC] civil enforcement actions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action"). Compensating counsel for bringing these actions is important because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for

their efforts on behalf of the class." *Hicks v.* Stanley, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

Within the Second Circuit, courts "may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "[W]hether calculated pursuant to the lodestar or the percentage method, the fees awarded in common fund cases may not exceed what is 'reasonable' under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

In this case, the requested fee award—25% of the Settlement Fund—is well supported under either the "percentage" or "lodestar" method.

### A. The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method

Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd, Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Co-Class Counsel respectfully submit that this purpose would be well-served by the Court awarding a fee based on a percentage of the common fund obtained.

The Second Circuit has not only approved, but endorsed, the percentage method, recognizing that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Goldberger*, 209 F.3d at 48-50 (either percentage of fund

method or lodestar method may be used to determine fees, but noting the "lodestar method proved vexing" and results in "inevitable waste of judicial resources"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *Collins v. Olin Corp.*, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) ("The Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach 'aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation'"). This preference was recognized by the Court in *In re U.S. Foodservice Inc. Pricing Litig.*, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (Thompson, J.), in connection with its fee award of 33.33% in that case.[3]

### B. Percentage Fees Awarded in Comparable Cases Within the Second Circuit

The 25% fee requested by Co-Class Counsel is well within the range of percentage fees awarded in the Second Circuit in complex class action cases. "In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund." *Seijas v. Republic of Argentina*, 2017 WL 1511352, at *13 (S.D.N.Y. Apr. 27, 2017); *see also Macedonia Church v. Lancaster Hotel, LP*, 2011 WL 2360138, at *14 (D. Conn. June 9, 2011) ("Class Counsel's request for 33-1/3% of the Settlement Fund is typical in class action settlements in the Second Circuit.") (collecting cases); *In re Priceline.com, Inc., Sec. Litig.*, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (approving attorneys' fee award of 30% of the $80 million settlement fund and listing other Second Circuit cases that approved between 25-33 1/3% of the settlement fund in attorneys' fees); *Gay v. Tri-Wire Eng'g Sols., Inc.*, 2014 WL 28640, at *11

[3] All internal quotations and citations are omitted unless otherwise stated.

(E.D.N.Y. Jan. 2, 2014) ("[D]istrict courts in this Circuit have routinely upheld attorney's fees awards of 30% to 33-1/3% in class action cases where a counsel's fee award was entirely contingent on success, and have occasionally approved greater attorney's fees awards.").

The following attorneys' fee decisions in connection with class action settlements of the size of the Settlement, or more, within the Second Circuit is informative:

| **Case/Fee Order** | **Percentage of the Fund** | **Settlement Amount** |
|---|---|---|
| *In re U.S. Foodservice Inc. Pricing Litigation*, 2014 WL 12862264, at *3 (D. Conn. Dec. 9, 2014) (Thompson, J.) | 33.33% | $297 million |
| *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *20 (S.D.N.Y. Oct. 16, 2019) | 25% | $250 million |
| *In re Signet Jewelers Ltd. Securities Litigation*, 2020 WL 4196468, at *15-16 (S.D.N.Y. July 21, 2020) | 25% | $240 million |
| *In re Comverse Technology, Inc. Securities Litigation*, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) | 25% | $225 million |
| *Kurzweil v. Philip Morris Cos.*, 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) | 30% | $123.8 million |
| *In re Deutsche Telekom AG Securities Litigation*, 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) | 28% | $120 million |
| *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 400 (S.D.N.Y. 1999) | 27.5% | $116.6 million |

Notably, in *In re U.S. Foodservice, Inc. Pricing Litigation*—a RICO and contract class action that resulted in a $297 million settlement—this Court awarded a fee of $99 million (one third) where the litigation, similar to the instant case, involved contentious and extensive discovery (with motions to compel, millions of pages produced in discovery, and numerous depositions); disputed class certification; and a large investment in experts.[4] *See* 2014 WL 12862264, at *3.

[4] This Court also decided *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400 (D. Conn. 2009), *aff'd*, 355 F. App'x 523 (2d Cir. 2009), which awarded a 16% fee in connection with a $750 million settlement.

The following cases from district courts outside the Second Circuit, which resolved for amounts comparable to that here, or more, show a similar result:

| CASE/FEE ORDER | PERCENTAGE OF THE FUND | SETTLEMENT AMOUNT |
|---|---|---|
| *Standard Iron Works v. ArcelorMittal*, 2014 WL 7781572, at *1 (N.D. Ill. Oct. 22, 2014) | 33% | $163.9 million |
| *In re Titanium Dioxide Antitrust Litigation*, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) | 33.33% | $163.5 million |
| *City of Pontiac General Employees' Retirement System v. Wal-Mart Stores*, 2019 WL 1529517, at *2 (W.D. Ark. Apr. 8, 2019) | 30% | $160 million |
| *In re Snap Inc. Securities Litigation*, 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021) | 25% | $154.68 million |
| *In re Flonase Antitrust Litigation*, 951 F. Supp. 2d 739, 756 (E.D. Pa. 2013) | 33.33% | $150 million |
| *In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) | 30% | $147.8 million |
| *In re Apollo Group Inc. Securities Litigation*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) | 33.33% | $145 million |
| *Peace Officers' Annuity & Benefit Fund of Georgia v. Davita, Inc.*, 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) | 30% | $135 million |
| *In re Rite Aid Corp. Securities Litigation*, 362 F. Supp. 2d 587, 590-91 (E.D. Pa. Mar. 24, 2005) | 25% | $126.6 million |
| *Knurr v. Orbital ATK, Inc.*, 2019 WL 3317976, at *1 (E.D. Va. June 7, 2019) | 28% | $108 million |

Moreover, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2013-2022, the median attorneys' fee award for settlements between $25 million and $99 million was 25% and was 24.5% for settlements between $100 million and $499 million. *See* Janeen McIntosh, Svetlana Starykh & Edward Flores, *Recent Trends in*

*Securities Class Action Litigation: 2022 Full-Year Review* 21 (NERA Jan. 24, 2023) ("Jan. 2023 NERA Report"), Ex. B.[5] The Settlement here falls on the cusp of these ranges.

In sum, Co-Class Counsel respectfully submit that an attorneys' fee award in this case of 25% of the Settlement Fund would be reasonable and comparable to other awards within the Second Circuit and elsewhere.

### C. The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar. *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

Here, Plaintiffs' Counsel spent more than 45,671 hours of attorney and other professional staff time litigating the case from inception through October 31, 2023. *See* Ex. H ("Summary Table"); Decl. of Gregg S. Levin on behalf of Motley Rice LLC in Supp. of Appl. for an Award of Att'ys' Fees & Litig. Expenses, dated November 15, 2023 ("Levin Decl.") (Ex. I); Decl. of Michael H. Rogers on behalf of Labaton Sucharow LLP, dated November 15, 2023 ("Rogers Decl.") (Ex. J). Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their current hourly rates, is $ 25,569,948.60. *Id*.

Plaintiffs' Counsel's lodestar is based on counsel's current hourly rates, which are comparable to those in the legal community for similar services by attorneys of reasonably

[5] In *In re Teva Securities Litigation*, Judge Underhill awarded the requested 23.7% of the $420 million settlement in attorneys' fees. 2022 WL 16702791, at *1 (D. Conn. June 2, 2022).

comparable skill, experience, and reputation.[6] Plaintiffs' Counsel's rates here range from $700 to $1,325 for members/partners and from $325 to $950 for all of the other attorney-timekeepers. *See* ¶ 140; Ex. I-A; Ex. J-A. "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). In that regard, Plaintiffs' Counsel's rates fall well below those of lawyers employed by Alexion's counsel, which range from $1,650 to $2,175 for partners and of counsel and $825 to $1,380 for associates. *See* Ninth Monthly Fee Statement of Paul, Weiss, Rifkind, Wharton, & Garrison LLP for Comp. for Servs. Rendered & Reimbursement of Expenses Incurred as Att'ys for Debtors for Period from Mar. 1, 2023 through Apr. 3, 2023, *In re Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y. May 1, 2023), Ex. K. Additionally, Exhibit L contains tables of hourly rates for defense firms doing comparably complex commercial litigation compiled by Labaton Sucharow from fee applications submitted by such firms nationwide in bankruptcy proceedings in 2022. The analysis shows that across all types of attorneys, Plaintiffs' Counsel's rates are consistent with, or lower than, the firms surveyed.[7]

---

[6] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

[7] *See also Pearlstein v. BlackBerry*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) (hourly rates ranging from $500 to $1,200 "are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and complexity and similar rates have been approved by courts"); *U.S. Bank Nat'l Ass'n v. Dexia Real Est. Cap. Mkts.*, 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (concluding that "rates ranging from $250 per hour to $1,055 per hour" were

The requested fee of 25% of the Settlement Fund, i.e., $31,250,000, would represent a modest multiplier of 1.22 of the total lodestar of Plaintiffs' Counsel. Multiples above a lodestar are frequently awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

A 1.22 multiplier is well within the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable. *See, e.g.*, *Wal-Mart*, 396 F. 3d at 123 (upholding a multiplier of 3.5 as reasonable on appeal); *In re U.S. Foodservice Inc. Pricing Litig.*, 2014 WL 12862264, at *3 (awarding 2.23 multiplier noting it was "well within the acceptable range"); *In re Teva Sec. Litig.*, 2022 WL 16702791, at *2 (awarding 2.17 multiplier); *Lopez v. Fashion Nova*, 2021 WL 4896288, at *3 (S.D.N.Y. Oct. 19, 2021) ("In this Circuit, '[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers.'"); *Christine Asia Co.*, 2019 WL 5257534, at *19 (awarding fee representing a 2.15 multiplier, which court found to be "well within the range commonly awarded in securities class actions of this complexity and magnitude"); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. 2017) ("Although a lodestar multiplier of 3.14 for a settlement of $210 million is high, it is still within the range of lodestar multipliers approved in

---

reasonable in complex commercial litigation; commenting that "partner billing rates in excess of $1,000 an hour are by now not uncommon in the context of complex commercial litigation").

this Circuit."); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326, at *4 (S.D.N.Y. June 9, 2005) (approving multiplier of 3.96 for settlement of $120 million); *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) (Ex. G)[8] (awarding 1.8 multiplier); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 347, 353 (S.D.N.Y. 2014) (awarding fee equating to multiplier of 5.2); *Spicer v. Pier Sixty LLC*, 2012 WL 4364503, at *4 (S.D.N.Y. Sept. 14, 2012) ("'In contingent litigation, lodestar multipl[iers] of over 4 are routinely awarded by courts.'").

Additional work will be required of Co-Class Counsel on an ongoing basis, including: correspondence with Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Class Members who have submitted valid Claim Forms. However, Co-Class Counsel will not seek payment for this additional work.

For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

* * *

In sum, Co-Class Counsel's requested fee award is well within the range of what courts regularly award in comparable class actions, whether calculated as a percentage of the fund or in relation to lodestar.

[8] Both unreported "slip opinions" cited herein are submitted in a compendium that is Ex. G to the Joint Declaration.

## II. THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. As discussed below, these factors and the analyses above demonstrate that Co-Class Counsel's requested fee would be reasonable.

### A. Plaintiffs' Counsel Have Devoted Significant Time and Labor to the Action

The substantial time and effort expended by Co-Class Counsel in prosecuting the Action and achieving the Settlement support the requested fee. As set forth in greater detail in the Joint Declaration, Plaintiffs' Counsel, among other things: (i) conducted a comprehensive investigation of the potential claims and claims against Alexion and the other Defendants, including contacting approximately 414 former Alexion employees and interviewing approximately 68 of them, and researched and drafted two detailed amended complaints; (ii) opposed two motions to dismiss; (iii) moved for and obtained class certification; (iv) engaged in class, fact, and expert discovery, including the review and analysis of approximately 3,500,000 pages of documents obtained from Defendants and non-parties, and preparing for and taking or defending 24 depositions of fact witnesses, experts, non-parties, and corporate representatives; (v) consulted with an economic expert on issues pertaining to market efficiency, price impact, loss causation and damages, and other legal and subject matter experts relevant to the case; and (vi) engaged in extensive mediation efforts overseen by a preeminent mediator with expertise in securities class actions, which included

the preparation of mediation material and two full-day mediation sessions over the span of a year. *See generally* Joint Decl. Parts III-IV.

In contrast, NERA Economic Consulting has found that between 2013 and 2022, 83% of securities class actions were dismissed or settled before a class certification motion was filed. *See* Jan. 2023 NERA Report, Ex. B at 11. Such cases should be distinguished from heavily litigated cases like this one, which reached an advanced procedural stage that included class certification and rigorous fact and expert discovery. As noted above and discussed further in the Joint Declaration, Plaintiffs' Counsel expended more than 45,671 hours in this effort with a lodestar value of $ 25,569,948.60. *See* Ex. H. At all times, Co-Class Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

### B. The Magnitude and Complexity of the Action Support the Requested Fee

The magnitude and complexity of the Action also support the fee request. Courts regularly recognize that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015); *see also In re Sturm, Ruger & Co., Sec. Litig.*, 2012 WL 3589610, at *12 (D. Conn. Aug. 20, 2012) (recognizing that "a securities action 'by its very nature, is a complex animal.'"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute"); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").

As detailed in the Joint Declaration and the accompanying Memorandum of Law in Support of Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Settlement Memorandum"), this Action raised difficult questions concerning—

among other things—certification of the Class, falsity and scienter within the sphere of pharmaceutical development and sales, loss causation, and damages over the span of several years and involving multiple alleged corrective disclosures. *See In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (finding the "inherently complex Exchange Act issues regarding, *inter alia*, whether Defendants' omissions were materially misleading, whether Defendants' [sic] acted with scienter and if loss causation could be established" supported approval of requested fee award).

By way of example, throughout the pendency of the Action, Defendants have vigorously asserted that there was no evidence that the Individual Defendants believed or recklessly disregarded that the Company was using improper sales practices to materially affect revenue. In addition, Defendants have maintained that the Company's senior management team acted in good faith and in accordance with the Company's asserted mission of improving patients' lives. More specifically, to date, Defendants have steadfastly maintained that the Company's physician and patient educational and support initiatives had all been disclosed publicly. They likely would have raised that same argument again both at summary judgment and trial in support of a contention that there could not have been any intent to deceive investors about the Company's sales initiatives. Further, Defendants have asserted during the pendency of the Action that neither Hallal's nor Sinha's departure from their positions at the Company were related to the sales practices that Class Representatives had challenged. ¶¶ 79-80. While Co-Lead Counsel believe that the narrative and evidence in support of scienter was both cogent and compelling, the Settlement favorably resolves the Action for the Class in the face of the difficulties involved in marshalling the proofs of state of mind needed for the Court (or a jury) to reject Defendants' scienter-based contentions.

With respect to loss causation, in connection with class certification, Defendants argued that "Alexion's stock did not show a statistically significant reaction to most of the alleged corrective disclosures" identified in the Amended Complaint, ECF No. 136 at 102, an argument they undoubtedly would have repeated at summary judgment and trial. Further, in the absence of a settlement, Defendants were expected to assert that any remaining alleged corrective disclosures could not support loss causation because they were either unrelated to any alleged fraud or did not disclose any new, fraud-related information. For example, with respect to the disclosures regarding Hallal's and Sinha's exits from the Company (which Class Representatives allege caused stock drops on December 12 and 13, 2016), Defendants have maintained that these executive departures were entirely unrelated to the alleged fraud. Presenting these expert-heavy and intricate issues to the jury posed significant challenges. Moreover, had the Court or a jury agreed with Defendants' arguments that the executive departures announced in December 2016 and May 2017 had nothing to do with the alleged fraud (but simultaneously disregard Defendants' other primary loss causation contentions), maximum reasonably recoverable damages in the Action would have dropped considerably—by around sixty-five percent (65%). ¶ 90. Despite such challenges, Co-Class Counsel were able to develop and resolve this case on terms very favorable to the Class.

In sum, prosecuting the class's claims required expertise, skill, and dedication, including extensive expert analysis across multiple fields. Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable. *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### C. The Risks of the Litigation Support the Requested Fee

The risks associated with this contingency fee case also support the requested fee. "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("[T]he risk of non-payment in complex cases . . . is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. . . . [E]ven a victory at trial does not guarantee recovery.") (collecting cases); *In re Am. Bank Note Holographics Inc*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (noting it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee").

Although Class Representatives and Co-Class Counsel believe that they have gathered substantial evidence to support the Class's claims and, barring settlement, were prepared to proceed to trial, they also realize that trying this case would present significant challenges. This is in addition to the risks with respect to the Rule 23(f) petition challenging class certification and the substantial burdens and risks associated with summary judgment, as well as in likely appeals—a process that could possibly extend for years and might lead to a smaller recovery, or no recovery at all. As discussed above, the complexity of the scienter and loss causation issues present in the Action could have compromised Class Representatives' ability to succeed at trial and obtain a larger judgment for the Class. Moreover, with respect to loss causation, the jury would be faced with a "battle of the experts" and could have decided to credit Defendants' experts over Class Representatives' experts. *See In re Bayer AG Sec. Litig.*, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (recognizing the "difficulty of establishing loss causation . . . and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards"); *Edwards v. N. Am. Power & Gas, LLC*, 2018 WL 3715273, at *14 (D. Conn. Aug. 3, 2018) (noting an extensive

reliance on experts "often increases the risk that a jury may not find liability or would limit damages").[9]

The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Joint Declaration at Section V and the Settlement Memorandum, and there was no guarantee Class Representatives' position would prevail. If Defendants had succeeded with respect to their Rule 23(f) challenge or any of their defenses, the Class could have recovered nothing or far less than the Settlement Amount.

In the face of many uncertainties, Co-Class Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation. ¶¶ 122-23. Co-Class Counsel's assumption of this contingency fee risk strongly supports the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

### D. The Quality of Co-Class Counsel's Representation Supports the Fee

The quality of the representation by Co-Class Counsel is another important factor that supports the reasonableness of the requested fee. Co-Class Counsel respectfully submit that the quality of their representation is best evidenced by the progress of the litigation and the quality of

---

[9] *See also Am. Bank Note*, 127 F. Supp. 2d at 426 (noting "substantial risk involved in proving *scienter*, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult."); *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain . . . it is what the jury will come up with as a number for damages."); *City of Providence*, 2014 WL 1883494, at *9 ("Undoubtedly, the Parties' competing expert testimony on damages would inevitably reduce the trial of these issues to a risky 'battle of the experts' and the 'jury's verdict with respect to damages would depend on its reaction to the complex testimony of experts, a reaction that is inherently uncertain and unpredictable.'").

the result achieved. *See, e.g.*, *In re Veeco Instruments*, 2007 WL 4115808, at *7; *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Furthermore, Co-Class Counsel are nationally recognized leaders in the field of securities class action litigation and have substantial experience litigating securities class actions in courts throughout the country. ¶¶ 143-46; Ex. I-C; Ex. J-C. The attorneys who were principally responsible for prosecuting this case relied upon their skills to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants throughout the litigation.

The result obtained through Co-Class Counsel's efforts for the Class in this case is very favorable, particularly when viewed in light of the serious risks of continued litigation. The Settlement represents approximately 5.2% of Class Representatives' estimate of maximum reasonably recoverable damages of $2.4 billion, after deducting gains on pre-Class Period holdings and assuming success in establishing Defendants' liability and that the trier of fact would reject Defendants' primary arguments directed to both loss causation and damages. ¶ 90. If, for example, the trier of fact accepted the contention that the executive departures announced in December 2016 and May 2017 by Alexion had nothing to do with the alleged fraud, recoverable damages in the Action would have dropped by approximately sixty-five percent (65%) to around $844 million, making the Settlement a recovery of approximately 15% of these damages. If the Court or jury were to have found those executive departures were unrelated to the alleged fraud ***and*** that: (i) there was no statistically significant price movement on the day following the November 4 and November 9, 2016 disclosures in question ***and*** that (ii) Class Representatives could not rely upon a "multi-day event window"—recoverable damages in the Action could have been limited solely to the share price decline following publication of the May 24, 2017 *Bloomberg* article, which

were only approximately $237 million—making the Settlement a recovery of more than 50% of these damages. *See* Joint Decl. ¶ 91; Settlement Mem. Part I.E.2.b.

Against that backdrop, a settlement representing at least 5.2% of the estimate of reasonably recoverable damages, as here, is a very favorable result. Indeed, since the passage of the PSLRA, courts have regularly approved settlements that recover similar or smaller percentages of damages. *See, e.g.*, *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving $7.5 million settlement representing 5.3% of maximum estimated damages); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[A]verage settlement amounts in securities fraud class actions . . . have ranged from 3% to 7% of the class members' estimated losses."); *Hicks*, 2005 WL 2757792, at *7 (finding settlement representing 3.8% of plaintiffs' estimated damages within range of reasonableness).

Notably, securities class actions with class-wide damages of over $1 billion often settle for a smaller fraction of overall damages. During the period from 2013 through 2021 and in 2022, in securities cases where the market capitalization losses exceeded $1 billion, the average percentage of recovery was 2.4% and 2.2%, respectively. *See Securities Class Action Settlements: 2022 Review and Analysis*, at 6 (Cornerstone Research 2023) (Ex. A). Moreover, in 2022 the median value of securities class actions settlements overall was $13 million[10] and in the first six months of 2023 it was $16 million.[11] So far in 2023, only 3% of securities class actions settled for more than $100 million.[12]

---

[10] *See* Jan. 2023 NERA Report at 15, Ex. B.

[11] *See* Edward Flores & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2023 Update*, at 9 fig.8 (NERA Aug. 2, 2023) ("Aug. 2023 NERA Report"), Ex. C.

[12] *Id.* at 10 fig.9.

The quality of Co-Class Counsel's representation is further demonstrated by the fact that this substantial recovery was obtained after opposing an aggressive defense by highly skilled attorneys at Paul, Weiss, Rifkind, Wharton & Garrison LLP and Wiggin and Dana LLP. Courts recognize that the strength of plaintiff's counsel's opposition should be considered in assessing its performance. *See, e.g.*, *In re Marsh ERISA Litig*., 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *In re Veeco Instruments*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

**E. The Requested Fee in Relation to the Settlement**

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in Section I, *supra*, the requested fee is well within the range of percentage fees that this Court and other courts have awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

**F. Public Policy Considerations Support the Requested Fee**

A strong public policy favors rewarding firms for bringing successful securities litigation. "Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis pursuant to the federal securities

laws on behalf of those who otherwise could not afford to prosecute." *In re Sturm*, 2012 WL 3589610, at *13; *see also FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). This factor supports Co-Class Counsel's fee and expense application.

## III. THE REACTION OF THE CLASS TO DATE

The reaction of the Class to date also supports the fee request. Through November 13, 2023, the Claims Administrator has mailed and emailed 316,305 copies of the Notice Packet to potential Class Members and nominees informing them that, among other things, Co-Class Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Fund and up to $1,500,000 in Litigation Expenses. *See* Decl. of Lance Cavallo Regarding (A) Mailing of Notice & Claim Form; (B) Publication of Summary Notice; (C) Establishment of Telephone Hotline & Settlement Website; and (D) Report on Requests for Exclusion Received to Date ¶ 8 & Ex. A (Nov. 14, 2023) (the "Mailing Decl."). While the time to object to the Fee and Expense Application does not expire until November 29, 2023, to date no objections have been received. Co-Class Counsel will address any that are submitted in their reply papers, which will be filed on or before December 13, 2023.

Additionally, the requested fee of 25% is made with the full support of the Class Representatives, both of which are sophisticated institutions with a substantial stake in the

Settlement. *See* Decl. of Romana Peschke of Erste AM in Support of (A) Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Co-Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Litigation Expenses at ¶ 6 ("Peschke Decl."), and Decl. of Michael Hampton on Behalf of Pub. Emp. Ret. Sys. of Idaho in Supp. of (A) Class Representatives' Mot. for Final Approval of Class Action Settlement & Plan of Allocation and (B) Co-Class Counsel's Mot. for an Award of Att'ys Fees & Payment of Litig. Expenses at ¶ 6 ("Hampton Decl."), submitted herewith as Exs. D and E, respectively. Class Representatives' endorsement of the fee supports its approval. *See In re Veeco Instruments*, 2007 WL 4115808, at *8 ("Public policy considerations support the award in this case because the Lead Plaintiff . . . —a large public pension fund—conscientiously supervised the work of lead counsel and has approved the fee request.").

## IV. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Co-Class Counsel's application includes a request for payment of Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. Plaintiffs' Counsel collectively incurred $ 1,364,364.07 in expenses. *See* Ex. H. This amount is below the $1,500,000 cap that the Notice informed potential Class Members that counsel may apply for. To date, there has been no objection to this request.

The amount of Litigation Expenses is consistent with the stage of the litigation. Plaintiffs' Counsel have incurred considerable expenses related to, among other things, expert and consultant fees, mediation fees, deposition discovery, and litigation support fees related to electronic discovery. A complete breakdown by category of the expenses incurred by Plaintiffs' Counsel is set forth in Exhibits B and D to the Rogers Declaration (Ex. J) and in Exhibit B to the Levin Declaration (Ex. I). These expense items are reported separately by counsel, and such costs are

not duplicated in the firm's hourly rates. Co-Class Counsel maintained strict control over the primary expenses in the Action by managing a joint litigation fund ("Joint Litigation Expense Fund" or "Litigation Fund"). Labaton Sucharow and Motley Rice collectively contributed $440,000 to the Joint Litigation Expense Fund, and their request for reimbursement is part of the overall expense request. A description of the expenses incurred by the Litigation Fund by category is included in the individual firm declaration submitted on behalf of Labaton Sucharow. *See* Ex. J-D.

The largest expense relates to the retention of Class Representatives' consulting and testifying experts. These fees total $430,219.42, or approximately 31.5% of the total litigation expenses. ¶ 153. Principally, Co-Class Counsel retained Chad Coffman, a market efficiency/loss causation/and damages expert who contributed to the prosecution of the Action by, among other things, preparing an expert report concerning market efficiency; analyzing loss causation and damages issues, including in connection with the Parties' mediation; and developing the proposed Plan of Allocation. Co-Class Counsel also consulted with, among others, a medical expert with experience treating patients with PNH and aHUS, as well as two experts on Austrian law (both in connection with the motion for class certification). *Id.*

Another substantial component of Co-Class Counsel's expenses (i.e., $152,745.27, or approximately 11.1% of the total expenses) was the cost of court reporters, videographers, and transcripts in connection with the depositions counsel took or defended during the course of the Action. ¶ 154; Ex. I-B; Ex. J-D. An additional significant cost was the expense of litigation support, which included retaining a database provider to host and manage the data from the extensive document productions obtained in the Action. Those costs totaled $254,830.39, or approximately 18.67% of the total expenses. *Id.* Co-Class Counsel also incurred a total of $

72,048.75 in connection with the extensive mediation efforts of Judge Phillips. Ex. J at ¶ 10(a). *See* also Ex. J-D.

Additionally, Co-Class Counsel incurred expenses related to, among other things, counsel for subpoenaed confidential witnesses, electronic factual and legal research, travel and work-related meals and transportation, court fees, duplicating, and long-distance telephone and conference calling. A complete breakdown by category of the expenses incurred is set forth in Co-Class Counsel's respective declarations (Exs. I and J).

Co-Class Counsel respectfully submit that the expenses incurred here are properly recoverable. *See Menkes v. Stolt-Nielsen S.A.*, 2011 U.S. Dist. LEXIS 7066, at *18 (D. Conn. Jan. 25, 2011) ("Class Counsel's expenses were incurred in connection with expert consultation, mediation, filing, research, travel, and other incidental activities. . . . The Court is satisfied that these were incidental and necessary to the representation."); *Kiefer v. Moran Foods, LLC*, 2014 WL 3882504, at *10 (D. Conn. Aug. 5, 2014) (awarding reimbursement of litigation expenses that included court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, and expert fees); *China Sunergy*, 2011 WL 1899715, at *6 (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'").

## V. CLASS REPRESENTATIVES SHOULD BE AWARDED REIMBURSEMENT UNDER 15 U.S.C. § 78U-4(A)(4)

Co-Class Counsel also seek reimbursement of $51,960 for Class Representative Erste AM and $27,960 for Class Representative PERSI directly related to their representation of the Class. *See* Ex. D at ¶ 9 and Ex. E at ¶ 9. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may

be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Here, as described in Class Representatives' declarations, they have been committed to pursuing the Class's claims—and have taken an active role in so doing. Courts "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Christine Asia*, 2019 WL 5257534, at *20 (awarding $12,500 to each representative); *Hicks*, 2005 WL 2757792, at *10 (same). "In the Second Circuit, Plaintiff incentive awards 'are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 2020 WL 7481292, at *4 (S.D.N.Y. Dec. 18, 2020) (non-PSLRA class settlement).

As sophisticated institutional investors, both PERSI and Erste AM actively and effectively fulfilled their obligations as representatives of the Class, complying with all of the many demands placed upon them during the litigation and settlement of the Action. Each (i) regularly communicated with counsel regarding the posture and progress of the Action; (ii) reviewed significant pleadings and motions filed in the Action; (iii) produced documents and written discovery responses to Defendants; (iv) expended substantial time and effort preparing for and testifying during depositions conducted by defense counsel; and (v) evaluated and approved the proposed Settlement, including through PERSI's attendance at both mediation sessions. Ex. D at ¶ 4; Ex. E at ¶ 4. These efforts required representatives of Class Representatives to dedicate time and resources to the Action that they would have otherwise devoted to their regular duties.

Numerous courts within the Second Circuit have approved payments to compensate representative plaintiffs under similar circumstances. *See, e.g.*, *In re Teva Sec. Litig.*, 2022 WL 16702791, at *2 (awarding $49,213.02 and $7,080 to lead plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $12,500); *Signet Jewelers*, 2020 WL 4196468, at *24 (awarding $25,410 to lead plaintiff); *In re Petrobras Sec. Litig.*, 317 F. Supp. 3d 858, 879 (S.D.N.Y. 2018) (awarding institutional lead plaintiffs $300,000, $50,000, and $50,000); *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, No. 09-MD-2027, ECF No. 365, slip op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding a combined $193,111 to four institutional lead plaintiffs) (Ex. G); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 772 F.3d 125, 132-34 (2d Cir. 2014) (affirming over $450,000 award to representative plaintiffs for time spent by their employees); *Marsh & McLennan*, 2009 WL 5178546, at *21 (awarding a combined $214,657 to two institutional lead plaintiffs).

Co-Class Counsel respectfully submit that Class Representatives should be awarded the total sum of $51,960 related to their active participation in the Action.

## CONCLUSION

For the foregoing reasons, Co-Class Counsel respectfully request that the Court award attorneys' fees in the amount of 25% of the Settlement Fund, which includes accrued interest; $1,364,364.07 in Litigation Expenses incurred by Co-Class Counsel, plus accrued interest; and $51,960, in the aggregate, as reimbursement to Class Representatives pursuant to the PSLRA. A proposed order will be submitted with Co-Class Counsel's reply papers, after the deadline for objections has passed.

DATED: November 15, 2023

Respectfully submitted,

MOTLEY RICE LLC

By: */s/ William H. Narwold*
WILLIAM H. NARWOLD (CT 00133)
Mathew P. Jasinski
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

-and-

Gregg S. Levin (*pro hac vice*)
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

LABATON SUCHAROW LLP
Jonathan Gardner (*pro hac vice*)
Michael H. Rogers (*pro hac vice*)
Philip J. Leggio (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jgardner@labaton.com
mrogers@labaton.com
pleggio@labaton.com

*Co-Class Counsel for*
*Class Representatives and the Class*